UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Lloyd George Morgan                    :        PRISONER

v.                                     :        3:01CV1107 (CFD)

John Rowland, et al                    :        FEBRUARY 27, 2004

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Pursuant to Rules and 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the following defendants respectfully move for an order dismissing this action, brought pursuant to 42 U.S.C. § 1983: Governor John G. Rowland, John Armstrong, Peter Matos, Larry Myers, Fred Levesque, Christine Whidden, Michael Lajoie, Thomas Coates, William Faneuff, Correctional Officer Koske, Correctional Officer Curtis, Dr. Paul Chaplin, Dr. Ronald Hensley, Thomas Latier, Pamela Shea, Bryan Castle, Warden John Tarascio, Captain Helberg, Erik Johnson, Jimmy Delvalle, and Sheriff Diaz.[1] (hereinafter "defendants"). First, the defendants move to dismiss the complaint insofar as it has been brought against them in their official capacities. The defendants also move to dismiss part of the Amended Complaint pursuant to the Prison Litigation Reform Act under 42 U.S.C. § 1997e(e), which requires that a plaintiff allege a physical injury in order to state a claim. The defendants also move to dismiss the entire Amended Complaint under the "Total Exhaustion Rule" on the grounds that the plaintiff has failed to allege exhaustion of administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) as recently interpreted in *Porter v. Nussle*, 534 U.S. 516 (2002). More specifically, the defendants move to dismiss the plaintiff's claims regarding Correctional

Officers Curtis and Koske as well as Warden Tarascio, for failure to exhaust pursuant to the

Prison Litigation Reform Act.

The defendants also move to dismiss the plaintiff's claims for declaratory and injunctive

relief as moot. The defendants also move to dismiss the plaintiff's claims regarding medical care

and failure to protect for failure to state a claim upon which relief can be granted. The

defendants also move to dismiss several of the plaintiff's claims for failure to allege sufficient

personal involvement. Finally, the defendants move to dismiss the vast majority of plaintiff's

claims on the basis of qualified immunity.

## I.    FACTS

The plaintiff has filed a lengthy complaint against 22 defendants including the governor

of the State and the former Commissioner of Correction, as well as several correctional officials

and some former state sheriffs who allegedly housed the plaintiff at a lock-up facility in

Hartford. The complaint describes the plaintiff's claims as follows:

> violations of Sections 1983, 1985,1986, 1981, 1982, Title II of the Americans
> with Disabilities Act "raising denial of mental health care claims", failure to
> protect claims denial of a safe program and protective custody, excessive use of
> force claims, claims denial of proper effective healthy recreation, unsafe restraints
> and handcuffing policy as well as retaliation and reprisal claims and alleging cruel
> … and unusual punishment"

Amnd. Com. ¶ 1.

The complaint, by this *pro se* inmate, is long and somewhat confusing, but there are

distinct factual claims which the defendants will address herein. The plaintiff alleges correctly

that certain of the defendants were correctional officials when he was incarcerated at Northern

---

[1]    All of the defendants in this action join in this motion with the exception of Captain
Butler, who has not been served and whom the undersigned counsel does not yet represent.

Correctional Institution (hereinafter "Northern"). He correctly alleges that John Rowland is the governor of the State, and he correctly alleges that the last four named defendants were state employees with what was the Sheriff's Department in Hartford. In the portion of this memo which discusses personal involvement, more specific factual allegations as against individual defendants will be alleged.

### A.    **Failure to Protect Claims:**

The complaint avers "it was alleged that on or about March 30, 2001 the plaintiff attacked and assaulted his former cellmate." Amnd. Com. ¶ 27. As a result, the plaintiff was eventually transferred to Northern. Amnd. Com. ¶ 27. The plaintiff seems to allege that at one point, he requested to be moved out of protective custody, but that when he was transferred to Northern, he requested to be placed in protective custody. Amnd. Com. ¶¶ 28, 29. He also wanted to be on "single cell status for his own safety." Amnd. Com. ¶ 29. The plaintiff's strong desire for a single cell while at Northern seems to be the basis for many of his allegations in this case, both regarding the plaintiff's alleged safety concerns and the fact that mental health staff would not state that a single cell was medically necessary. He claims he was receiving threats from gangs and was labeled a "snitch and bisexual male." Amnd. Com. ¶ 29. The plaintiff claims that he made the Northern supervisory custodial defendants aware that he had been previously "set up to be assaulted" by correctional officials, which was the subject of a previous lawsuit, and that he pleaded with the Northern defendants to be placed in protective custody on the basis of this previous incident. Amnd. Com. ¶¶ 30-31.

The plaintiff then alleges issues with a cellmate named Sydney Wylie, who was unsentenced, whereas the plaintiff was sentenced. Amnd. Com. ¶¶ 32, 33. The plaintiff alleges

that inmate Wylie complained about Wylie's safety with the plaintiff, and the plaintiff continued to seek protective custody status. Amnd. Com. ¶¶ 32-36. Plaintiff makes allegations that he was told that in order to no longer share a cell with inmate Wylie, they would "have to fight it out" as this was departmental policy. Amnd. Com. ¶ 32. Plaintiff then made several pleas to various correctional officials as well as Commissioner John Armstrong and Governor Rowland regarding the sharing of his cell with Inmate Wylie, deluging them with written correspondence at least some of which is attached to the Amended Complaint. Amnd. Com. ¶¶ 32-36. It is significant, however, that the plaintiff does not allege that he or Wylie ever even had so much as a verbal altercation, much less any physical confrontation, alleging only that he, and Wylie for that matter, were "forced to stay in these unsafe conditions until inmate Wylie went home from court." Amnd. Com. ¶ 36. Thus, the plaintiff never suffered any harm at the hands of inmate Wylie.

The plaintiff next alleges that despite his successful cohabitation with Wylie, he continued to seek protective custody, claiming that other inmates in his unit wanted to hurt him. Amnd. Com. ¶¶ 37-48. The plaintiff attaches grievances and other correspondence to his complaint regarding his campaign for protective custody. The plaintiff alleges that he was repeatedly told by Northern defendants that his factual claims to support his need for protective custody were insufficient. Amnd. Com. ¶¶ 37-48. The plaintiff claims only one incident with another inmate in which the plaintiff was being "brought down", i.e. escorted by correctional officials, and another inmate "assaulted me by spit[t]ing on me and trying to injure me." Amnd. Com. ¶ 43. The alleged attempted assault was apparently unsuccessful as both inmates were in restraints pursuant to Northern policy and correctional staff were present. Amnd. Com. ¶ 43.

Thus, despite his alleged fears, the plaintiff never suffered any harm at the hands of another

inmate despite his lack of protective custody status.

### B.    "Lack of Proper Safe Recreation and Right to Exercise"

The complaint further alleges that the supervisory custodial Northern officials, Myers,

Coates, Whidden, and Lajoie, and the statewide officials, John Armstrong, Peter Matos and

Governor Rowland, violated his rights under the Eighth Amendment by virtue of the fact that

when he was at Northern in Phase I, the plaintiff was forced to wear full restraints during his

outdoor recreation. Amnd. Com. ¶¶ 49, 50, 50, 53.[2] The plaintiff does claim that he wrote

letters and other correspondence on this issue.

### C.    Claim of Excessive Force by Koske and Curtis

The plaintiff claims a single instance of excessive force by the defendant Correctional

Officers Koske and Curtis. Amnd. Com. ¶ 51. The plaintiff claims that on May 4, 2001, those

two officers put him in restraints and:

> put the restraints on to[o] tight. Plaintiff made many pleas to Officers Curtis and
> Koske to loosing the restraints [because] they [were] on to[o] tight. Both Officers
> [were] deliberately indifferent and refused and force[d] me to go to the recreation
> yard in the same manner.

Amnd. Com. ¶ 51. The plaintiff then claims that due to the unsafe nature of the restraints on that

day he fell, and Officers Curtis and Koske refused to help him up but another correctional

official helped him up. Amnd. Com. ¶ 52. The plaintiff claims he then received medical

treatment and attaches documentation to that effect. Amnd. Com. ¶ 52. The plaintiff again

makes a specific claim as to Officers Koske and Curtis, stating that there actions were "done

sadistically and maliciously". Amnd. Com. ¶ 53.

---

[2]    The operative Amended Complaint has two paragraphs numbered "50".

The plaintiff does not allege that he grieved this incident nor does he attach any grievance regarding this singular incident with Officers Curits and Koske. The plaintiff does not allege that the excessively tight application of the handcuffs was a policy at Northern or that the singular application of tight handcuffs upon him was known by any defendant staff member at Northern other than Curtis or Koske. The same is true of the failure to help the plaintiff up once he fell. The plaintiff does not allege that this was pursuant to any policy or that any of the named defendants were aware or were ever made aware of it.

### D.    Policy Re Removal of Restraints

Without alleging any harm to himself, the plaintiff includes a paragraph in which he alleges that the policy of taking the cuffs off of double-celled inmates one at a time, leaving one inmate cuffed and the other uncuffed, is an unsafe practice. Amnd. Com. ¶ 54. The plaintiff alleges that he grieved this practice. Amnd. Com. ¶ 54, Exhibit 21. The plaintiff claims his grievances went unanswered.

### E.    Inadequate Mental Health Care

The plaintiff next alleges that he did not receive "proper mental health care" while at Northern. Amnd. Com. ¶ 56. The plaintiff claims that he made "many urgent pleas" to Clinical Social Worker Thomas Latier, who he alleges denied him care stating that the plaintiff has no mental illness and no treatment is needed. Amnd. Com. ¶ 56. The plaintiff allegations and attachments indicate that the plaintiff started seeking more intensive mental health treatment in April of 2001. The plaintiff alleges he also wrote to the defendant Dr. Chaplin and the defendant Dr. Hensley. Amnd. Com. ¶ 56. The plaintiff attaches as Exhibit 22 a letter allegedly written to the defendant Chaplin as well as am Inmate Request Form in which he states his need for mental

health care. Ex. 22. There is a response on the Inmate Request Form from Dr. Hensley stating, "Reviewing your case and file. Your case manager will set up an appt. with me at the appropriate time." The plaintiff also attaches as part of Ex. 22 a letter he wrote to then Commissioner John Armstrong stating that although he has been talking to "psychiatric nurse Latear" he has not been seen one-on-one by a doctor. Ex. 22. In his letter to Armstrong, the plaintiff requests "weekly private sessions." Ex. 22. The plaintiff also sought weekly private sessions in a letter to Major Whidden. Ex. 23.

The plaintiff alleges that he did see Dr. Hensley in September of 2001, but felt at that point he was subject to "cruel racial discrimination" in that his visit was very short. Plaintiff attaches letters he wrote seeking mental health treatment in which he repeatedly asks for a single cell for mental health reasons. In the documents attached as Exhibit 22, the plaintiff's primary claim is one of being "fearful". Ex. 22. In the letter to Governor Rowland that is the first page of Ex. 23, the plaintiff discusses both his lack of single cell status and his alleged mental health issues. Ex. 23. In his letter to Dr. Chaplin, Exhibit 24, the plaintiff claims that another doctor once put him on single cell status due to his alleged mental health problems and states that he needs "proper mental health treatment and a single cell." Ex. 24. Dr. Chaplin responds in Exhibit 24, stating, "You do not qualify for a MHU [mental health unit] single cell. You were seen by me on 8-17-01 and looked fine. If you have security concern these are best directed to custody staff." Ex. 24. This document is dated August 17 and 18 of 2001. Ex. 24. In Exhibit 25, the plaintiff writes to Supervisor B. Castle, complaining about the denial of a mental health single cell and his lack of private mental health sessions. Ex. 25. In Exhibit 25, the plaintiff writes a letter describing an unsatisfactory mental health session with Dr. Hensley of short

duration with Latier present during which Hensley told the plaintiff not to talk about his legal rights and sent him back to his cell at the direction of Latier. Ex. 25.

The plaintiff attaches a level one grievance in which he complains of a lack of mental health treatment in the form of one on one weekly sessions with a psychiatrist. Ex. 26. The response from medical staff is that Dr. Chaplin does not feel the plaintiff is "mentally ill" and therefore does not need weekly sessions. Ex. 26. This grievance and the alleged grievance labeled as Ex. 27 are dated in June of 2001. The plaintiff attaches another grievance, written by him on September 23, 2001, which indicates that he will be seen by Dr. Hensley later that month, and his "psychiatric treatment at NCI will be determined by Dr. Hensley's evaluation." Ex. 27. Exhibit 28 is a memo to the plaintiff from Bryan Castle dated December 26, 2001, in which the defendant Castle states that he relies on the assessment done by Dr. Hensley to the effect that the plaintiff is not mentally ill and does not require mental health treatment. Castle states, "I trust his professional abilities concerning such issues. However, if in the further [sic] you feel you need to be seen, you can submit a sick call to Mental Health." Ex. 28; Amnd. Com. ¶ 59. Exhibit 28 also includes a memo to the plaintiff from the defendant Shea indicating that she has reviewed his medical chart and the plaintiff is being seen by medical staff and that "Mental health staff continue to routinely monitor your status." Ex. 28.

The plaintiff then specifies three of the defendants as having "committed intentional neglect and deliberate medical malpractice": Hensley, Castle and Latier. Amnd. Com. ¶ 60. The plaintiff notes that in 1997 he was placed on single cell status. Amnd. Com. ¶ 60; Ex. 29. He also attaches medical reports from 1991, and 1994. Amnd. Com. ¶ 60; Exs. 30-32. The plaintiff then alleges that what the defendants Chaplin, Latier, Hensley, Castle and Shea "call

8

plaintiff claims he then asked to see a supervisor, who ordered the defendants Delvalle and Diaz

to put him in the "dirty" cell. Amnd. Com. ¶ 66. The plaintiff alleges that he then asked to

speak to Helberg, who ordered him assaulted. Amnd. Com. ¶ 66. The plaintiff alleges he was

maced as he tried to crawl into a cell. Amnd. Com. ¶ 67. He claims that he was then left in a

cell for many hours without being allowed to clean himself or use the bathroom. Amnd. Com. ¶

68. He alleges that the incident happened "early in the morning or earl near noon" and he was

not allowed to clean himself until 4:30 when the shift changed. Amnd. Com. ¶ 68.

The plaintiff alleges that the defendants "Rowland and Helberg failed to proper train

there staff in dealing people with mental health problems or high blood pressure or diabetes" and

failed to train them in the use of force. Amnd. Com. ¶ 69.

### G.    Alleged Retaliation by Tarascio

In his omnibus Amended Complaint the plaintiff next alleges retaliation by the defendant

Warden Tarascio. Amnd. Com. ¶¶ 71-75. The plaintiff claims that he wrote many letters and

complaints while incarcerated at the Bridgeport Correctional Center. Amnd. Com. ¶¶ 70-73. He

further claims that he sued Tarascio in 1995 when Tarascio was the Warden in what was then

called MacDougall Correctional Institution. Amnd. Com. ¶ 71. He claims that Tarascio

retaliated against him and violated his First Amendment rights by giving him a Disciplinary

Report for failing to follow the chain of command with his many complaints regarding prison

conditions such as mail and the like. Amnd. Com. ¶¶ 74-75. The plaintiff attaches a

Disciplinary Report in which he was found guilty of disobeying a direct order in refusing to

follow the chain of command and addressing his complaints directly to the Warden. Exs. D, F.

## II.    ARGUMENT

## A.    Standard of Review

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from those allegations in the light most favorable to the plaintiff.  *See Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911 (1992).  The function of a motion to dismiss is merely "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Younger v. Chernovetz*, 792 F. Supp. 173, 174 (D. Conn. 1992), *quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

In *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) the Court held that "[C]ertain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that . . . detailed fact pleading is required to withstand a motion to dismiss."  Complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed.  *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977).  Thus, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.*, 687 F. Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted).  A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

11

**B.**    **All Defendants are Immune from Suit for Money Damages Insofar as they are Sued in their Official Capacities**

The Eleventh Amendment provides a constitutional limitation on federal jurisdiction over suits for damages brought by a citizen against a state or state agencies. *Pennhurst State School & Hospital v. Halderman (Pennhurst II),* 465 U.S. 89, 98 (1984); *Ex parte State of New York No. 1,* 256 U.S. 490, 491 (1921). It is well established that a suit against a state official in his or her official capacity is, in actuality, a suit against the State, and the State is the real party in interest, thus the Eleventh Amendment immunity extends to suits against state officials in their official capacity. *Brandon v. Holt,* 469 U.S. 464, 471 (1985); *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *Schiff v. Kerrigan,* 625 F. Supp. 704, 707 n.7 (D. Conn. 1986). It is likewise well established that the doctrine of sovereign immunity embodied by the Eleventh Amendment of the United States Constitution precludes a suit for damages against a state or its agencies brought pursuant to §1983. *Edelman v. Jordan,* 415 U.S. 651, 677 (1974).

Absent a congressional override, a sovereign's Eleventh Amendment immunity may be only waived by an unequivocally expressed consent to suit. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985); *Pennhurst II, supra,* 465 U.S. at 99. This consent may take one of two forms. It may take the form of an explicit statutory exception as to a designated class of claims. *Florida Dept. of Health v. Florida Nursing Home Association,* 450 U.S. 147, 150 (1981); *Owner-Operators Independent Drivers Assoc. of America v. State of Connecticut,* 209 Conn. 679, 684-85 (1989). In Connecticut, an abrogation of sovereign immunity may also take the form of a claim presented to the Connecticut Commissioner of Claims pursuant to Conn. Gen. Stat. § 4-141 *et seq.* In the absence of either exception to the sovereign immunity of the State of

Connecticut, the Eleventh Amendment bars any claim against the State or a state official in their official capacity for money damages.

In the instant case, the plaintiff has alleged no statutory or other consent to suit, and thus any and all claims for damages against the defendants sued in their official capacity should be dismissed.

## C.  No Physical Injury Precludes Claims for Money Damages for Failure to Protect

The plaintiff's complaint includes a long and detailed claim for failure to protect the plaintiff from the threat of other inmates at Northern and details a long campaign by the plaintiff for a single cell as well as the plaintiff's philosophical debate with the practice of removing one inmate's handcuffs and then another's.  The plaintiff does not allege that he was in fact ever physically harmed in any way by any other inmate at Northern, claiming only that he was fearful and that he was spit on by another inmate who was restrained by Correctional Officers before any harm could come to the plaintiff.  The plaintiff likewise makes no claims of physical injury by virtue of the being found guilty of the Disciplinary Report by Warden Tarascio, or by the alleged lack of mental health care.

The Prison Litigation Reform Act provides:

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  The Second Circuit has held that this provision does apply to constitutional claims. *Thompson v. Carter,* 284 F.3d 411, 417-18 (2d Cir. 2001).  In its *Thompson* decision, the Second Circuit followed some other circuits in holding that this prohibition extends only to claims for compensatory damages, and does not extend to claims for

13

punitive or nominal damages, or to claims for declaratory or injunctive relief. *Id.* at 418. According to the law as interpreted by the Second Circuit, then, any of the plaintiff's claims for compensatory damages regarding the defendants' alleged failure to protect him are subject to dismissal under § 1997e(e). The plaintiff in this case does allege nominal and punitive damages as well.

Unlike the Second Circuit, however, the Eleventh Circuit has held that Section 1997e(e) bars claims for punitive damages as well, and the defendants urge that this position is correct and that *Thompson v. Carter* was wrongly decided. *See Harris v. Garner,* 190 F.3d 1279, (1999), *aff'd in part and vacated in part (on other grounds),* 216 F.3d 970 (11th Cir. 2000), *cert. denied,* 2001 U.S. LEXIS 4155 (2001). The language of Section § 1997e(e) is clear that "no action may be brought . . . for for mental or emotional injury suffered while in custody without a prior showing of physical injury" and this language makes no exception for punitive, or for that matter, nominal damages awarded on the basis of such injury. Thus, in order to preserve their appellate rights on this issue, the defendants move to dismiss all of the plaintiff's claims for any kind of money damages regarding failure to protect or the handcuffing policy pursuant to Section § 1997e(e), consistent with the plain language of Section § 1997e(e). Either way, the plaintiff's claims for compensatory damages on those claims in which he alleges no physical injury are subject to dismissal.

**D.    Deliberate Indifference Claims re Safety Insufficient as a Matter of Law**

The plaintiff alleges that the defendants put him in a situation in which he was fearful for his safety in that he feared assault by another inmate, particularly his cellmate, who also feared him. This claim for "deliberate indifference" in insufficient as a matter of law. Prison

administrators "are under an obligation to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-7 (1984). In 1994, the Supreme Court noted, "In particular, as the lower courts have uniformly held, and as we have assumed, "prison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). In *Farmer*, the Supreme Court noted that "being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834. "It is not however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* For an inmate to establish an Eighth Amendment violation against a prison official, two requirements must be met: "(1) the deprivation alleged must have been sufficiently serious, and (2) the official must have had a sufficiently capable state of mind." *Id.* Thus, in order to maintain an action for failure to protect, an inmate must demonstrate not only that a serious injury was sustained, but also that it was the result of "deliberate indifference" on the part of prison officials. *Id.; see also, Hayes v. New York City Department of Correction,* 84 F.3d 614, 620 (2d Cir. 1996).

The Supreme Court has ruled that a prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. "In other words, the official must have had reason to know and have known of an unusual risk of physical harm to the plaintiff and then have deliberately failed to act 'in conscience disregard or indifference to that risk'". *Johnson v. Abate*, 2000 U.S. Dist. LEXIS 19047, *8 (E.D.N.Y. December 22, 2000), attached, *quoting, Bryant v. Maffucci*, 923 F.2d 979, 985 (2d Cir.), *cert. denied,* 502 U.S. 849

(1991). Despite the plaintiff's claims to the contrary in this case, "mere negligent failure to protect cannot provide the basis for § 1983 liability." *Johnson, supra*, *8, *citing, Farmer*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 333-4 (1986); *Stubbs v. Dudley*, 849 F.2d 83 (2d Cir. 1988), *cert. denied*, 489 U.S. 1034 (1989).

To allow a claim of deliberate indifference to go to a jury, courts have uniformly required *both* notice to a defendant correctional official of a risk, and a recognition of that risk. *Nelson v. Walker*, 1999 U.S. App. LEXIS 4766 (2d Cir. 1999), attached (No liability could lie in claim for failure to protect from assault by other inmates when there was no claim that defendants had any knowledge that plaintiff should be separated from other inmates nor any knowledge that any other inmate planned to attack the plaintiff); *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (Claim that correctional officer announcing to inmates that it was "open season" on plaintiff inmate stated a cause of action under § 1983); *Hendricks v. Coughlin*, 942 F.2d 109 (2d Cir. 1991) (Deliberate indifference *could* exist when, prior to attack by other inmates, plaintiff inmate "sought protection from prison officials saying he was concerned about his safety. . . . [Plaintiff] met with prison officials on two occasions to discuss his fear that release into the general prison population would endanger him. During this period he also contacted Prisoners' Legal Services and it, in turn, further alerted prison officials to the problem and requested steps be taken to ensure [plaintiff's] safety. [Nonetheless plaintiff] was released...into general population."); *Stubbs, supra*, 849 F.2d at 86-7 (Jury could reasonably find deliberate indifference when defendant correctional official fled assaultive inmates behind a secure door but left victim inmate in their path, and thus, "had adequate time to afford [plaintiff] protection at no risk to himself or the security of the prison but callously refused to permit [the plaintiff] to pass with him to safety."); *Johnson v. Abate, supra*, attached *8 (When plaintiff testified that he did not inform any DOC official that he was in danger from his ultimate assailant or any other inmate, no liability existed when officers present at the time of the attack took immediate steps to

16

stop it); *Livingston v. Rivera*, 1999 U.S. Dist. LEXIS 484 (E.D.N.Y. January 20, 1999), attached, (Plaintiff inmate allowed to proceed on § 1983 claim for deliberate indifference against correctional official who allegedly taunted inmate, as officer's alleged comments revealed that he had specific knowledge that plaintiff was at risk. On the other hand, summary judgment entered for defendant officer who merely escorted plaintiff to his cell in absence of evidence of specific knowledge); *Breland v. Abate*, 917 F. Supp. 220 (S.D.N.Y. 1996) (Negligence in the absence of any foreknowledge an inmate was at risk from other inmates insufficient to state § 1983 claim for deliberate indifference.), citing, *Daniels v. Williams*, 474 U.S. 327, 336 (1986); *Roundtree v. N.Y. State Department of Correction*, 1995 U.S. Dist. LEXIS 21448 (E.D.N.Y. 1995), attached, (Claim that Correctional Officer was not at his post and therefore failed to prevent an unforeseen attack sounds only in negligence, and fails to state a claim under § 1983).

In this case, the plaintiff simply lacks any evidence of any specific risk to the plaintiff or any knowledge of such a risk on the part of the defendants. As one Court stated, "Plaintiff alleges no facts suggesting that the defendant officers exercised recklessness, gross negligence or deliberate indifference in failing to protect plaintiff. . . . [There was] no indication that plaintiff's situation was obviously more dangerous than that of any other working prisoner." *George v. Burton*, 2001 U.S. Dist. LEXIS 24 (S.D.N.Y. January 4, 2001), * 13, attached.

When all that an inmate seeking to present a claim against correctional officials for failure to protect him alleges is mere negligence, the plaintiff's constitutional claim must fail. *Id.* ("Therefore, viewed in the light most favorable to plaintiff, we find that no facts could exist underlying plaintiff's allegations that would establish defendant officers acted with 'more than simple negligence.'"). In the case, the plaintiff's own allegations do not even rise to the level of simple negligence. There is no allegation that any named defendant acted with the requisite

"deliberate indifference" required by *Farmer v. Brennan*, and the named defendants are entitled to judgment in their favor. The Amended Complaint contains no allegation that any of the defendants shared the plaintiff's fear for his safety, only that the plaintiff communicated his fears for his safety numerous times. Thus, his complaint insofar as it alleges "dangerous" conditions at Northern by virtue of the double cell policy or the removal of handcuffs policy is insufficient and should be dismissed as a matter of law. In the words of the *George* decision, supra, there was "no indication that plaintiff's situation was obviously more dangerous than that of any other [Northern] prisoner." 2001 U.S. Dist. LEXIS 24 (S.D.N.Y. January 4, 2001), *13 attached.

    **E.**    **No Exhaustion Makes Claims Against Koske, Curtis, Tarascio Insufficient**

        1.    Claims Against Curtis and Koske not Exhausted

The plaintiff attaches several letters and grievance regarding several of the claims included therein. The complaint contains no grievances and no allegations regarding grievances with regard to the claims that on a single occasion Correctional Officers Curtis and Koske put the plaintiff's handcuffs on too tight and that he suffered harm during his recreation session on that date. Thus, pursuant to 42 U.S.C. § 1997e(a) and *Porter v. Nussle* the plaintiff's claims as against Curtis and Koske are subject to dismissal.

Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act (hereinafter "PLRA"), a prisoner must exhaust administrative remedies before bringing suit in federal court under federal law:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prison confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This provision requires complete exhaustion in accordance with the administrative procedures Connecticut provides its prisoners. *Porter v. Nussle, supra.* The Supreme Court has made it clear that there are no exceptions to the PLRA's exhaustion requirement:

> We hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

*Id.* at 532.

The claims against Curtis and Koske are not alleged anywhere to have been grieved.[3] They are subject to dismissal.

---

[3]   The plaintiff attaches several letters written to correctional officials on a variety of issues. District court decisions in this circuit have repeatedly held that complaint letters to correctional officials do not satisfy the Prison Litigation Reform Act's exhaustion requirements. *See, e.g., Muhammad v. Pico*, 2003 U.S. Dist. LEXIS 13402, No. 02 Civ. 1052 (AJP), 2003 WL 21792158 at *8 n. 22 (S.D.N.Y. Aug. 5, 2003); *Rivera v. Pataki*, 2003 U.S. Dist. LEXIS 11266, 2003 WL 21511939 at *8 & n. 12; *Nelson v. Rodas*, 2002 U.S. Dist. LEXIS 17359, 2002 WL 31075804 at *3; *Saunders v. Goord*, 2002 U.S. Dist. LEXIS 13772, 98 Civ. 8501; 2002 WL 1751341 at *3 (S.D.N.Y. July 29, 2002) ("It is well established that plaintiffs may not bypass this procedure by sending letters directly to the superintendent.'"); *Byas v. New York*, 2002 U.S. Dist. LEXIS 13072, 99 Civ. 1673, 2002 WL 1586963 at *2 (S.D.N.Y. June 17, 2002) ("Prisoners may not bypass this procedure . . . by sending letters directly to the superintendent."); *Nunez v. Goord*, 2002 U.S. Dist. LEXIS 9850, 99 Civ. 4640, 2002 WL 1162905 at *1 (S.D.N.Y. June 3, 2002)(inmate's letter to prison Superintendent in lieu of filing grievance failed to exhaust excessive force claim; *Hemphill v. New York*, 198 F. Supp.2d 546, 548 (S.D.N.Y. 2002)( same; letter to Superintendent does not satisfy); *Mills v. Garvin*, 2001 U.S. Dist. LEXIS 3333, 99 Civ. 6032, 2001 WL 286784 at *3 (S.D.N.Y. March 2, 2001) (inmate's letters to prison officials were insufficient to exhaust his administrative remedies; "letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA."); *Noguera v. Hasty*, 2000 U.S. Dist. LEXIS 11956, 99 Civ. 8786, 2000 WL 1011563 at *12 n. 23 (S.D.N.Y. July 21, 2000) ("The Court notes that simple letter complaints to the Commissioner of the New York State Department of correctional Services about excessive force and medical indifference appear quite common, and such complaints are not normally sufficient to serve as a proxy for following and exhausting proper administrative remedies."), *report & rec. adopted in part*, 2001 U.S. Dist. LEXIS 2458, 2001 WL 243535 (S.D.N.Y. March 12, 2001).

2.    Warden Tarascio

The same is true as regards the plaintiff's claims against Warden Tarascio for the
Disciplinary Report regarding failure to follow the chain of command.  The plaintiff notes that
this was a disciplinary action, which is not grievable.  Disciplinary actions are, however, subject
to appeal.  See Administrative Directive 9.5, attached.[4]  The plaintiff does not allege that he ever
appealed the guilty finding on his Disciplinary Report in this matter.  When the very action an
inmate complains of is the giving of a Disciplinary Report and a guilty finding thereon, a
disciplinary appeal is considered sufficient for exhaustion.  *Samuels v. Selsky,* 2002 U.S. Dist.
LEXIS 17089, No. 01 Civ. 8235 (AGS), 2002 WL 31040370 at *8 (S.D.N.Y. Sept. 12, 2002);
*Flanagan v. Maly,* 2002 U.S. Dist. LEXIS 1373, No. 99 Civ. 12336 (GEL), 2002 WL 122921 at
*2 (S.D.N.Y. Jan. 29, 2002);  *Muhammad v. Pico,* 2003 U.S. Dist. LEXIS 13402, No. 02 Civ.
1052 (AJP), 2003 WL 21792158 at *8 n. 22 (S.D.N.Y. Aug. 5, 2003);  *Rivera v. Goord,* 253 F.
Supp.2d 735 (S.D.N.Y. 2003).  In *Rivera,* the Court distinguished claims requiring grievance
exhaustion from those that may be exhausted through a disciplinary appeal: "generally, where a
Court has found nonexhaustion of a claim despite the appeal of a disciplinary hearing decision,
the plaintiff had not raised objections in the appeals process to the behavior underlying the
claim."  *Id.* at 750.

In this case, the plaintiff's claims against Warden Tarascio are subject to dismissal.
Indeed, the language of the Prison Litigation Reform Act is that "such administrative remedies

---

[4]       As have others, this Court may take judicial notice of the State of Connecticut
Department of Correction Administrative Directives without converting this motion into one for
summary judgment. *See, e.g., Nieves v. Palumbo,* No. 3:96CV1389(DJS)(TPS), Ruling on
Motion to Dismiss, December 17, 1997, attached (taking judicial notice of the State of

*as are available*" must be exhausted. Even crediting the plaintiff's allegation that Disciplinary Report action is not grievable, the attached Administrative Directive 9.5 regarding the disciplinary process makes clear that appeals are part of that process, and thus constitute an existing administrative remedy.

**F.     Total Exhaustion Rule Requires Dismissal of Entire Complaint**

As the thorough and well-reasoned *Muhammed* decision of the Southern District of New York discusses, the Second Circuit has not addressed the issue of whether a plaintiff's failure to exhaust some of his claims renders all of them subject to dismissal. *Muhammed v. Pico,* 2003 U.S. Dist. LEXIS 13402, No. 02 Civ. 1052 (AJP), 2003 WL 21792158 at *8 n. 22 (S.D.N.Y. Aug. 5, 2003). The Sixth and the Eighth Circuits have applied the "total exhaustion" rule. *See, e.g., Julian-Bey v. Crowley,* No. 00-2313, 24 Fed. Appx. 393, 395, 2001 WL 1555950 at *2 (6th Cir. 2001) (dismissing "mixed" complaint; rejecting argument that at least one claim is sufficient to prevent dismissal); *Graves v. Norris,* 218 F.3d 884, 885 (8th Cir. 2000) ("When multiple prison condition claims have been joined, as in this case, the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims.").[5] Several District Courts within the Second Circuit have likewise applied the "total exhaustion rule". *Rivera v. Pataki,* 2003 U.S. Dist. LEXIS 11266, 01 Civ. 5179, 2003 WL 21511939 at *8 (S.D.N.Y. July 1, 2003) (dismissing the entire complaint without prejudice, giving the plaintiff an opportunity to plead all claims again); *Vidal v. Gorr,* 2003 U.S. Dist. LEXIS 26, 02 Civ. 5554, 2003 WL 43354 (S.D.N.Y. Jan. 6, 2003); *Saunders v. Goord,* 2002 U.S. Dist. LEXIS

---

Connecticut Department of Correction Inmate Grievance Procedure in Administrative Directive 9.6).

[5]     *See also those cases cited in Muhammed v. Pico, supra,* fn. 25.

13772, 98 Civ. 8501, 2002 WL 1751341 at *3 (S.D.N.Y. 2003).  Other District Courts within the Second Circuit have resolved the total exhaustion issue in contrary fashion.  *Rivera v. Goord*, 253 F. Supp.2d 735, 749 (S.D.N.Y. 2003); *Dimick v. Baruffo*, 2003 U.S. Dist. LEXIS 2865, 01 Civ. 2151, 2003 WL 660826 at *5 (S.D.N.Y. Feb. 28, 2003).

The defendants urge the total exhaustion rule as one more efficient and more consistent with the plain language of the Prison Litigation Reform Act, and urge that this Court dismiss this omnibus action in its entirety for failure to exhaust as to all of the claims contained therein.  This case presents a perfect example of the benefits of the total exhaustion rule.  Rather than parse through the extremely lengthy and convoluted complaint to determine which claims or sub-claims have been exhausted, the complaint should be dismissed, giving the plaintiff an opportunity to present a unified complaint with all of the complaint able to go forward.

**G.    Mootness Deprives the Court of Subject Matter Jurisdiction Over Non-monetary Claims**

The United States Supreme Court has ruled that there must be a "substantial controversy" between parties in order for a court to maintain jurisdiction over a matter.  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the District Court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir. 2002), *quoting, Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).   A matter that has become moot presents no actual case or controversy.  *Altman v. Bedford Central School District,* 245 F.3d 49, 70-71 (2d Cir. 2001).  The federal courts "do[] not sit to decide arguments after events have put them to rest." *Doremus v. Board of Ed.,* 342 U.S. 429 (1952); *see also Golden v. Zwickler*, 394 U.S. 103, 108

(1969). The plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exits. *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

"[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the Court on its own motion, Fed. R. Civ. P. 12(b), the Court may inquire, by affidavits or otherwise, into the facts as they exist." *Scherer v. The Equitablelife Assurance Society of the United States,* 347 F.3d 394, 401 (2d Cir 2003), *quoting Land v. Dollar,* 330 U.S. 731 n. 4 (1947) (citations omitted), *overruled on other grounds, Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682 (1949). "A District Court may consult evidence to decide a Rule 12(b)(1) motion. It must do so if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." *Id.* at 401-02 (internal cites, quotes omitted).

As the plaintiff's current address, on file with this Court indicates, the plaintiff is no longer housed at Northern but is now at Cheshire Correctional Institution. "[W]hen a prisoner is released from prison, there is no longer a substantial controversy between the former inmate and prison officials of sufficient immediacy and reality to warrant the issuance of either injunctive or declaratory relief." *Van Deusen v. Evatt,* 1994 U.S. App. LEXIS 15157 (4th Cir.) (internal citations and quotation marks omitted), attached, *cert. denied,* 513 U.S. 972 (1994); *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977); *see also Scher v. Chief Postal Inspector*, 973 F.2d 682, 683 (8th Cir. 1992); *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) (per curiam). The claims of the plaintiff seeking injunctive and declaratory relief are no less subject to dismissal as moot. There is no non-monetary relief whatsoever that a Court can currently award to him other

than the speculative relief that if the plaintiff is re-incarcerated, he might not be subject to the same policies of Northern Correctional Institution.

When an inmate is discharged, or when he is transferred to a different facility than the one where the defendants are employed, his claims for injunctive relief are generally mooted. *Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir. 2002), *citing, Prins v. Coughlin,* 76 F.3d 504 (2d Cir. 1996) *(per curiam).* "This result flows logically from the more generalized proposition that 'an actual controversy must be extant at all stages of the case, not just at the time the complaint is filed." *Id., citing, Beyah v. Coughlin,* 789 F.2d 986, 988 (2d Cir. 1986). The Second Circuit has long held that an inmate's request for declaratory and injunctive relief against correctional staff becomes moot when the inmate is discharged or transferred to a different correctional institution. *Nicholson v. Murphy,* 2003 U.S. Dist. LEXIS 22165, September 19, 2003 (D. Conn. 2003), Kravitz, *J.,* attached, *citing, Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir. 1976).[6] *See also Arriola v. Eady,* 2003 U.S. Dist. LEXIS 15954, August 26, 2003, (D. Conn. 2003), Droney *J.,* attached.

The plaintiffs may argue that the plaintiff's claims for injunctive and declaratory relief are still justiciable as they are capable of repetition, yet evading review." *Van Wie v. Pataki,* 267 F.3d 109, 113 (2d Cir. 2001). This doctrine, however, "applies only in exceptional situations," *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983). These exceptional circumstances exist "where the two following circumstances [are] simultaneously present: (1) the challenged action

---

[6]    The *Nicholson* decision cites three other Circuit courts for this proposition as well: *McAlpine v. Thomson,* 187 F.3d 1213, 1215 (10th Cir. 1999), *infra; Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993) (holding inmate's suit for declaratory judgment as to whether Correctional Officers violated his constitutional rights by opening his privileged mail was

[is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1988) (internal quotation marks omitted).

The plaintiff's claims for declaratory and injunctive relief fail on both counts. First, the "challenged action" is a allegedly a policy of indefinite duration. It is not alleged to be a policy that only applies for a certain amount of time. Thus, the "challenged action", or policy, is *not* "in its duration too short to be fully litigated prior to cessation or expiration." Nor is there a "reasonable expectation" that the plaintiff will "be subject to the same action again." *Id.* Other Courts have rejected the claims of former inmates as plaintiffs claiming that their claims are not moot despite the conclusion of their sentences on the speculation that they might be reincarcerated. *See, e.g., Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (holding that a prisoner's claims for declaratory and injunctive relief under § 1983 concerning conditions of confinement were mooted when inmate was released from prison); *McAlpine v. Thomson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (same with regard to released prisoner's claims for declaratory and injunctive relief under the First Amendment and the Religious Freedom Restoration Act); *Troisi v. Armstrong*, 3:01CV1242(DFM), Opinion June 26, 2002 , attached. As the Court notes in *Troisi*, "'[C]apable of repetition yet *sometimes* evading review' is not at all equivalent to 'capable of repetition yet evading review'" *Id.* p. 10, *quoting, Int'l Broth. of Teamsters v. Brennan*, 859 F. Supp. 761, 764 (S.D.N.Y. 1994); *see also Moriarty v. Tarascio*, 2003 U.S. Dist. LEXIS 3298, March 5, 2003 (D. Conn. 2003), Underhill, *J.,* attached.

---

rendered moot by inmate's release from prison); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

The plaintiff's claims for injunctive and declaratory relief are now moot, and do not fall into the exception to the mootness doctrine. The defendants respectfully urge their dismissal.

**H.    Failure to State a Claim as to Restraint Policy**

The plaintiff claims that the requirement that he recreate in restraints while in Phase I of the Administrative Segregation program at Northern violated his constitutional rights. The Connecticut Civil Liberties Union has filed a brief on his behalf on this issue. The defendants respectfully submit that the plaintiff's claim regarding recreation in restraints fails to allege a constitutional violation. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court defined the standard to be applied in this case as follows:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 1979. In order for prison conditions to rise to the level of an Eighth Amendment violation there must "involve the unnecessary and wanton infliction of pain" which deprives inmates of the minimal necessities of life. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981).

Recently, the Second Circuit upheld a summary judgment decision in favor of correctional defendants who deprived an inmate of everything except a pair of undershirts for almost a month after the inmate continued acting out. *Trammel v. Keane*, 01-0025 (2d Cir. August 1, 2003), attached. The Second Circuit held that as the use of force was pre-planned and monitored and the appropriate standard was deliberate indifference. The court looked to the United States Supreme Court case *Hope v. Pelzer*, 536 U.S. 730 (2002), stating:

> . . . the Court also took into account—as one would do in an excessive force – whether the punishment was justified by "any safety concern" in the prison. . . .

this case occasions no exception to the rule that "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). . . . [W]e consider whether the Order was reasonably calculated to restore prison discipline and security and, in that purposive context, whether the officials were deliberately indifferent to Trammel's health and safety.

*Id.* at 17-18.

This court has previously held that requiring inmates to wear restraints when outside their cell for showers and recreation did not constitute cruel and unusual punishment. *Cousineau v. Armstrong*, Ruling on Defendants' Motion For Summary Judgment, 3:95CV1084(AVC) (D. Conn. September 23, 1998), attached. "These decisions support this court's conclusion that Northern's requirement that the plaintiff wear restraints while outside of his cell served the legitimate security function of maintaining prison order and preventing violence and therefore did not violate the plaintiff's Eighth Amendment rights." *Id.* at 15; *See also, Tillman v. Warden*, 2003 Conn. Super Lexis 530 (February 26, 2003) ("The application of varying degrees of restraint, depending on the A.S. phase level, does not involve the unnecessary and wanton infliction of pain, is not grossly disproportionate to the severity of the crime and is not excessive use of physical force against inmates.") attached; *Caballero v. Warden*, 2003 WL 139524 (Conn. Super. 2003)("The use of full restraints during the recreation period is, in this court's conclusion, reasonable force applied in a good faith effort to maintain discipline surrounding the petitioner, an individual who has proven his tendency to resort to violent behavior toward correction staff and other inmates."), attached; *see also Figueroa v. Lopes,* Ruling on Cross Motions for summary judgment, H-86-706(TEC), March 23, 1990.

27

In this case, the plaintiff concedes that correctional officials were of the understanding that the plaintiff had assaulted a cellmate prior to coming to Northern. Amnd. Com. ¶ 27. The plaintiff's own cellmate had indicated to prison officials that he feared the plaintiff. Amnd. Com. ¶ 32. Thus, the policy of having inmates recreate in restraints until their behavior allowed them to progress to the next part of the Phase program did not constitute deliberate indifference but rather an appropriate use of discretion in an effort to maintain order, safety and security.

**I.      Qualified Immunity as to Restraint Policy**

The doctrine of qualified immunity protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995); *Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076 (1995). This doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their position of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987); *Harlow v. Fitzgerald,* 457 U.S. at 814. Assertion of the privilege should be upheld unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. at 640. The doctrine of qualified immunity for government officials serves not only as a defense from liability, but also to dismiss an action when the plaintiff has failed to claim the violation of clearly established law or to allege the clear violation of a constitutional

right. *Behrens v. Pelletier,* 516 U.S. 299, 306-307 (1996) ; *Jermosen v. Smith,* 945 F.2d 547, 553 (2d Cir. 1991), *cert. denied,* 503 U.S. 962 (1992).

### 1.    No Constitutional Violation Alleged

A qualified immunity inquiry "must be considered in proper sequence." *Saucier v. Katz,* 533 U.S. 194, 200 (2001). "First, [a court] must determine whether [the plaintiff] alleges sufficient facts to show a violation of h[is] constitutional rights." *Poe v. Leonard,* 282 F.3d 123,133 (2d Cir. 2002). The discussion above clearly demonstrates that no constitutional violation has been alleged with regard to the policy the plaintiff alleges of inmates in Phase I at Northern recreating in restraints.

### 2.    Qualified Immunity Adheres

Even assuming arguendo that the plaintiff has sufficiently plead a constitutional cause of action with regard to the restraint policy, if "reasonable officers would disagree about the legality of the defendant's conduct under the circumstances, qualified immunity applies." *Poe, supra,* 282 F.3d at 133, *quoting Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir. 1995). In this case, not only might reasonable correctional officials disagree as to the legality of recreating in restraints given the law as cited amicus, but reasonable courts have in fact held that the current Northern policy is within the bounds of the Constitution. The defendants are therefore certainly entitled to qualified immunity with regard to the recreating in restraints issue, which is moot now that the plaintiff has progressed out of the Phase program at Northern.

### K.    **Lack of Personal Involvement**

29

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." *Rizzo v. Goode* 423 U.S. 362, 370-71 (1976), *quoting* 42 U.S.C. §1983.  Where damages are sought in a §1983 action, the defendant(s) must be responsible for the alleged constitutional deprivation.  Thus, an allegation of personal involvement is a necessary prerequisite for a valid cause of action under §1983.  *See, e.g., Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973), *rev'd on other grounds, Graham v. Connor*, 490 U.S. 386 (1989); *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978).  Consistent with the requirement that personal involvement is required for a claim under § 1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under § 1983.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692-95 (1978).  Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in the chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

Supervisory responsibility alone is not enough to confer exposure to liability.  *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974). A supervisory official may only be liable if it is alleged that he or she learned of the violation and failed to remedy the wrong, if he created or permitted the policy or wisdom under which the unconstitutional practices occurred, or if he was grossly negligent in managing subordinates who caused the violation.  *Williams v. Smith*, 781 F.2d at 323-24; *Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir. 1989).  "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  An

30

official cannot be held liable merely because he or she occupies a high position in the prison hierarchy. *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995).

In this case, various defendants have had only limited personal involvement in the plaintiff's numerous allegations. Going claim by claim makes this clear.

### 1.    Failure to Protect Claims

The plaintiff does not specify which of the defendants in this matter he alleges are responsible for the failure to protect him from the mythical assault by his cellmate or the singular spitting in which he was not harmed. He does allege that he was denied the desired protective custody by the defendants Levesque, Armstrong, Matos, Myers, Butler, Faneuff, Coates, Whidden, Lajoie, and Rowland. Amnd. Com. ¶ 32. He alleges that the defendants Butler and Faneuff told him that he was being denied protective custody unless he had a fight with his cellmate "cause that is the way Comm. Armstrong tells them to do it. Plaintiff pleaded with both Faneuff and Butler and was told he could not be moved unless he had a fight with Wylie." Amnd. Com. ¶ 32.

He further alleges that he personally informed Major Lajoie of his fears for his safety. Amnd. Com. ¶ 33. Lajoie allegedly repeated to the plaintiff that "there was nothing he could do about it cause the prison was overcrowded . . . and that's the way defendant Armstrong tells them to do it." Amnd. Com. ¶ 33. The plaintiff further alleges that he wrote a letter to them Complex Warden Brian Murphy seeking protective custody. Amnd. Com. ¶ 34. Murphy responded via letter indicating that the plaintiff had not given either him or Captain Butler sufficient reason to

be placed in protective custody. Amnd. Com. ¶ 34. Brian Murphy is not a defendant in this action. A similar exchange allegedly occurred with Major Whidden. Amnd. Com. ¶ 35. The plaintiff claims he also wrote to both the defendants Armstrong and Rowland, receiving no response. Amnd. Com. ¶ 36. He attaches a letters to them as Exhibits 6 and 7. In Paragraph 38, the Amended Complaint mentions the defendant Matos as well as Butler, Faneuff, Whidden, Coates, Lajoie, Myers and Armstrong as persons who did not properly classify inmates into protective custody. Amnd. Com. ¶ 38. He then alleges a meeting between himself, Butler and Faneuff. Amnd. Com. ¶ 39.

He goes on to allege a letter to Coates regarding both his protective custody issues and the alleged "unsafe handcuffing and restraint policy". Amnd. Com. ¶ 40. Coates allegedly referred the letter to Majors Whidden and Lajoie. Amnd. Com. ¶ 40. The defendant Matos allegedly denied a grievance appeal on the protective custody and other issues as well. Amnd. Com. ¶ 41. In his final allegations regarding communication to correctional officials regarding his alleged safety concerns, he names the following individuals as having received notice of his concerns: Faneuff, Whidden, Coates, Lajoie, Myers, Armstrong, and Matos. Amnd. Com. ¶¶ 42-44. The plaintiff concludes, "Defendants Butler, Faneuff, Whidden, Coates, Myers, Matos, Armstrong intentionally give him run around and denied him protective custody."

### a.   Rowland- Failure to Protect

All that is alleged as to Rowland is that he received a letter he did not respond to. The law is clear that this allegation is insufficient for a constitutional violation. *See, e.g., Prichett v. Artuz,* 1999 U.S. Dist. LEXIS 20041 (S.D.N.Y. 2000), attached, *citing, Gayle v. Lucas,* 1998 U.S. Dist. LEXIS 3919, *11, 97 Civ. 883, 1998 WL 148461, at *4 (S.D.N.Y. Mar. 30, 1998);

32

*Thomas v. Coombe,* 1998 U.S. Dist. LEXIS 10519, *17, 96 Civ. 10342, 1998 WL 391143, at *6

(S.D.N.Y. July 13, 1998) ("the fact that an official ignored a letter alleging unconstitutional

conduct is not enough to establish personal involvement."); *Kopec v. Coughlin,* 767 F. Supp.2d

463, 466 (S.D.N.Y. 1990) *vacated on other grounds,* 922 F.2d 152 (2d Cir. 1991)(holding that

failure to respond to plaintiff's letter requesting help does not in itself evince deliberate

indifference to plaintiff's medical needs.).

Indeed, the plaintiff does not even allege that Rowland had the authority to intervene in

his placement issues.  Governor Rowland should be dismissed from any and all claims in this

action for lack of personal involvement.

### b.    John Armstrong

Armstrong is mentioned not only as someone who received a letter, but as someone who

set a policy regarding placement into protective custody that an inmate needed to have a fight in

order to be placed in protective custody.  The Department's own Administrative Directives belie

this claim.  See Administrative Directive 9.9. attached.[7]  Thus, the only actual allegation against

the defendant former Commissioner John Armstrong with regard to plaintiff's alleged lack of

protective custody is his failure to respond as the plaintiff would have liked to his letters

regarding protective custody.  For the reasons set forth above, this claims should be dismissed as

against Armstrong for lack of personal involvement.

### c.    Matos

Matos is only accused both ignoring correspondence and denying an appeal.  Both of

these fail to allege sufficient personal involvement in a constitutional deprivation, if one can be

---

[7] See footnote 4, above, regarding judicial notice of Administrative Directives.

said to be alleged, in the denial of protective custody. Matos was entitled to rely on any information provided him by persons at the facility. Thus any claims against him regarding protective custody should be dismissed for insufficient personal involvement.

### d.    Myers

Like Rowland, the former Warden Myers is not alleged to have had any involvement in the protective custody issues of the plaintiff other than having received some communication from the plaintiff regarding his concerns. This, again, is insufficient personal involvement and so any protective custody claims should be dismissed as to the defendant Myers.

### e.    Koske, Curtis, Chaplin, Hensley, Latier, She, Castle, Tarascio, and Sheriffs Helberg, Johnson, Delvalle and Diaz

None of these defendants are alleged to have anything to do with the protective custody issues. They should not proceed as to these defendants. In the event the plaintiff's claim of deliberate indifference on the basis of the denial of protective custody can proceed, it would only be against the defendants Butler, not yet a party to this motion, Faneuff, Whidden, Lajoie, and Levesque.

### 2.    **Recreation in Restraints Claims**

### a.    Rowland

Governor Rowland is, again, claimed to have received some letter or other communication from the plaintiff on this issue but otherwise to have had no personal involvement. The recreation in restraints claims must be dismissed as against him for lack of personal involvement.

### b.    Levesque

The defendant is not alleged to have been at Warden or to have had any input into any decisions regarding recreating in restraints. This claims should be dismissed as to him for lack of personal involvement.

### c.     Non-Decisionmakers at Northern

Correctional Officers Koske and Curtis and Dr. Chaplin and Hensley and Latier, Shea and Castle are not alleged to have had any input into the policies at Northern, and thus should not be part of those claims due to lack of personal involvement. The complaint is vague as to the remaining supervisory Northern defendants Myers, Whidden, Lajoie, Coates, Butler and Faneuff do not seek dismissal on lack of personal involvement grounds.

### 3.     Excessive Force Allegations Against Curtis and Koske

This unexhausted claim is only against Curtis and Koske, as it is not alleged to have been known by, encouraged or ratified by any other defendants, who should all be dismissed from this claim for lack of personal involvement.

### 4.     Lack of Psychiatric Care

The defendants Chaplin, Hensley, Latier, Shea and Castle are alleged to have provided inadequate mental health care. The defendants Armstrong and Rowland are, again, alleged to have received communication about this from the plaintiff. Again, Armstrong and Rowland have insufficient personal involvement in this claim and should be dismissed on that basis.

### 5.     Remaining Claims

The remaining claims against Tarascio and the four sheriff defendants are specific to those defendants and no other defendants are alleged to have been involved.

35

### L.   Mental Health Care Claims Inadequate as Matter of Law

The plaintiff takes issue with what he claims to be a lack of adequate mental health care when he was seeking protective custody and a single cell. His claims in inadequate mental health care are insufficient as a matter of law.

Deliberate indifference to a prisoner's serious medical or mental health need constitutes cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S, 97. 104 (1976). To prevail on such a claim, however, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to serious medical or mental health needs. *Id.* at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical or mental health care or the wanton infliction of unnecessary pain by prison personnel. *Id.* at 104-05. Mere negligence will no support a section 1983 claim; the conduct complained of must shock the conscious or constitute a barbarous act. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996); *Martinez v. Mancusi,* 443 F.2d 921, 923 (2d Cir. 1970).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106. A treating physician will be liable under the Eighth Amendment only if his or her conduct is "repugnant to the conscience of mankind". *Estelle,* 429 U.S. at 105-106. Inmates do not have a constitutional right to the treatment of their choice. *See Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference standard. *Id.* at 702. "[T]he alleged deprivation must be, in objective terms, sufficiently

serious." *Id.* (internal quotes omitted). Thus, not all medical or mental health conditions satisfy this component of the standard. *Id.* Rather, "[a] serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir. 2000) (quotes omitted).

In addition to alleging a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate must allege that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." *Chance,* 143 F.3d at 702. "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id., quoting Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

In this case, the plaintiff contends that his mental health condition, which he concedes in his Amended Complaint  was monitored, constituted a serious medical need and that the defendants differed in their opinion, concluding that the plaintiff was not mentally ill.  The plaintiff has failed to sufficiently allege a claim that the defendants *knew of* and disregarded a serious medical need in that he alleges that they did not feel the plaintiff suffered a mental illness. The plaintiff's allegations concede that the plaintiff was evaluated on more than one occasion, and that he was monitored in his cell by mental health staff.  Accordingly, the plaintiff fails to allege a claim upon which relief can be granted as to his mental health care.

**M.    Qualified Immunity**

The doctrine of qualified immunity protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995); *Oliviera v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076 (1995). This doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their position of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987); *Harlow v. Fitzgerald,* 457 U.S. at 814. Assertion of the privilege should be upheld unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 438 U.S. at 640. The doctrine of qualified immunity for government officials serves not only as a defense from liability, but also to dismiss an action when the plaintiff has failed to claim the violation of clearly established law or to allege the clear violation of a constitutional right. *Behrens v. Pelletier,* 516 U.S. 299, 306-307 (1996).

The defendants have already discussed qualified immunity in the context of plaintiff's claims regarding recreation in restraints. The defendants further submit, generally, that the defendants are likewise entitled to qualified immunity with regard to plaintiff's claims regarding deliberate indifference, the removal of handcuff policy, the claims of inadequate mental health care, and the alleged retaliation by Tarascio. Instructing an inmate to follow the proper chain of command is not a clearly established constitutional violation.

**CONCLUSION:**

For all of the foregoing reasons, the defendants in this case respectfully request that this entire matter be dismissed.

DEFENDANTS
John Rowland, et al

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Lynn D. Wittenbrink
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct08575
lynn.wittenbrink@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 27 day of February 2004:

Lloyd George Morgan
#117796
Cheshire Correctional Institution
900 Highland Ave.
Cheshire CT 06410

CCLU
32 Grand Street
Hartford, CT
06106

_____
Lynn D. Wittenbrink
Assistant Attorney General