BRISTOUT BOURGUIGNON PRISONER v. (WIG) HEINZ SPIELVOGEL, et
al.

Case No. 3:00CV2465 (CFD)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2004 U.S. Dist. LEXIS 5479


March 29, 2004, Decided

PRIOR HISTORY: Bourguignon v. Spielvogel, 2004 U.S. Dist. LEXIS 5476 (D.
Conn., Mar. 29, 2004)

DISPOSITION: Plaintiff's motion for temporary restraining order and preliminary
injunction denied.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff inmate filed a pro se civil rights action and an
application to proceed in forma pauperis pursuant to 28 U.S.C.S. a 1915,
alleging that defendant municipal police officer used excessive force against
him. The inmate filed a motion for temporary restraining order and preliminary
injunction to obtain medical care for injuries he claims to have suffered as a
result of the officer's actions.

OVERVIEW:  The inmate filed civil rights action against the officer and sought a
temporary restraining order and preliminary injunction to obtain medical care
for injuries caused by the officer. The court noted that the inmate was
currently in the custody of the state department of correction. Thus,
correctional officials were responsible for his medical care under Conn. Dep't
Corr. Admin. Directive 8.1(1). Directive 8.1(4) required the department of
correction to provide access to routine and specialized care and to arrange for
off-site examination or other care where required. Thus, any required medical
care for the inmate had to be provided by the department of correction. The
inmate provided no authority indicating that a municipal police department bore
any responsibility for scheduling medical care for an individual no longer in
its custody. The obligation of a municipal police department to provide medical
treatment applied only to persons within its custody. Because the inmate was no
longer in the custody of the municipal police department and no correctional
officers were defendants in the instant case, the court could not issue any
orders regarding the inmate's medical care.

OUTCOME:  The court denied the inmate's motion for a temporary restraining order
and preliminary injunction.

CORE TERMS:  medical care, custody, injunctive relief, preliminary injunction,
personam jurisdiction, police department, oral testimony, police officer,
municipal, inmate, temporary restraining order, correctional, specialized,
injunction, cornea

LexisNexis (TM) HEADNOTES - Core Concepts -   Hide Concepts

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions
Governments: Local Governments: Employees & Officials
Governments: State & Territorial Governments: Employees & Officials
    [HN1] Interim injunctive relief is an extraordinary and drastic remedy
which should not be routinely granted. In addition, a federal court should grant
injunctive relief against a state or municipal official only in situations of
most compelling necessity.

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions
    [HN2] To warrant preliminary injunctive relief, the moving party must
demonstrate (1) that it will be irreparably harmed in the absence of an
injunction, and (2) either (a) a likelihood of success on the merits or (b)
sufficiently serious questions going to the merits of the case to make them a
fair ground for litigation, and a balance of hardships tipping decidedly in its
favor.

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions
    [HN3] Although a hearing is generally required on a properly supported
motion for preliminary injunction, oral argument and testimony are not required
in all cases. Where the record before a district court permits it to conclude
that there is no factual dispute which must be resolved by an evidentiary
hearing, a preliminary injunction may be granted or denied without hearing oral
testimony.

Civil Procedure: Jurisdiction: Personal Jurisdiction & In Rem Actions: Personal
Jurisdiction
Civil Procedure: Injunctions: Preliminary & Temporary Injunctions
    [HN4] The court must have in personam jurisdiction over a person before
it can validly enter an injunction against him.

Civil Procedure: Jurisdiction: Personal Jurisdiction & In Rem Actions: Personal
Jurisdiction
    [HN5] A court ordinarily does not have power to issue an order against a
person who is not a party and over whom it has not acquired in personam
jurisdiction.

Governments: State & Territorial Governments: Employees & Officials
Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment

[HN6] Correctional officials are responsible for an inmate's medical care. Conn. Dep't Corr. Admin. Directive 8.1(1).

Governments: State & Territorial Governments: Employees & Officials
Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
[HN7] See Conn. Dep't Corr. Admin. Directive 8.1(1).

Governments: State & Territorial Governments: Employees & Officials
Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
[HN8] Conn. Dep't Corr. Admin. Directive 8.1(4) requires the Department of Correction to provide access to routine and specialized care and to arrange for off-site examination or other care where required.

Governments: Local Governments: Employees & Officials
Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
[HN9] The obligation of a municipal police department to provide medical treatment applies only to persons within the custody of the department.

Constitutional Law: Substantive Due Process: Scope of Protection
Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
[HN10] The Due Process Clause requires the responsible government or governmental agency to provide medical care to suspects in police custody who have been injured while being apprehended by the police.

COUNSEL: [*1] For Bristout Bourguignon, Plaintiff: Bristout Bourguignon, MacDougall Correctional Institution, Suffield, Ct, PRO SE.

For Hinespell Vogel, TERMINATED: 01/02/2002, Norwalk Police Dept, TERMINATED: 04/26/2001, Bardos, Officer Lt., Yturbe, Officer, Roselle, Officer, Heinz Spievogel, Defendant: M. Jeffry Spahr, Corporation Counsel's Office Cityhall, Norwalk, CT.

JUDGES: Christopher F. Droney United States District Judge.

OPINIONBY: Christopher F. Droney

OPINION: RULING AND ORDER

The plaintiff, Bristout Bourguignon ("Bourguignon"), filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. a 1915. He alleges that Norwalk, Connecticut, police officer Spielvogel, the only remaining defendant, used excessive force against him on November 21, 1998.

Bourguignon has filed a motion for temporary restraining order and preliminary injunction to obtain medical care for injuries he claims to have suffered as a result of defendant Speilvogel's actions.

[HN1] "Interim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'" Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981)[*2] (quoting Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)). In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E.D. Mo.), aff'd, 426 U.S. 943 (1976).

In this circuit the standard for injunctive relief is well established.

[HN2] To warrant preliminary injunctive relief, the moving party "must demonstrate motion (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000).

[HN3] Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. See Drywall Tapers & Pointers Local 1974 v. Local 530, 954 F.2d 69, 76-77 (2d Cir. 1992). Where, as here, [*3] "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., Moore's Federal
Practice P65.04[3] (2d ed. 1995). Upon review of the record, the court determines that oral testimony and argument are not necessary in this case.

[HN4] The court must have in personam jurisdiction over a person before it can validly enter an injunction against him. See Doctor's Assocs., Inc. Reinert & Duree, P.C., 191 F.3d 297, 302 (2d Cir. 1999); 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure a 2956, at 335 (2d ed. 2001)    [HN5] ("A court ordinarily does not have power to issue an order against a person who is not a party and over whom it has not acquired in personam jurisdiction.").

Bourguignon is currently in the custody of the Connecticut Department of Correction and is confined at the Walker Correctional Institution. He states that, in September 2002, he was seen by a Department of Correction physician and referred to an ophthalmologist at the University[*4] of Connecticut Health Center for a consultation regarding corneal abrasions. The following year, he was diagnosed with trauma to the cornea and nerve problems in the cornea. Bourguignon asks the court to order defendant Speilvogel to schedule an appointment for him to receive specialized treatment.

Defendant Speilvogel is a Norwalk, Connecticut, police officer. Bourguignon now is a sentenced inmate. He is in the custody of the Connecticut Department of Correction and    [HN6] correctional officials are responsible for his medical care. See Connecticut Department of Correction Administrative Directive 8.1(1), http://www.ct.gov/doc    [HN7] ("The Department shall provide a range of health services to deliver an appropriate standard of care to the inmates under the care of the agency.")    [HN8] The directive requires the Department of Correction to provide access to routine and specialized care and to arrange for off-site examination or other care where required. See Administrative Directive 8.1(4). Thus, any required medical care must be provided by the Department of Correction. Bourguignon provides no authority indicating that a municipal police department bears any responsibility for scheduling[*5] medical care for an individual no longer in its custody. [HN9] The obligation of a municipal police department to provide medical treatment applies only to persons within the custody of the department. See Revere v. Massachusetts General Hosp., 463 U.S. 239, 244, 77 L. Ed. 2d 605, 103 S. Ct. 2979 (1983) (holding that    [HN10] the Due Process Clause requires the responsible government or governmental agency to provide medical care to suspects in police custody who have been injured while being apprehended by the police) (emphasis added).
Because Bourguignon is no longer in the custody of the

Norwalk Police Department and no correctional officials are defendants in this case, the court cannot issue any orders regarding Bourguignon's medical care.

Bourguignon's motion for temporary restraining order and preliminary injunction [doc. # 64-1, 64-2] is DENIED.

SO ORDERED this day of March, 2004, at Hartford, Connecticut.
Christopher F. Droney United States District Judge

THADDEUS TAYLOR v. JOHN ROWLAND, et al.

PRISONER Case No. 3:02cv229 (DJS) (TPS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2004 U.S. Dist. LEXIS 1556

February 2, 2004, Decided

DISPOSITION: Motions for preliminary injunctive relief denied.

CASE SUMMARY

PROCEDURAL POSTURE:  In a 28 U.S.C.S. a 1915 case, pro se plaintiff inmate brought a civil rights action challenging various conditions of confinement within the protective custody unit where he was incarcerated. He also challenged other aspects of his incarceration. The inmate filed two motions for preliminary injunctive relief. Defendants opposed the motions.

OVERVIEW:  In the first motion for preliminary injunctive relief, the inmate asked the court to order that he be provided access to his legal case files within 48 hours of any request and seven legal phone calls per month. In addition, he asked that correctional staff stop harassing him for filing this lawsuit. In the second motion, he asked the court to prevent the Connecticut Department of Correction from implementing its plan to reorganize the protective custody unit at the correctional facility in which he was incarcerated by separating the inmates housed there into violent and non-violent subgroups. Defendants argued that the motions had to be denied because the inmate was no longer incarcerated at the facility in question, but had been transferred. The inmate's challenges to the classification of inmates was moot. To the extent the inmate was challenging his classification as a violent protective custody inmate, he did not state a cognizable claim. The inmate did not allege any facts suggesting that defendants had retaliated against him for filing lawsuits.

OUTCOME:  The inmate's motions for preliminary injunctions were denied.

CORE TERMS:  classification, injunctive relief, inmate, prisoner, protective custody, liberty interest, lawsuit, preliminary injunction, moving party, moot, retaliation, correctional, unrelated, prison, violent, phone, staff, protected liberty interest, likelihood of success, mandatory injunction, civil rights action, irreparable harm, oral testimony, status quo, entitlement, challenging, injunction, retaliated, federally, prevail

LexisNexis (TM) HEADNOTES - Core Concepts -  Hide Concepts

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions
    [HN1] Interim injunctive relief is an extraordinary and drastic remedy which should not be routinely granted.

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions
    [HN2] A federal court should grant injunctive relief against a state or municipal official only in situations of most compelling necessity.

Civil Procedure: Injunctions: Elements
    [HN3] The standard for injunctive relief is well established. To warrant preliminary injunctive relief, the moving party must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either a likelihood of success on the merits or sufficiently serious questions going to

the merits of the case to make them a fair ground for litigation, and (3) a balance of hardships tipping decidedly in its favor.

Civil Procedure: Injunctions: Mandatory Injunctions

[HN4] Where the moving party seeks a mandatory injunction, i.e., injunctive relief which changes the parties' positions rather than maintains the status quo, or the injunction requested will provide substantially all the relief sought, and that relief cannot be undone even if the nonmovant prevails at a trial on the merits, the moving party must make a stronger showing of entitlement.

Civil Procedure: Injunctions: Mandatory Injunctions

[HN5] A mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested or where extreme or very serious damage will result from a denial of preliminary relief.

Civil Procedure: Injunctions: Elements

[HN6] Although a showing that irreparable injury will be suffered before a decision on the merits may be reached is insufficient by itself to require the granting of a preliminary injunction, it is nevertheless the most significant condition which must be demonstrated. To demonstrate irreparable harm, the movant must show an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions

[HN7] Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. Where the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony.

Civil Procedure: Justiciability: Mootness
Civil Procedure: Injunctions: Preliminary & Temporary Injunctions

[HN8] Requests for injunctive relief become moot when an inmate is released or transferred to a different correctional facility.

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions

[HN9] Preliminary injunctive relief is designed to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint.

Constitutional Law: Substantive Due Process: Scope of Protection

[HN10] Federal prisoners have no protected interest in their classification that would invoke due process protections, because Congress has given federal prison officials full discretion to determine prisoner classifications. Similarly, where state prison officials are given complete discretion in determining inmate classifications, state prisoners do not have any constitutionally or federally protected right to a particular classification. There is no due process issue in class status of prisoner when a prisoner fails to point out any state statute, regulation, or policy statement that limits prison officials' discretion in classifying prisoner.

Constitutional Law: Substantive Due Process: Scope of Protection
[HN11] The improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action.

Constitutional Law: Substantive Due Process: Scope of Protection
[HN12] Connecticut inmates have no state or federally created liberty interest in their classification.

Constitutional Law: Civil Rights Enforcement: Prisoners
[HN13] To state a claim for retaliation, an inmate must allege facts demonstrating first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials. Because of the ease with which claims of retaliation may be fabricated, a court examines a prisoner's claims of retaliation with skepticism and particular care. A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.

COUNSEL: [*1] Thaddeus M Taylor, PLAINTIFF, Pro se, Cheshire, CT USA.

JUDGES: Dominic J. Squatrito, United States District Judge.

OPINIONBY: Dominic J. Squatrito

OPINION: RULING ON MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

The plaintiff, Thaddeus Taylor ("Taylor"), brings this civil rights action pro se pursuant to 28 U.S.C. a 1915. He challenges various conditions of confinement within the protective custody unit at the Cheshire Correctional Institution and other aspects of his incarceration from 1994 through October 2002. Taylor has filed two motions for preliminary injunctive relief. For the reasons that follow, Taylor's motions are denied.

I. Standard of Review

[HN1] "Interim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'" Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (quoting Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)), In addition,

[HN2] a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E. [*2] D. Mo.), aff'd, 426 U.S. 943 (1976).

In this circuit    [HN3] the standard for injunctive relief is well established. To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000).    [HN4] Where the moving party seeks a mandatory injunction, i.e., injunctive relief which changes the parties' positions rather than maintains the status quo, or the injunction requested "will provide substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits," the moving party must make a stronger showing of entitlement. Brewer, 212 F.3d at 744 (internal quotation marks and citation omitted).    [HN5] A mandatory injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested" [*3] or where "extreme or very serious damage will result from a denial of preliminary relief." Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)(citations omitted).

[HN6] Although a showing that irreparable injury will be suffered before a decision on the merits may be reached is insufficient by itself to require the granting of a preliminary injunction, it is nevertheless the most significant condition which must be demonstrated. See Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985). To demonstrate irreparable harm, plaintiff must show an "'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 153 (2d Cir. 1999) (quoting Rodriguez v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998)).

[HN7] Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. See Drywall Tapers & Pointers Local 1974 v. Local 530, 954 F.2d 69, 76-77 (2d Cir. 1992), Where, as here, [*4] "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be

granted or denied without hearing oral testimony." 7 James W. Moore, et al.,
Moore's Federal Practice P65.04[3] (2d ed. 1995). Upon review of the record, the
court determines that oral testimony and argument are not necessary in this
case.

II. Discussion

    In the first motion for preliminary injunctive relief Taylor asks the court
to order that he be provided access to his legal case files within 48 hours of
any request and seven legal phone calls per month. In addition, he asks that
correctional staff stop harassing him for filing this lawsuit. In the second
motion, Taylor asks the court to prevent the Department of Correction from
implementing its plan to reorganize the protective custody unit at Cheshire
Correctional Institution by separating the inmates housed there into violent
and non-violent subgroups. Taylor contends that this classification was done as
harassment for past legal actions filed by protective custody inmates and has
resulted in reduced privileges and opportunities for recreation[*5] and other
out-of-cell activities for the violent inmate subgroup, of which he is a member.

    Defendants argue that Taylor's motions must be denied because he no longer is
confined in the protective custody unit at Cheshire Correctional Institution.
Taylor also has filed an affidavit indicating that he was transferred to the
Corrigan/Radgowski Correctional Institution on December 8, 2003.

    The Second Circuit has held that      [HN8] requests for injunctive relief
become moot when an inmate is released or transferred to a different
correctional facility. See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir.
1976). See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983)
("The hallmark of a moot case or controversy is that the relief sought can no
longer be given or is no longer needed"). Because Taylor no longer is confined
at the Cheshire Correctional Institution his challenges to the classification of
inmates in the protective custody unit at Cheshire Correctional Institution,
denial of sufficient legal phone calls or access to his legal materials, or
harassment by correctional staff at Cheshire Correctional Institution are now
moot. Thus, Taylor's motions[*6] for preliminary injunctive relief are denied as
moot.

    In addition, even if the claims were not moot, they should be denied.
[HN9] Preliminary injunctive relief is designed "to preserve the status quo and
prevent irreparable harm until the court has an opportunity to rule on the
lawsuit's merits." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994)
(per curiam). To prevail on a motion for preliminary injunctive relief, the
moving party must establish a relationship between the injury claimed in the
motion and the conduct giving rise to the complaint. See id.; see also
Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir.
1997) (reversing district court's granting of motion for preliminary injunctive

relief because injury sought to be prevented through preliminary injunction was unrelated and contrary to injury which gave rise to complaint).

The issues in this case concern events occurring prior to October 22, 2002, the date Taylor filed his amended complaint. The reclassification of inmates housed in the protective custody unit did not occur until November 2003. Thus, the second motion for preliminary injunctive relief is unrelated[*7] to the issues in the amended complaint and is not proper in this action. Further, any claim that, currently, Taylor lacks a sufficient number of legal phone calls per month to contact attorneys representing him in other lawsuits is unrelated to this action.

In addition, to the extent that Taylor is challenging his classification as a violent protective custody inmate, his claim is not cognizable. The Supreme Court has held that      [HN10] federal prisoners have no protected interest in their classification that would invoke due process protections, because Congress has given federal prison officials full discretion to determine prisoner classifications. Moody v. Daggett, 429 U.S. 78, 89 n.9, 50 L. Ed. 2d 236, 97 S. Ct. 274 (1976). Similarly, where state prison officials are given complete discretion in determining inmate classifications, state prisoners do not have any constitutionally or federally protected right to a particular classification. See Madewell v. Roberts, 909 F.2d 1203, 1207 (8th Cir. 1990) (no due process issue in class status of prisoner where prisoner failed to point out any state statute, regulation or policy statement that limited prison officials' discretion[*8] in classifying prisoner).

As this district has previously found,      [HN11] the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action. See Green v. Armstrong, No. 3:96cv1127(AVC)(TPS), slip op. at 10 (D. Conn. Feb. 25, 1998), aff'd, 1999 U.S. App. LEXIS 20207, No. 98-3707 (Aug. 20, 1999) (summary order). In Green, the district court noted that the state courts have found no state-created liberty interest in proper classification. Id. at 10 (citing Santiago v. Commissioner of Correction, 39 Conn. App. 674, 680, 667 A.2d 304, 307 (1995), for the proposition that improper classification does not deprive inmates of any legally recognized liberty interest). See Wheway v. Warden, 215 Conn. 418, 430-32, 576 A.2d 494 (1990) (holding that Commissioner of Correction retains discretion to classify prisoners to any security level and prison classification programs do not create any liberty interest or any constitutional entitlement to due process); Miller v. Warden, 2000 Conn. Super. LEXIS 1928, No. CV 000598372, 2000 WL 1258429, at *1 (Conn. Super. Ct. July 21, 2000) ("The Connecticut case of Wheway v. Warden, 215 Conn. 418, 430-31, 576 A.2d 494 (1990),[*9] established in Connecticut that an inmate has no liberty interest in a particular security classification.").

Thus,      [HN12] Connecticut inmates have no state or federally created

liberty interest in their classification. See Allen v. Armstrong, No.
3:98cv668(PCD), slip. op. at 2 (D. Conn. Sept. 15, 2000) (holding that the due
process clause affords prisoners no protection from erroneous classifications);
Nieves v. Coggeshall, 2000 U.S. Dist. LEXIS 16296, No. 3:96cv1799 DJS, 2000
WL 340749, at *5 (D. Conn. Jan. 31, 2000) (holding that inmate has no protected
liberty interest in his classification); United States v. Harmon, 999 F.
Supp. 467, 469-70 (W.D.N.Y. 1998) (holding that federal inmate has no liberty
interest in any particular classification). See also Pugliese v. Nelson,
617 F.2d 916, 923-24 & nn. 5, 6 (2d Cir. 1980) (no due process liberty interest
in avoiding prisoner classification that delayed or precluded participation in
institutional programs).

Because Taylor has no protected liberty interest in his classification, he
has not demonstrated a likelihood of success on the merits of any challenge to
this purported classification. Thus, his motion for preliminary injunctive[*10]
relief challenging the reorganization of the protective custody unit would be
denied.

Further, Taylor argues that correctional staff has retaliated against him for
filing lawsuits.     [HN13] To state a claim for retaliation, Taylor must
allege facts demonstrating "first, that he engaged in constitutionally protected
conduct and, second, that the conduct was a substantial or motivating factor for
the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d
133, 137 (2d Cir. 2003). Because of the "ease with which claims of retaliation
may be fabricated," however, the court "examines prisoners' claims of
retaliation with skepticism and particular care." Colon v. Coughlin, 58
F.3d 865, 872 (2d Cir. 1995). "[A] complaint which alleges retaliation in
wholly conclusory terms may safely be dismissed on the pleadings alone."
Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).

Taylor alleges no facts in his motions for preliminary injunctive relief
suggesting that the defendants have retaliated against him for filing lawsuits.
In each motion he assumes that the actions must have been taken to harass him
for this or prior lawsuits.[*11] Taylor's surmise is insufficient to support an
award of preliminary injunctive relief. Thus, even if the request were not moot,
the motion would be denied.

III. Conclusion

Taylor's Motions for Preliminary Injunction [docs. # # 54, 57] are DENIED.

SO ORDERED in Hartford, Connecticut, this 2nd day of February, 2004.

Dominic J. Squatrito

United States District Judge

ALLAN C. NICHOLSON, PRISONER v. WARDEN BRIAN MURPHY, et al.
n1


n1 The defendants are Warden Brian Murphy, Major Carter,
Captain Cleaver, Captain Luna, Lieutenant Fisher,
Correctional Officer Howell, Counselor Wilson, Correctional
Treatment Officer Haskins and Grievance Coordinator
Breedlove.

CASE NO. 3: 02CV1815 (MRK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2003 U.S. Dist. LEXIS 22165


September 19, 2003, Decided

PRIOR HISTORY: Nicholson v. Murphy, 2003 U.S. Dist. LEXIS 25245 (D. Conn.,
June 19, 2003)

DISPOSITION: Defendants' motion to dismiss was granted and case was dismissed.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff inmate filed a civil rights action against
defendant prison officials alleging that, while he was confined at a prior
prison, his rights under U.S. Const. amend. IV, V, VIII, XIII, XIV, and Conn.
Const. art. I, aa 7, 8, 20, 17, were violated. The officials moved to dismiss
for failure to exhaust administrative remedies and Eleventh Amendment immunity.
The inmate sought preliminary injunctive relief seeking access to the law
library.

OVERVIEW:  There was no constitutional right of access to a prison law library
and no actual injury shown. Due to the transfer to another prison, declaratory
and injunctive relief against current prison officials was moot. Claims of
unconstitutional treatment, conditions of confinement, denial of payment, and
interference with access to the grievance process were not timely filed in a
grievance. But the grievance as to placement in a disciplinary unit was timely

filed and was exhausted. An award of damages against the officials in their official capacities was barred by the Eleventh Amendment. There were no allegations that confinement in the disciplinary unit was inhumane or deprived him of adequate food, clothing, shelter, sanitation, medical care, or safety. He did not allege any objectively serious conduct other than ordinary lack of care for his interests and concerns; the Eighth Amendment claim failed. There was no protected liberty interest in avoiding transfer to another unit and no Due Process Clause right to a pre-transfer hearing. And, he was only held there for 27 days. Nothing suggested intentional discrimination. Supplemental jurisdiction over the state law claims was declined.

OUTCOME:  The motion to dismiss the federal claims was granted without prejudice, with the court declining to exercise supplemental jurisdiction over the state law claims.

CORE TERMS:  inmate, grievance, prison, injunctive relief, motion to dismiss, confinement, administrative remedies, disciplinary, prisoner, restrictive, confined, hardship, exhaust, disciplinary hearing, protected liberty interest, supplemental jurisdiction, correctional facility, atypical, housing unit, housing, correctional institution, exhaustion requirement, constitutional rights, affirmative defense, failure to exhaust, fails to state, demonstrating, state law, declaratory, placement

LexisNexis (TM) HEADNOTES - Core Concepts - Hide Concepts

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss
     [HN1] When considering a Fed. R. Civ. P. 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims. In its review of a motion to dismiss, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss
Civil Procedure: Joinder of Claims & Parties: Self-Representing Parties
     [HN2] The United States Court of Appeals for the Second Circuit ordinarily requires the district courts to give substantial leeway to pro se litigants in considering motions to dismiss under Fed. R. Civ. P. 12(b).

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions

[HN3] Preliminary injunctive relief is designed to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint.

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions

[HN4] Interim injunctive relief is an extraordinary and drastic remedy which should not be routinely granted. In addition, a federal court should grant injunctive relief against a state or municipal official only in situations of most compelling necessity.

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions

[HN5] To warrant preliminary injunctive relief, the moving party must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and (3) a balance of hardships tipping decidedly in its favor.

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions

[HN6] Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. Where the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony.

Constitutional Law: Civil Rights Enforcement: Prisoners: Access to Courts

[HN7] To show that the defendants violated a plaintiff inmate's right of access to the courts, an inmate must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct. There is no requirement that prison officials ensure that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court.

Civil Procedure: Justiciability: Standing
Constitutional Law: Civil Rights Enforcement: Prisoners: Access to Courts

[HN8] Law libraries and legal assistance programs do not represent constitutional rights in and of themselves. They are only the means to ensure a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. Thus, prisoners must demonstrate "actual injury" in order to have standing to bring a claim for denial of access to the courts.

Civil Procedure: Justiciability: Mootness
Civil Procedure: Injunctions: Preliminary & Temporary Injunctions
Constitutional Law: Civil Rights Enforcement: Prisoners: Confinement Conditions

[HN9] An inmate's request for declaratory and injunctive relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution.

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies
Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN10] The United States Court of Appeals for the Second Circuit considers the failure to exhaust administrative remedies an affirmative defense. A defendant in a prisoner 42 U.S.C.S. @ 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the Prison Litigation Reform Act's requirements that a plaintiff first exhaust all administrative remedies. By characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss. Rather, the defendants must present proof of non-exhaustion.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Affirmative Defenses
Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss

[HN11] A court may consider an affirmative defense on a motion to dismiss where the defense is evident on the face of the complaint.

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies
Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act
Constitutional Law: Civil Rights Enforcement: Prisoners: Confinement Conditions

[HN12] The Prison Litigation Reform Act, 42 U.S.C.S. @ 1997e(a), requires an inmate to exhaust administrative remedies as are available before bringing an action with respect to prison conditions. This provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may obtain the specific relief he desires through the administrative process.

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies
Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN13] 42 U.S.C.S. @ 1997e(a) expressly states that inmates must exhaust all available administrative remedies before filing suit. Therefore, any attempt to exhaust administrative remedies after the case is filed is ineffective to satisfy the exhaustion requirement. In addition, prison officials

are entitled to require strict compliance with an existing grievance procedure.

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner
Rights
Constitutional Law: Civil Rights Enforcement: Prisoners: Confinement Conditions
    [HN14] The Administrative Directives for the Connecticut Department of
Correction are written guidelines, promulgated pursuant to Conn. Gen. Stat. a
18-81, establishing the parameters of operation for Connecticut correctional
facilities. The Administrative Directives are analogous to the Program
Statements promulgated by the federal Bureau of Prisons (BOP).

Evidence: Procedural Considerations: Judicial Notice
Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner
Rights
    [HN15] Courts have taken judicial notice of the federal Bureau of
Prisons' Program Statements.

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner
Rights
Constitutional Law: Civil Rights Enforcement: Prisoners: Confinement Conditions
    [HN16] Conn. Code Penal Disc. Admin. Directive 9.6, a 10(G), requires
that a grievance be filed within 30 days from the occurrence of the incident.

Civil Procedure: State & Federal Interrelationships: Amendment 11
    [HN17] Generally, a suit for recovery of money may not be maintained
against the state itself, or against any agency or department of the state,
unless the state has waived its sovereign immunity under the Eleventh Amendment.

Civil Procedure: State & Federal Interrelationships: Amendment 11
Constitutional Law: Civil Rights Enforcement: Immunity: State Consent & Waiver
of Immunity
    [HN18] 42 U.S.C.S. a 1983 does not override a state's Eleventh
Amendment immunity.

Civil Procedure: State & Federal Interrelationships: Amendment 11
Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials
    [HN19] The Eleventh Amendment immunity which protects the state from
suits for monetary relief also protects state officials sued for damages in
their official capacity. A suit against a defendant in his official capacity is
ultimately a suit against the state if any recovery would be expended from the
public treasury.

Constitutional Law: Cruel & Unusual Punishment

Constitutional Law: Procedural Due Process: Scope of Protection

[HN20] The Eighth Amendment prohibits the infliction of "cruel and unusual punishment," U.S. Const. amend. VIII, and it applies to the states through the Due Process Clause of the Fourteenth Amendment.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Prisoners: Confinement Conditions

[HN21] After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To prove a violation of the Eighth Amendment, therefore, an inmate must show (1) that the deprivation is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities, and (2) that the defendant official possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain. Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. Sentenced prisoners are entitled to adequate food, clothing, shelter, sanitation, medical care, and personal safety. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Prisoners: Transfers

[HN22] An inmate has no inherent right to remain in any particular correctional facility or area within a correctional facility. The transfer of an inmate from one correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one prison are more disagreeable or the prison has more severe rules. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

Constitutional Law: Procedural Due Process: Scope of Protection
Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline

[HN23] To state a claim that the failure to hold a disciplinary hearing while being confined in a particular unit violated an inmate's right to due process, the inmate must demonstrate that he possessed a protected liberty or property interest and that he was denied that interest without being afforded due process of law. The inmate bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. If he is unable to show the existence of a protected interest, the claim must be dismissed regardless whether the defendants acted in accordance with the requisite procedures.

Constitutional Law: Procedural Due Process: Scope of Protection
Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline

[HN24] A protected liberty interest generally will arise only where, as punishment for alleged misconduct, a prisoner is involuntarily placed in confinement which is "qualitatively different" from the punishment characteristically suffered by a person convicted of a crime and results in "stigmatizing consequences." Thus, to show that a liberty interest is sufficient to invoke the protections of the Due Process Clause, a prisoner must establish both that his resulting confinement or restraint creates an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights
Constitutional Law: Civil Rights Enforcement: Prisoners: Transfers

[HN25] Confinement in segregation is confinement that an inmate should reasonably anticipate.

Constitutional Law: Procedural Due Process: Scope of Protection
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights
Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline

[HN26] Keeplock or segregated housing unit confinement of 30 days or less in a prison is not atypical or significant hardship for purposes of a protected liberty interest in due process claims involving prison disciplinary hearings.

Constitutional Law: Equal Protection: Scope of Protection

[HN27] The Equal Protection Clause provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. This provision does not mandate identical treatment for each individual, rather it requires that all persons similarly situated should be treated alike.

Constitutional Law: Equal Protection: Scope of Protection

[HN28] To state an equal protection claim, a plaintiff must charge a government officer not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation. State legislation that creates suspect or "quasi-suspect" classifications or that impinges a fundamental right is subject to heightened judicial scrutiny. All other classifications are valid if they are rationally related to a legitimate state interest.

Constitutional Law: Equal Protection: Scope of Protection
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner

Rights
Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline
     [HN29] A court does not apply a heightened standard of review to prisoner claims of a denial of equal protection because prisoners either in the aggregate or specified by offense are not a suspect class.

Civil Procedure: Jurisdiction: Subject Matter Jurisdiction: Supplemental Jurisdiction
     [HN30] Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case.

Civil Procedure: Jurisdiction: Subject Matter Jurisdiction: Supplemental Jurisdiction
     [HN31] The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience, and fairness to the litigants. The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent. In addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C.S. a 1367(c)(3).

COUNSEL: [*1] Allan C Nicholson, PLAINTIFF, Pro se, Somers, CT USA.
For Brian Murphy, Warden, I/O, Carter, Major, I/O, Cleaver, I/O, Luna, Capt, I/O, Fisher, Lt, I/O, Howell, Co, I/O, Wilson, Counsel, I/O, Haskins, Corr Treatment Ofcr, I/O, Breelove, Grievance Coordinator, I/O, DEFENDANTS: Robert Bishop Fiske, III, Attorney General's Office Public Safety & Special Revenue, Hartford, CT USA.

JUDGES: Mark R. Kravitz, United States District Judge.

OPINIONBY: Mark R. Kravitz

OPINION: RULING AND ORDER

    Plaintiff Allan C. Nicholson ("Nicholson") is an inmate currently confined at the Osborn Correctional Institution in Somers, Connecticut. He brings this civil rights action pro se pursuant to 28 U.S.C. a 1915. Nicholson alleges that, while he was confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, the defendants violated his rights under the Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments of the U.S. Constitution and under Article first, sections seven, eight, twenty and seventeen of the Connecticut Constitution. The defendants have moved to dismiss this case on various grounds. For the reasons that follow, the defendants' motion is granted[*2] and this case is dismissed.

I. Standard of Review

        [HN1] When considering a Rule 12(b) motion to dismiss, the
court accepts as true all factual allegations in the complaint and draws
inferences from these allegations in the light most favorable to the plaintiff.
See Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683,
71 Ohio Op. 2d 474 (1974); Thomas v. City of N. Y., 143 F.3d 31, 37 (2d
Cir. 1998). Dismissal is warranted only if, under any set of facts that the
plaintiff can prove consistent with the allegations, it is clear that no relief
can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000);
Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion
to dismiss is not whether the plaintiff will prevail, but whether the plaintiff
is entitled to offer evidence to support his or her claims." Branham v.
Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Gant v. Wallingford Bd.
of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted). In its
review of a motion to dismiss, the court may consider "only the facts alleged in
the pleadings, documents[*3] attached as exhibits or incorporated by reference
in the pleadings and matters of which judicial notice may be taken."
Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).
[HN2] The Second Circuit "ordinarily requires the district courts to give
substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d
1330, 1335 (2d Cir. 1992).

II. Facts

    The court accepts as true the following facts, which are taken from the
complaint and attached exhibits.

    On April 8, 2002, defendant Howell observed inmate Davenport, Nicholson's
cellmate, using a make-shift punching bag tied to a rope that had been strung
across the width of the cell. Defendant Haskins told inmate Davenport to remove
the punching bag and informed him that he would receive a disciplinary report.
Defendant Haskins woke Nicholson, who was sleeping in his bunk, and asked
whether Nicholson also used the punching bag. Nicholson denied any involvement.
Both inmates were ordered to leave the cell and go to the television room.
Defendant Fisher removed the punching bag and spoke to inmate Davenport about
the rope. Inmate Davenport was handcuffed and taken to the restrictive[*4]
housing unit. En route, inmate Davenport told defendant Fisher that Nicholson
was not involved in the incident. Nicholson also was handcuffed and taken to the
restrictive housing unit.

    Nicholson received a form stating that he was being held in administrative
detention pending further investigation of the incident. Subsequently, he
received a Class A disciplinary charge of violation of institutional rules. On
April 10, 2002, defendants Luna and Wilson interviewed Nicholson regarding the

disciplinary charge. Although Nicholson denied any knowledge of the rope, defendant Luna did not believe that he did not know that there was a rope in the cell.

On April 12, 2002, Nicholson was moved to unit H-2-76. This unit was used to house inmates found guilty of disciplinary charges. No disciplinary sanctions had been imposed on Nicholson and he had not pled guilty or been found guilty of the charge. Defendant Cooper told Nicholson that he should not be housed in that unit and said that he would look into the matter. The following week, defendant Cleaver informed Nicholson that the disciplinary charge had been reduced from Class A to Class B, and then to Class C.

Disciplinary hearings usually[*5] were held on Thursday. On April 18, 2002, Nicholson was not taken to a disciplinary hearing. The following week, Nicholson spoke to defendant Murphy, who referred Nicholson to defendant Carter. Defendant Carter told Nicholson that he would not be moving back to I-pod. Nicholson was not called for a disciplinary hearing on April 25, 2002, or May 2, 2002.

On May 7, 2002, defendant Cleaver told Nicholson that he would release him from H-2 if Nicholson were not called for a disciplinary hearing that Thursday. On May 10, 2002, Nicholson informed defendant Cleaver that he had not been called for a disciplinary hearing on the previous day. Nicholson was moved to I-2 that evening.

After two weeks, Nicholson got his "blues" which would allow him to return to his prison work assignment. He returned to his assignment at Graphic Arts on May 29, 2002. On July 15, 2002, Nicholson discovered that he was not being paid for working. He was told that he had to be reclassified and should not return to his work assignment until his name had been added to the school roster. On July 26, 2002, Nicholson was reclassified for work assignment purposes.

On May 12, 2002, Nicholson filed a Level 1 Grievance.[*6] On July 5, 2002, he received what he considered an inadequate response. On July 7, 2002, Nicholson filed a Level 2 grievance. On August 5, 2002, he filed a Level 3 grievance. On August 12, 2002, defendant Breedlove returned the Level 3 grievance and told Nicholson that it had not been timely filed. When Nicholson tried to explain why the grievance was timely, defendant Breedlove used derogatory language toward him. Nicholson reported the encounter with defendant Breedlove to defendant Murphy who said the defendant Breedlove was wrong. Defendant Murphy told Nicholson to give the grievance to defendant Luna who would forward it to Murphy. Although defendant Luna told Nicholson that he would see him later in the housing unit to get the grievance, he did not do so. On August 14, 2002, before Nicholson could see defendant Luna, defendant Breedlove returned a second grievance packet to Nicholson. The Level 2 grievance in the second packet indicated that the decision could not be appealed to Level 3.

III. Discussion

Nicholson includes in his complaint the following claims: (1) he was subjected to an unreasonable seizure and deliberate indifference to his right to be secure in his[*7] person when he was handcuffed, sent to the television room and then sent to the restrictive housing unit; (2) he improperly continued to be held in the sanctions unit when no disciplinary sanctions had been imposed; (3) he was falsely accused of having knowledge of the rope; (4) he was subjected to cruel and unusual punishment and denied due process and equal protection by the defendants' failure to comply with institutional rules and directives; (5) he was denied his rights under the Thirteenth Amendment when defendants approved him for return to his work assignment but failed to pay him.

The defendants move to dismiss this action. Nicholson opposes the motion and also has filed a motion for preliminary injunctive relief.

A. Nicholson's Motion for Preliminary Injunctive Relief

Nicholson has filed a motion for preliminary injunctive relief seeking access to the law library at Osborn Correctional Institution for five hours per week. In his motion, Nicholson alleges that Osborn Correctional Institution was "allowing access of approximately two to three hours per week to the library, however, in the previous two and a half weeks access has been completely denied."

[HN3] Preliminary[*8] injunctive relief is designed "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. See id.; see also Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997) (reversing district court's granting of motion for preliminary injunctive relief because injury sought to be prevented through preliminary injunction was unrelated and contrary to injury which gave rise to complaint).

The issues in this case concern events at MacDougall-Walker Correctional Institution which occurred prior to May 10, 2002, the date Nicholson was returned to a cell in I-2 unit. The request for preliminary injunctive relief concerns Nicholson's present inability to go to the prison law library at Osborn Correctional Institution for five hours per week. Thus, this request for preliminary injunctive relief is unrelated[*9] to the issues in the amended complaint and is not proper in this action.

Further, even if the request were proper, the motion should be denied. [HN4] "[I] nterim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted. '" Buffalo Forge Co. v.

Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (quoting Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)). In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E. D. Mo.), aff'd, 426 U.S. 943, 49 L. Ed. 2d 1180, 96 S. Ct. 3160 (1976).

In this Circuit the standard for injunctive relief is well established.

[HN5] To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000).[*10]

[HN6] Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. See Drywall Tapers & Pointers Local 1974 v. Local 530, 954 F.2d 69, 76-77 (2d Cir. 1992). Where, as here, "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., Moore's Federal Practice P65.04[3] (2d ed. 1995). Upon review of the record, the court determines that oral testimony and argument are not necessary. In this regard, the court notes that in his motion for a preliminary injunction, Nicholson himself states that "no oral argument [is] requested" and "testimony is not required."

In Lewis v. Casey, 518 U.S. 343, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996), the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right. The Court held that      [HN7] to show that the defendants violated his right of access[*11] to the courts, an inmate must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct. See id. at 349. As an illustration, the Court noted that if an inmate were able to show that, as a result of the defendant's action, he was unable to file an initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim, he could state a claim for denial of access to the courts. See id. at 351. The Court, however, specifically disclaimed any requirement that prison officials ensure that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court. See id. at 355.

[HN8] Law libraries and legal assistance programs do not represent

constitutional rights in and of themselves. They are only the means to ensure "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Id. at 351 (internal quotation marks omitted). Thus, prisoners must demonstrate "actual injury" in order to[*12] have standing to bring a claim for denial of access to the courts. See id.

Nicholson has not alleged any facts demonstrating an actual injury. At this time, he has responded to the defendants' motion to dismiss and no further legal research is required or even alleged to be required. Should further legal research be needed, Nicholson may contact Inmates' Legal Assistance Program. Because Nicholson has no constitutional right of access to a prison law library and has not alleged facts demonstrating an actual injury, his motion for preliminary injunctive relief should be denied on the merits as well.

B. Claims for Declaratory and Injunctive Relief

The defendants have not addressed specifically Nicholson's claims for declaratory and injunctive relief. The Second Circuit has held that [HN9] an inmate's request for declaratory and injunctive relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark[*13] of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Other courts concur with this result. See, e. g., McAlpine v. Thompson, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement); Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993) (holding that inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that inmate's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit).

Nicholson indicates in his motion for injunctive relief that he has been transferred to Osborn Correctional Institution. Thus, his request for declaratory and injunctive relief against the defendants, correctional officials assigned to MacDougall-Walker Correctional Institution,[*14] is moot. These claims are dismissed pursuant to 28 U.S.C. a 1915(e)(2)(B)(ii) which requires the court to dismiss, at any time, an action that fails to state a claim upon which relief may be granted.

C. Defendants' Motion to Dismiss

The court next considers the defendants' motion to dismiss the complaint. The

defendants raise six grounds in support of their motion: (1) Nicholson failed to timely or completely exhaust his administrative remedies with regard to each claim asserted in the complaint before commencing this action, (2) the Eleventh Amendment bars all claims for damages based upon violation of state law and all claims for damages against the defendants in their official capacities for violation of federal rights, (3) Nicholson fails to state a claim for violation of any rights guaranteed by the Fifth, Eighth or Thirteenth Amendments, (4) Nicholson fails to state a claim for denial of his right to equal protection of the laws, (5) Nicholson fails to state a claim for denial of his Fourteenth Amendment right to substantive or procedural due process, and (6) the defendants are protected by qualified immunity.

1. Exhaustion of Administrative Remedies[*15].

The defendants argue that Nicholson failed to timely and completely exhaust his administrative remedies before commencing this action. In response, Nicholson argues that he filed grievances at Levels 1, 2 and 3, thereby exhausting his administrative remedies. Copies of Nicholson's grievances are attached to the complaint.

[HN10] The Second Circuit considers the failure to exhaust administrative remedies an affirmative defense. "A defendant in a prisoner a 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [that plaintiff first exhaust all administrative remedies]." Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). By characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss. Rather, the defendants must present proof of non-exhaustion. See also Reyes v. Punzal, 206 F. Supp. 2d 431, 433 (W. D.N.Y. 2002) ("in the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense ...and ...defendant bears the burden of[*16] proving plaintiff's failure to comply with the exhaustion requirement")(citations omitted); Hallett v. New York State Dep't of Correctional Servs., 109 F. Supp. 2d 190, 196-97 (S. D.N.Y. 2000) (same). But see Snider v. Melindez, 199 F.3d 108, 111-14 (2d Cir. 1999) (creating an exception to this rule by permitting the court to dismiss a complaint sua sponte, after notice to the plaintiff and an opportunity to be heard, where the plaintiff's failure to exhaust administrative remedies under the PLRA is "readily apparent," or "unambiguously established in the record").

Nicholson has received notice of the exhaustion requirement in the defendants' motion to dismiss. In response, he argues that he complies with the exhaustion requirement, and he has attached copies of his grievance forms to the complaint. Nicholson does not argue that he made any other attempts to exhaust his administrative remedies with regard to the claims asserted in this case beyond the copies of grievances attached to his complaint and he has not provided the court with copies of any other grievance forms. Thus, because the

court need not consider any material outside of the pleadings[*17] to resolve this issue, it may consider the exhaustion issue in deciding the motion to dismiss. See, e. g., Willner v. Town of North Hempstead, 977 F. Supp. 182, 191 (E. D.N.Y. 1997) (noting that     [HN11] court may consider affirmative defense on a motion to dismiss where defense is evident on the face of the complaint (citing Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

    [HN12] The Prison Litigation Reform Act, 42 U.S.C. a 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action ...with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741, 149 L. Ed. 2d 958, 121 S. Ct. 1819 (2001).

    [HN13] The statute expressly states that inmates must exhaust all available administrative remedies[*18] before filing suit. See Webb v. Goord, 340 F.3d 105 (2nd Cir. 2003), Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001). Therefore, any attempt to exhaust administrative remedies after the case was filed is ineffective to satisfy the exhaustion requirement. In addition, "[p] rison officials are entitled to require strict compliance with an existing grievance procedure." Hemphill v. New York, 198 F. Supp. 2d 546, 549 (S. D.N.Y. 2002). See Byas v. New York, 2002 U.S. Dist. LEXIS 13072, No. 99 CIV. 1673 (NRB), 2002 WL 1586963, at *2 (S. D.N.Y. June 17, 2002) ("Permitting a plaintiff to bypass the codified grievance procedure by sending letters directly to the facility's superintendent would undermine the efficiency and the effectiveness that the prison grievance program is intended to achieve.")

    The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances. n2 During the relevant time period, section 6(A) provided that the following matters were grievable:

1. The interpretation and application of policies, rules and procedures of the unit, division[*19] and Department.
2. The existence or substance of policies, rules and procedure of the unit, division and Department ...
3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5. Any other matter relating to access to privileges, programs and services,

conditions of care or supervision and living unit conditions within the
authority of the Department of Correction, to include rights under the
Americans with Disabilities Act, except as noted herein.
6. Property loss or damage.

    Nicholson's claims of unconstitutional treatment and conditions of
confinement, denial of payment and interference with his access to the grievance
process are included within the list of grievable matters at items 3 and 5.
Thus, Nicholson was required to fully exhaust his administrative remedies as to
each of these claims before he filed this action.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

    n2     [HN14] The Administrative Directives are written guidelines,
promulgated pursuant to Connecticut General Statutes a 18-81, establishing
the parameters of operation for Connecticut correctional facilities. See
Beasley v. Commissioner of Corrections, 1997 Conn. Super. LEXIS 1440, Nos. CV
952059, CV 962176, 1997 WL 263723, at *4 (Conn. Super. Ct. May 12, 1997). The
Administrative Directives are analogous to the Program Statements promulgated by
the Bureau of Prisons ("BOP").     [HN15] Courts have taken judicial notice
of the BOP Program Statements. See Antonelli v. Ralston, 609 F.2d 340, 341
n. 1 (8th Cir. 1979); Gleave v. Graham, 954 F. Supp. 599, 605 (W. D.N.Y.
1997). See also United States v. Penn Foundry & Mfg. Co., 337 U.S. 198,
215, 93 L. Ed. 1308, 69 S. Ct. 1009, 113 Ct. Cl. 691 (1949) (Douglas, J.,
concurring) (official communications disclosing policy, such as reports, rules
and regulations of an agency, are reliable and authoritative and need not be
proven); Christman v. Skinner, 468 F.2d 723, 726 (2d Cir. 1972)(proper for
trial court to take judicial notice of state prison regulations concerning books
and magazines); Hernandez v. N.Y. City Dep't of Corr., 2003 U.S. Dist.
LEXIS 2664, 2003 WL 542116, at *3 (S. D.N.Y. Feb. 18, 2003) (taking judicial
notice, absent objection, of DOC Inmate Grievance Resolution Program Directive);
Carter v. McGinnis, 320 F. Supp. 1092, 1094 (W. D.N.Y. 1970) (taking
judicial notice of New York State Department of Correction disciplinary rules
and regulations). Thus, this court takes judicial notice of Connecticut
Department of Correction Administrative Directive 9.6.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*20]

    The defendants argue that Nicholson's grievance is untimely.     [HN16]
Administrative Directive 9.6, section 10(G), requires that a grievance be filed
within thirty days from the occurrence of the incident. Nicholson was taken to
restrictive housing on April 8, 2002. His grievance is dated May 12, 2002. The
subject of the grievance, however, appears to be Nicholson's placement in the

H-2 disciplinary unit on April 13, 2002, not the initial placement in
restrictive housing on April 8. Thus, insofar as Nicholson's complaints in this
action relate to his placement in the H-2 disciplinary unit, his grievance was
timely filed. The defendants' motion to dismiss on the ground of failure to
exhaust administrative remedies is denied with respect to Nicholson's placement
in the H-2 disciplinary unit.

    The grievances relating to the April 13, 2002 placement in the H-2 unit are
the only grievances attached to the complaint. Nicholson has not attached
evidence to his complaint, or even alleged or even argued in opposition to the
motion to dismiss, that he filed grievances relating to his claims regarding (1)
the circumstances surrounding his removal from his cell and transfer in
handcuffs to restrictive[*21] housing on April 8, (2) the failure to pay him for
his prison job, or (3) the interference with his access to the inmate grievance
process. Thus, the defendants' motion to dismiss is granted as to each of the
foregoing claims because Nicholson failed to exhaust his administrative remedies
before commencing this action. However, the dismissal of these claims is without
prejudice to Nicholson filing an amended complaint provided he demonstrates in
any such amended complaint that he did in fact file institutional grievances
regarding these claims.

    2. Official Capacity Claims for Damages

    The defendants next argue that all claims for damages against them in their
official capacities are barred by the Eleventh Amendment.

        [HN17] Generally, a suit for recovery of money may not be maintained
against the state itself, or against any agency or department of the state,
unless the state has waived its sovereign immunity under the Eleventh
Amendment. See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670,
684, 73 L. Ed. 2d 1057, 102 S. Ct. 3304 (1982).        [HN18] Section
1983 does not override a state's Eleventh Amendment immunity. See
Quern v. Jordan, 440 U.S. 332, 342, 59 L. Ed. 2d 358, 99 S. Ct. 1139 (1979).

[*22]       [HN19] The Eleventh Amendment immunity which protects the
state from suits for monetary relief also protects state officials sued for
damages in their official capacity. See Kentucky v. Graham, 473 U.S. 159,
87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985). A suit against a defendant in his
official capacity is ultimately a suit against the state if any recovery would
be expended from the public treasury. See Pennhurst State Sch. & Hosp. v.
Halderman, 465 U.S. 89, 101 n. 11, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984).

    Nicholson has named the defendants in their individual and official
capacities. He does not specify whether he seeks damages from them in their
individual or official capacities. Because an award of damages against the
defendants in their official capacities is barred by the Eleventh Amendment
, the motion to dismiss is granted to the extent that the complaint may be

construed as seeking damages from the defendants in their official capacities.

3. Claim for Unconstitutional Transfer to H-2 Unit

The only claims for which Nicholson exhausted his administrative remedies are those based upon his transfer to the H-2 unit despite that fact that he had not been found guilty of a disciplinary[*23] infraction and was not serving any disciplinary sanctions. The defendants argue that these allegations fail to state a claim upon which relief may be granted. The court agrees.

[HN20] The Eighth Amendment prohibits the infliction of "cruel and unusual punishment," U.S. Const. Amend. VIII, and it applies to the states through the Due Process Clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666-67, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962).    [HN21] After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Ingraham v. Wright, 430 U.S. 651, 670, 51 L. Ed. 2d 711, 97 S. Ct. 1401 (1977). To prove a violation of the Eighth Amendment, therefore, an inmate must show "(1) that the deprivation is 'objectively sufficiently serious' such that the plaintiff was denied the 'minimal civilized measure of life's necessities, 'and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain,'" Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003), quoting Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994);[*24] see Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001). Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986). The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979); Lareau v. Manson, 651 F.2d 96, 106 (2d Cir. 1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347, 69 L. Ed. 2d 59, 101 S. Ct. 2392, 21 Ohio Op. 3d 382 (1981).

Nicholson has not alleged facts sufficient to state[*25] a claim for violation of the Eighth Amendment's prohibition on cruel and unusual punishment. He does not allege that his confinement in the H-2 unit was inhumane in any way or that it deprived him of adequate food, clothing, shelter, sanitation, medical care or personal safety. Nor has he alleged any objectively

serious conduct on the part of the defendants that evinces anything more than, at best, an "ordinary lack of care" for his interests and concerns. Whitley v. Albers, 475 U.S. at 319. Accordingly, the defendants' motion to dismiss Nicholson's claims based on the Eighth Amendment is granted.

   In addition,       [HN22] an inmate has no inherent right to remain in any particular correctional facility or area within a correctional facility. See Olim v. Wakinekona, 461 U.S. 238, 248, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state). The transfer of an inmate from one correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules." Meachum v. Fano, 427 U.S. 215, 225, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976).[*26] See Russell v. Scully, 15 F.3d 219 (2d Cir. 1993) (inmates have no due process interest in being confined in a certain location within a prison). See generally Asquith v. Department of Corrections, 186 F.3d 407, 410, 411 (3d Cir. 1999) (holding that inmates have no protected liberty interest in remaining in a preferred correctional facility), Frazier v. Dubois, 922 F.2d 560, 561-62 (10th Cir. 1990) (holding that inmates generally are not entitled to due process before transfer), Berdine v. Sullivan, 161 F. Supp. 2d 972, 974 (E. D. Wis. 2001) ("a prisoner has no liberty interest in avoiding transfer to another prison, be it out-of-state, more restrictive, or owned and run by a private corporation"). "Prison administrators ...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979).

   Because Nicholson has no protected liberty interest in avoiding transfer to another correctional facility[*27] or another unit within the same correctional facility, his constitutional rights were not violated by his transfer to the H-2 unit. In addition, without a protected liberty interest, Nicholson has no constitutional right to a pre-transfer hearing under the Due Process Clause.

   Nicholson also fails to allege facts sufficient to state       [HN23] a claim that the failure to hold a disciplinary hearing while he was confined in the H-2 unit violated his right to due process. To state such a claim, the Supreme Court requires that Nicholson demonstrate that he possessed a protected liberty or property interest and that he was denied that interest without being afforded due process of law. See Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996). Nicholson bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). If he is unable to show the existence of a protected interest, the claim must be dismissed regardless

whether the defendants acted in accordance with the requisite procedures. See id. at 317-18.

In Sandin v. Conner, 515 U.S. 472, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995),[*28] the Supreme Court established the appropriate standard for determining the existence of a protected liberty interest in due process claims involving prison disciplinary hearings. The Court held that    [HN24] a protected liberty interest generally will arise only where, as punishment for alleged misconduct, a prisoner is involuntarily placed in confinement which is "' qualitatively different' from the punishment characteristically suffered by a person convicted of a crime and results in 'stigmatizing consequences, '" Id. at 479 n. 4 (quoting Vitek v. Jones, 445 U.S. 480, 493-94, 63 L. Ed. 2d 552, 100 S. Ct. 1254 (1980)). Thus, to show that a liberty interest is sufficient to invoke the protections of the Due Process Clause, a prisoner must establish both that his resulting confinement or restraint creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint. Sandin, 515 U.S. at 484; see Frazier, 81 F.3d at 317.

Nicholson is not challenging[*29] the procedures used at a disciplinary hearing. Rather, he challenges his confinement in the H-2 unit without first being afforded a disciplinary hearing or without having a hearing while confined in the unit. However, because Nicholson's challenge is to an alleged punishment without due process, the court considers the claim under the test set forth in Sandin.

Nicholson was held in the H-2 unit for twenty-seven days, from April 13, 2002, until May 10, 2002.    [HN25] Confinement in segregation is confinement that an inmate should reasonably anticipate. See Russell v. Scully, 15 F.3d 219, 221 (2d Cir. 1993); see also Rosario v. Selsky, 1995 U.S. Dist. LEXIS 19175, No. 94 Civ. 6872, 1995 WL 764178, at *3 (S. D.N.Y. Dec 28, 1995) (holding that 120 days confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison). Thus, Nicholson has not alleged facts demonstrating imposition of a sanction qualitatively different from ordinary prison life.

The Second Circuit has not adopted a bright line test to determine when confinement constitutes an atypical and significant hardship. However, "the decisions[*30] in the Second Circuit are unanimous that    [HN26] keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin." Williams v. Keane, 1997 U.S. Dist. LEXIS 12665, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S. D.N.Y. Aug. 25, 1997) (citing cases). See also Fine v. Gallow,

No. 3: 97cv497(SRU), 2000 WL 565232, at *9 (D. Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of five days confinement in punitive segregation and fifteen days confined to quarters, and seven days confinement in punitive segregation, fifteen days confined to quarters and thirty days loss of commissary privileges did not constitute an atypical and significant hardship); McNellis v. Meachum, Civ. No. 2: 92cv936 (PCD) (D. Conn. Oct. 4, 1995) (holding that thirty-day period of disciplinary segregation does not give rise to liberty interest under Sandin).

Because Nicholson was held in the H-2 unit for only twenty-seven days, his due process claim fails as a matter of law. Accordingly, the defendants' motion to dismiss Nicholson's due process claims regarding his transfer[*31] to the H-2 unit is granted.

Finally, Nicholson fails to state a claim for denial of equal protection of the laws based upon his confinement in the H-2 unit.     [HN27] The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This provision does not mandate identical treatment for each individual, rather it requires that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985).

[HN28] "To state an equal protection claim, a plaintiff must charge a government officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.'" Brady v. Town of Colchester, 863 F.2d 205, 216 (2d Cir. 1988) (citation omitted). State legislation that creates suspect or "quasi-suspect" classifications or that impinges a fundamental right is subject to heightened judicial scrutiny. City of Cleburne, 473 U.S. at 439. All other classifications are valid if they are "rationally related to a legitimate state interest." Id. at 440.[*32]     [HN29] The court does not apply a heightened standard of review to prisoner claims because prisoners "either in the aggregate or specified by offense" are not a suspect class. Lee v. Governor of New York, 87 F.3d 55, 60 (2d Cir. 1996).

Nicholson does not allege that he is a member of a suspect class and, as determined above, his confinement in the H-2 unit does not violate a fundamental right. Thus, to assert an equal protection claim, he must allege that he was treated differently from other inmates in similar circumstances and that the unequal treatment was the result of intentional discrimination. Nicholson alleges that he was transferred to the H-2 unit improperly because inmates are assigned to that unit only after they have been found guilty of disciplinary infractions.

Nicholson attaches to his complaint statements from two inmates stating that

they were sent to restrictive housing during the investigation into various incidents unrelated to the matter for which Nicholson was sent to restrictive housing. Following the investigation, these two inmates were returned to the I-pod in which Nicholson was originally housed. Although Nicholson alleges that defendant[*33] Carter told him that he would not return to I-pod, he does not indicate the reason for Carter's statement. Nicholson also attaches to his complaint a note from defendant Cleaver stating that Nicholson was transferred from restrictive housing to the H-2 unit as an unassigned inmate until a bed was available in I-pod. Nicholson has thus provided evidence attached to his own complaint indicating a non-discriminatory reason for his continued stay in H-2 unit, and he has alleged no facts suggesting that the defendants intentionally discriminated against him. Thus, Nicholson has not alleged facts demonstrating or from which the court could infer that he was denied equal protection of the laws relating to his transfer to and continued stay in the H-2 unit.

The defendants' motion to dismiss is, therefore, granted as to each of the constitutional claims that Nicholson asserts relating to his transfer to, and continued stay in, the H-2 unit. However, Nicholson may file an amended complaint regarding those claims if he can allege facts from which the court could reasonably infer that his confinement in the H-2 unit constituted an atypical and significant hardship and/or that the reasons for[*34] the delay in returning him to I-pod were pretextual and that the defendants intentionally discriminated against him in causing that delay.

Because, as stated previously, all of Nicholson's other federal law claims were dismissed for failure to exhaust administrative remedies, the court need not consider the other grounds for relief raised by the defendants.

D. State Law Claims

Nicholson states in his complaint that he also brings claims for violation of rights secured by the Connecticut Constitution.

[HN30] Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case. See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966), [HN31] The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants. The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent. See id. at 726. In[*35] addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. a 1367(c)(3), Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 98 L. Ed. 2d 720, 108 S. Ct.

614 (1988) ("in the usual case in which all federal-law claims are eliminated
before trial, the balance of factors to be considered under the pendent
jurisdiction doctrine-judicial economy, convenience, fairness, and comity- will
point toward declining to exercise jurisdiction over the remaining state-law
claims"); Spear v. Town of West Hartford, 771 F. Supp. 521, 530 (D. Conn.
1991) ("absent unusual circumstances, the court would abuse its discretion were
it to retain jurisdiction of the pendent state law claims on the basis of a
federal question claim already disposed of"), aff'd, 954 F.2d 63 (2d
Cir.), cert. denied, 506 U.S. 819, 121 L. Ed. 2d 33, 113 S. Ct. 66 (1992)
.

   The court has granted the defendants' motion to dismiss as to all federal
claims contained in the complaint. The court declines to exercise supplemental
jurisdiction over any remaining state law[*36] claims.

IV. Conclusion

   Nicholson's Motion for Injunctive Relief [doc. # 20] is DENIED. Defendants'
Motion to Dismiss [doc. # 24] is GRANTED without prejudice to Nicholson filing
an amended complaint provided he can allege and demonstrate in any such amended
complaint that he exhausted his administrative remedies regarding the claims
that have been dismissed today for failure to exhaust, or if he can allege facts
from which the court could reasonably infer that his confinement in the H-2 unit
constituted an atypical and significant hardship and/or that the reason
proffered for the delay in transferring him back to I-pod was pretextual and
that in causing that delay the defendants intentionally discriminated against
him. Any amended complaint must be filed within twenty (20) days from the date
of this order. All claims for declaratory and injunctive relief are DISMISSED
pursuant to 28 U.S.C. a 1915(e)(2)(B)(ii). The court declines to exercise
supplemental jurisdiction over Nicholson's state law claims.

   The Clerk is directed to close this case. Should Nicholson file an amended
complaint as directed, the Clerk's[*37] Office will reopen the file.

   SO ORDERED this 19th day of September, 2003, at New Haven, Connecticut.

   Mark R. Kravitz

   United States District Judge