FILED

2004 NOV 30  P 3: 38

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LLOYD GEORGE MORGAN, JR.        :            PRISONER
                               :    CIVIL NO. 3:01CV1107 (CFD) (WIG)

V.

JOHN G. ROWLAND, ET AL.          :    NOVEMBER 29, 2004

MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS

The plaintiff submits this memorandum of law in opposition to the defendants'

motion to dismiss dated February 27, 2004. In conjunction with this memorandum, the

plaintiff has filed a motion for leave to file a second amended complaint.

I.    FACTS

The plaintiff is an inmate sentenced to the custody of the Connecticut Department

of Correction (hereinafter "DOC"). He filed this action pro se. Although help on this brief

has been provided by an attorney employed by Inmates' Legal Assistance Program, the

plaintiff continues to represent himself.

This action, filed on June 14, 2001, alleged violation of various rights protected by

the United States Constitution and by federal law. The defendants were various DOC

officials, prison custodial and medical personnel and Connecticut special deputy sheriffs.

Some of the original defendants have been terminated from the case. On June 6, 2002, the

plaintiff filed an amended complaint. In the second amended complaint that he now requests leave to file, the plaintiff attempts to narrow the issues involved in this case. The proposed second amended complaint includes only two claims. First, the requirement that the plaintiff wear full restraints during recreation periods while in Phase One of the Administrative Segregation program at Northern Correctional Institution (hereinafter "Northern") deprived the plaintiff of the opportunity for any meaningful exercise, in violation of his right to be free from cruel and unusual punishment. Second, the plaintiff's personal mental health information was disseminated to other inmates and non-medical prison personnel, in violation of the plaintiff's right to privacy. The two claims involve the following nine defendants: John J. Armstrong, Peter M. Matos, Larry Myers, Thomas Coates, Michael LaJoie, Christine Whidden, Dr. Paul Chaplin, Dr. Ronald Hensley and Thomas Latier. The plaintiff hereby withdraws his claims against all of the other defendants.

Further facts will be asserted elsewhere in this brief.

## II.     ARGUMENT

### A.     STANDARD FOR DECIDING MOTION TO DISMISS

The defendants seek dismissal under Rule 12 (b) (1) of the Federal Rules of Civil Procedure for lack of jurisdiction over the subject matter and under Rule 12 (b) (6) for failure to state a claim upon which relief can be granted.

In deciding a motion under Rule 12 (b), a court "must not dismiss the action 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court is required to accept as true the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. Jackson National Life Insurance v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994). The motion to dismiss should not be granted unless it appears to a certainty that the plaintiff is entitled to no relief under any set of facts which could be proved in support of his claim. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## B. THE PLAINTIFF HAS PROPERLY MADE A CLAIM FOR MONEY DAMAGES AGAINST THE DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

The plaintiff has sued the defendants in both their individual and official capacities. The defendants argue that "any and all claims for damages against the defendants sued in their official capacity should be dismissed." (Defendant's memorandum, P. 13).

The Eleventh Amendment to the United States Constitution bars a suit by an individual against a state in federal court. Alabama v. Pugh, 438 U.S. 781 (1978). This bar remains in effect when state officials are sued for damages in their official capacities because a judgment against a state official in his or her official capacity would impose liability upon the state. Kentucky v. Graham, 473 U.S. 159, 169 (1985). However, 42

3

U.S.C. § 1983 permits individuals to seek injunctive relief against state actors in their

official capacities, Edelman v. Jones, 415 U.S. 651, 677 (1974), and to seek damages

against them in their individual capacities. See Graham, 473 U.S. at 167.

In his request for relief, the plaintiff seeks both money damages and declaratory

relief. The claim for declaratory relief against the defendants in their official capacities is

proper, as is the claim for money damages against them in their individual capacities.

### C.   THE PRISONER LITIGATION REFORM ACT DOES NOT BAR CLAIMS FOR NOMINAL AND PUNITIVE DAMAGES, EVEN IN THE ABSENCE OF A PHYSICAL INJURY

A provision of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e (e)

states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or

other correctional facility, for mental or emotional injury suffered while in custody

without a prior showing of physical injury." As the defendants point out, the Second

Circuit has held that this provision applies only to claims for compensatory damages; it

does not bar claims for punitive or nominal damages. See Thompson v. Carter, 284 F. 3d

411, 418 (2d Cir. 2002). The Second Circuit's holding is in accord with those of the

majority of other circuits that have considered the issue. See e.g., Allah v. Al-Hafeez, 226

F.3d 247, 253 (3d Cir. 2000); Calhoun v. Detella, 319 F.3d 936, 941 (7th Cir. 2003);

Royal v. Kautzky, 375 F.3d 720, 724 (8th Cir. 2004); Oliver v. Keller, 289 F.3d 623, 629-

30 (9th Cir. 2002); Searles v. Van Bebber, 251 F.3d 869, 879-80 (10th Cir. 2001).

The Eleventh Circuit has reached the opposite conclusion. See Harris v. Garner, 190 F.3d 1279 (11th Cir. 1999), aff'd in part and vacated in part (on other grounds), 216 F.3d 970 (11th Cir. 2000), cert. denied, 532 U.S. 1065 (2001). The defendants argue that the Eleventh Circuit was correct and that Thompson was wrongly decided. (Defendants' memorandum, P. 14). In order to preserve their appellate rights on the issue, the defendants move to dismiss the plaintiff's claims for any type of monetary damages "regarding failure to protect or the handcuffing policy." (Id.) In his amended complaint, the plaintiff alleged that some of the defendants failed to protect him from the threat of other inmates at Northern. He also complained about a handcuffing policy that exposed a cuffed inmate to the risk of assault by an uncuffed cell mate. Neither of those claims are included in the second amended complaint that the plaintiff seeks leave to file. The plaintiff believes that Thompson was correctly decided, but he will reserve his argument for a more appropriate occasion.

### D. THE PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO DISMISSAL FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

A provision of the Prison Litigation Reform Act codified at 42 U.S.C. § 1997e (a), requires an inmate to exhaust "such administrative remedies as are available" prior to bringing an action "with respect to prison conditions" under federal law. The defendants argue that the plaintiff's alleged failure to exhaust administrative remedies in regard to

some of the claims in his complaint makes all of his claims subject to dismissal. (Defendants' memorandum, P. 18-21). They say that the Sixth and the Eighth Circuits have applied this "total exhaustion" rule and that, while the Second Circuit has not addressed the issue, some trial courts in this circuit have adopted the rule. (Id., P. 21).

Subsequent to the filing of the defendants' motion to dismiss, the Second Circuit did address the issue and explicitly rejected the total exhaustion rule. See Ortiz v. McBride, 380 F.3d 649 (2d Cir. 2004). The law in this circuit is now clear. The presence of allegedly unexhausted claims does not make the plaintiff's entire action subject to dismissal. Claims on which administrative remedies have been exhausted may proceed.

Failure to exhaust administrative remedies is an affirmative defense. Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). "By characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss. Rather, the defendants must present proof of non-exhaustion." Nicholson v. Murphy, 2003 U.S. Dist. LEXIS 22165, No. 02 Civ. 1815 at 15 (D. Conn. Sept. 19, 2003), attached. There is no evidence before the court that the plaintiff did not exhaust his administrative remedies and, therefore, his claims are not subject to dismissal on that ground.

## E. **THE PLAINTIFF'S CLAIMS FOR NON-MONETARY RELIEF ARE NOT MOOT**

The defendants argue that the court lacks subject matter jurisdiction over the

6

plaintiff's claims for non-monetary relief because his transfer to Cheshire Correctional Institution has rendered those claims moot. (Defendants' memorandum, P. 23).

The defendants cloud the issue when they state: "There is no non-monetary relief whatsoever that a court can currently award to him other than the speculative relief that if the plaintiff is re-incarcerated, he might not be subject to the same policies of Northern Correctional Institution." (Id. P. 23-24) (emphasis supplied). The court is not being asked to speculate about what might happen if the plaintiff becomes re-incarcerated. Re-incarceration is not an issue because the plaintiff currently is incarcerated and has been incarcerated since the events that gave rise to this suit. He will remain incarcerated for at least the next 18 years (Second amended complaint, Para. 17).

"A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." Thompson, 284 F.3d at 415 (citing Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996)). As with most general rules, there are exceptions. Thompson involved a claim that a correction officer had confiscated prescription medications from an inmate. The inmate requested that the court grant injunctive relief in the form of an order that the medications be returned. The correction officer argued that the issue was moot because the inmate had been transferred to another prison. While affirming the dismissal of other claims for declaratory and injunctive relief, the Second Circuit held that the request for an order that the medications

7

be returned was not moot because a live controversy existed between the parties. The court stated: "[T]his scenario differs from the more usual one in which the inmate plaintiff seeks prospective relief – for example, an order directing that harassment cease – against employees at one facility that would be useless after his transfer to a second facility. Thompson's appeal is not moot to the extent it seeks return of medications seized from him" Id. The other Second Circuit decision cited by the defendants also involved a request for prospective relief. See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976) ("In view of the fact that appellant is no longer incarcerated at Auburn, his request for an injunction restraining the officials at Auburn from violating his civil rights is moot.")

In both his amended complaint and in the second amended complaint that he seeks leave to file, the only non-monetary relief sought by the plaintiff is a declaratory judgment that the defendants violated his constitutional rights. He is not seeking any prospective relief. Therefore, his transfer does not make his claim for non-monetary relief moot.

### F.  THE PLAINTIFF HAS ADEQUATELY ALLEGED THAT THE REQUIREMENT THAT HE BE FULLY RESTRAINED DURING RECREATION VIOLATED HIS RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

The defendants argue that the plaintiff's claim that he was required to be in full restraints during recreation fails to allege a constitutional violation. (Defendants' memorandum, P. 26). On the contrary, the plaintiff's claim adequately alleges a violation of his right to be free from cruel and unusual punishment. The amicus curiae Connecticut

Civil Liberties Union Foundation (hereinafter "CCLUF") has submitted a brief in which it convincingly argues that the recreation policy violated the plaintiff's constitutional rights. Rather than waste the time of the court by repeating all of the CCLUF's arguments, the plaintiff adopts the arguments contained in the amicus curiae brief. In addition, he submits the following.

The Eighth Amendment to the United States Constitution bars the infliction of cruel and unusual punishments upon those convicted of crimes. The ban on such punishments is made applicable to the states through the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666 (1962). Prison conditions violate the Eighth Amendment if they amount to "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Exercise is one of the basic human needs protected by the Eighth Amendment. Wilson v. Seiter, 501 U.S. 294, 304 (1991). The Second Circuit has "described the right to exercise in unequivocal terms, stating that 'courts have recognized that some opportunity to exercise must be afforded to prisoners.' " Williams v. Greifinger, 97 F.3d 699, 704 (2d Cir. 1996) (quoting Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985)). "More specifically, this right to exercise must include some out-of-cell exercise." Williams v. Goord, 142 F. Supp. 2d 416, 429 (S.D.N.Y. 2001).

While he was incarcerated in Phase One of the Administrative Segregation program

at Northern, the plaintiff was confined in his cell at all times, except for one hour of

"recreation" five days per week. (Second amended complaint, Para. 23). During the one-

hour "recreation" periods, the plaintiff's hands were cuffed behind his back and his legs

were shackled. (Id., Para. 24). The handcuffs and leg shackles were connected by a heavy

chain with a padlock. (Id.). The plaintiff was locked in a cage in the prison's recreation

yard. (Id., Para. 25). While restrained in this manner, the plaintiff was unable to engage in

any type of physical activity, other than slowing walking around the cage. (Id., Para. 28).

Therefore, while his periods in the cage were classified as "recreation," the plaintiff was

totally deprived of an opportunity to engage in any meaningful exercise. As amicus curiae

CCLUF points out, the District Court for the Northern District of Illinois has recognized

that "[i]t is obviously impossible for a prisoner to engage in any meaningful physical

activity while his limbs are restrained."[1]

The defendants contend that the restraints policy was "an appropriate use of

discretion in an effort to maintain order, safety and security," given the fact that the

plaintiff had been accused of assaulting a cell mate prior to coming to Northern and that

another cell mate had expressed fear of the plaintiff. (Defendants' memorandum, P. 28).

While the "defendants cannot merely brandish the words 'security' and 'safety' and

---

[1]

Martinez v. Fairman, 1995 U.S. Dist. LEXIS 8729, No. 93 Civ. 6225 at 15 (N.D. Ill. June
22, 1995), attached.

10

expect that their actions will automatically be deemed constitutionally permissible conduct, '' Campos v. Coughlin, 854 F. Supp. 194, 207 (S.D.N.Y. 1994), the right to out-of-cell exercise has been found to be subject to a limited security exception. Under this exception, ''restrictions on exercise must be limited to 'unusual circumstances,' or circumstances in which exercise is 'impossible' because of disciplinary needs.'' Greifinger, 97 F.3d at 704 (citations omitted). However, ''even if a prisoner is deemed an unusual security risk, that fact alone would not justify subjecting him to a blanket policy denying such prisoners any opportunity for out-of-cell exercise. 'The fact that an inmate is violent may justify segregating him or her from the general population, but does not necessarily justify a prison's failure to make other exercise arrangements.' '' Goord, 142 F. Supp. 2d at 429 (quoting Greifinger, 97 F.3d at 704-05).

During most of his ''recreation'' periods while in Phase One of Administrative Segregation, the plaintiff was alone in the cage. (Second amended complaint, Para. 25). Therefore, the safety and security of other inmates would not have been endangered by freeing the plaintiff from his shackles while he was in the cage. Of course, the safety and security of prison staff members is also a legitimate concern. The ''recreation'' cages were equipped with ''traps.'' (Id., Para. 26). By ordering an inmate to extend his hands through the trap, a correction officer would be able to apply or remove restraints without unlocking the door of the cage. (Id.). Through use of the trap, some or all of the plaintiff's

11

restraints could have been removed without presenting any danger to prison custodial personnel. But the trap was not utilized. Instead, the plaintiff was left in full restraints during his ''recreation'' period. (Id.).

The restraints policy was not justified by the limited security exception articulated in <u>Greifinger</u>. While the defendants' belief that the plaintiff posed a threat may have justified their decision to segregate him from other inmates during recreation periods, it could not justify their complete denial of the opportunity to engage in exercise.

### G. PLAINTIFF HAS ADEQUATELY ALLEGED THAT HIS CONSTITUTIONAL RIGHT TO PRIVACY WAS VIOLATED WHEN HE WAS REQUIRED TO DISCUSS CONFIDENTIAL MENTAL HEALTH ISSUES WITHIN EARSHOT OF OTHER INMATES AND NON-MEDICAL PRISON STAFF

The defendants argue that the plaintiff's claims regarding inadequate mental health care are inadequate as a matter of law. (Defendants' memorandum, P. 36). They ignore a key aspect of the plaintiff's claims regarding the inadequacy of the mental health care at Northern. In his amended complaint, the plaintiff alleged that "what defendants Chaplin, Latier, Hensley ... call mental health is daily they tour the unit making notes and if you want to speak to them you must speak your confidential medical issues at the cell door where prisoner [sic] can here [sic] my private business." (Amended complaint, Para. 61). He clarifies his allegations in the second amended complaint that he requests leave to file in conjunction with this memorandum of law. (Second amended complaint, Para. 54-59).

12

The Supreme Court has "recognized that there exists in the United States Constitution a right to privacy protecting 'the individual interest in avoiding disclosure of personal matters,' " including personal medical information. Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994) (quoting Whalen v. Roe, 429 U.S. 589, 599 (1977)). "More precisely, this right to privacy can be characterized as a right to 'confidentiality,' to distinguish it from the right to autonomy and independence in decision-making for personal matters also recognized in Whalen." Id. This right to confidentiality includes the right to protection regarding personal health information because "there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over." Id. The Justices of the Supreme Court have disagreed about the source of the right to privacy. The right has been characterized as existing in the penumbras of various amendments, including the Ninth Amendment.[2] See Griswold v. Connecticut, 381 U.S. 479, 484-85 (1965). The Supreme Court also has expressed the opinion that the right of privacy is founded in the Fourteenth Amendment's concept of personal liberty. See Roe v. Wade, 410 U.S. 113, 152-53 (1973). Regardless of its specific source, it is unquestioned that the Constitution protects an individual's right to privacy.

---

[2]

The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

13

"Prison inmates do not shed all fundamental protections of the Constitution at the prison gates." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citing Turner v. Safley, 482 U.S. 78, 95 (1987)). "Rather, inmates 'retain[] those [constitutional] rights that are not inconsistent with [their] status as ... prisoners or with the legitimate penological objectives of the corrections system.' " Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). "A regulation that 'impinges on inmates' constitutional rights' is therefore valid only if it 'is reasonably related to legitimate penological interests.' " Id. (quoting Turner, 482 U.S. at 89). "It follows that prison officials can impinge on [the right to maintain the confidentiality of previously undisclosed medical information] only to the extent that their actions are 'reasonably related to legitimate penological interests.' " Id. Under this standard, courts have found that the "[c]asual, unjustified dissemination of confidential medical information to non-medical staff and other prisoners" is unconstitutional. Woods v. White, 689 F. Supp. 874, 875-77 (W.D.Wis. 1988), aff'd, 899 F.2d 17 (7th Cir. 1990). See also Powell, 175 F.3d at 112 ("the gratuitous disclosure of an inmate's confidential medical information as humor or gossip ... is not reasonably related to a legitimate penological interest"); Casey v. Lewis, 834 F. Supp. 1477, 1545 (D.Ariz. 1993) (condemning sick call procedure that required prisoners to discuss medical problems within earshot of other inmates).

In addition to the right of confidentiality, the right of privacy also encompasses "the interest in independence in making certain kinds of important decisions." Whalen, 429 U.S. at 599-600. That interest also is at issue in this case. If an inmate knows that information about his mental health problems will be disseminated to non-medical staff and to the general prison population, he will be reluctant to discuss those problems with mental health staff and to seek treatment for those problems. As a result, the inmate's ability to make treatment decisions regarding mental health care will be impaired.

Deliberate indifference to an inmate's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Denial of adequate care for serious mental health needs may constitute deliberate indifference. Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir. 1989). The system requiring inmates at Northern to discuss their confidential mental health issues at the doors of their cell forced the plaintiff to choose between two rights protected by the Constitution: the right to adequate mental health care and the right to privacy.

The interest in the privacy of medical information will vary with the condition. See Powell, 175 F.3d at 111. The Second Circuit has found that the interest is especially strong in regard to those infected with HIV, the virus that causes AIDS. See Doe, 15 F.3d at 267. This is true because one who reveals that she has tested positive for HIV "exposes herself not to understanding or compassion but to discrimination and intolerance, further

necessitating the extension of the right of confidentiality over such information." Id. Similarly, revealing a need for mental health care can engender adverse social consequences for an individual. See Vitek v. Jones, 445 U.S. 480 (1980) (prison inmate entitled to notice and hearing before being committed to mental health facility because stigmatizing consequences of such commitment constituted deprivation of liberty that required procedural protection). One can imagine that the social consequences might be particularly unfavorable in a prison environment, where a need for mental health care would be interpreted as a sign of weakness that could be exploited. Therefore, the plaintiff had a strong interest in preventing information about his mental health condition from being disseminated to other inmates and to non-medical prison staff. It is difficult to conceive of a legitimate penological reason for such disclosure, but whether such a reason exists is not the issue presented by a motion to dismiss. "The issue at this stage 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.' " McEachin v. McGuinnis, 357 F.3d 197, 201 (2d Cir. 2004) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)).

### H. THE PLAINTIFF HAS ALLEGED THE PERSONNEL INVOLVEMENT OF THE DEFENDANTS IN THE VIOLATION OF HIS CONSTITUTIONAL RIGHTS

To maintain an action against a defendant under 42 U.S.C. § 1983, a plaintiff must present evidence of the defendant's personal involvement in the deprivation of a right

guaranteed to the plaintiff by the Constitution or by federal law. See Wright v. Smith, 21

F.3d 496, 501 (2d Cir. 1994). Personal involvement exists where a defendant directly

participates in the deprivation. Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

Supervisory authority alone will not make a defendant liable for the deprivation, but

supervisors can be held liable for the acts of subordinates under certain circumstances.

The Second Circuit has stated:

> The personal involvement of a supervisory defendant may be shown by evidence
> that: (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the rights of inmates by failing to act on information
> indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Defendant John J. Armstrong was the DOC commissioner at the time of the events

that gave rise to this suit. (Second amended complaint, Para. 7). Defendant Peter M.

Matos was a deputy commissioner. (Id., Para. 8). The plaintiff has alleged that the two

defendants created and/or allowed the continuation of the policy that required him to wear

full restraints during recreation periods. (Id., Para. 38). Therefore, he has adequately

alleged their personal involvement in the violation of his constitutional rights. Four of the

other defendants – Warden Larry Myers, Major Thomas Coates, Major Michael Lajoie,

17

and Major Christine Whidden – were high-ranking custodial officials at Northern who created, allowed the continuation of and/or enforced the recreation policy. (Id. Para. 39). Those defendants "do not seek dismissal on lack of personal involvement grounds." (Defendants' memorandum, P. 35).[3] The other three defendants – Dr. Paul Chaplin, Dr. Ronald Hensley and Thomas Latier – directly participated in the violation of the plaintiff's right to privacy. (Second amended complaint, Para. 55-58).

## I.  THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity is the doctrine that shields government officials performing discretionary functions from being held liable for civil damages arising from their actions which do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " P.C. v. McLaughlin, 913 F.2d 1033, 1039 (2d Cir. 1990) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity is an affirmative defense. The burden rests on the defendants to raise the defense in their answer and to establish the defense on a motion for summary judgment or at trial." Lee v. Sandberg, 136 F.3d 94, 101 (2d Cir. 1997). The Second Circuit "has held that the qualified immunity issue 'turns on factual questions that cannot be resolved at

---

[3]

Two other supervisory officials at Northern, Captain Maurice Butler and Captain William Faneuff - also do not seek dismissal on personal involvement grounds, according to the defendants' memorandum. However, the second amended complaint, which the plaintiff seeks leave to file, includes no claims against those two individuals.

[the motion to dismiss] stage of proceedings.' " Starkey v. Somers Central School District, 319 F. Supp. 2d 410, 421 (S.D.N.Y. 2004) (quoting Taylor v. Vermont Department of Education, 313 F.3d 768, 793 (2d Cir. 2002)). Therefore, "[a]ny ruling regarding the availability of a qualified immunity defense would be premature at this time." Id. Nevertheless, the plaintiff will respond to the defendants' arguments regarding qualified immunity.

The Second Circuit has articulated the following standards for determining whether a statutory or constitutional right has been clearly established:

> For a right to be "clearly established" for purposes of qualified immunity, "it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." Furthermore, a law is considered "clearly established" so long as this "circuit's decisions 'clearly foreshadow' a particular ruling on the issue. Thus, the absence of a decision by this Court or the Supreme Court directly addressing the right at issue "will not preclude a finding that the law was clearly established," at the time of the alleged violation.

Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000) (internal citations omitted).

An inmate's Eight Amendment right to exercise has been clearly established at least since 1985, when the Second Circuit "described the right to exercise in unequivocal terms, stating that 'courts have recognized that some opportunity for exercise must be afforded to prisoners.' " Greifinger, 97 F.3d at 704 (quoting Anderson, 757 F.2d at 35). See also, Goord, 142 F. Supp. 2d at 429 ("at the time of the alleged violation it was apparent that a denial of all meaningful out-of-cell exercise for a significant period of

19

time without adequate justification constituted an Eighth Amendment violation.")
Similarly, in <u>Powell</u>, a decision issued in 1999, the Second Circuit recognized that an
individual's constitutional right to privacy concerning confidential medical information
extended to prisoners.

The defendants argue that "not only might reasonable correctional officials disagree
as to the legality of recreating in restraints ... but reasonable courts have in fact held that
the current Northern policy is within the bounds of the Constitution." (Defendants'
memorandum, P. 29). The defendants cite state and federal trial court decisions. (Id., P.
27). In <u>Greifinger</u>, the defendants argued that three opinions from trial courts supported
their contention that a medical keeplock policy was constitutional. In rejecting that
argument, the Second Circuit noted that "the germane law in determining whether a right
is clearly established for purposes of qualified immunity is 'the decisional law of the
Supreme Court and the applicable circuit court.' " <u>Greifinger</u>, 97 F.3d at 706 (citations
omitted). Given the Second Circuit precedents cited in the preceding paragraph, any
reasonable correctional official would have know that the plaintiff's constitutional rights
were being violated when he was denied any meaningful opportunity to exercise and
when his confidential mental health information was disseminated to other inmates and to
non-medical prison personnel.

20

## III.  **CONCLUSION**

For the foregoing reasons, the plaintiff respectfully requests that the Court deny the

defendants' motion to dismiss in regard to his claims that his constitutional rights were

violated when he was forced to wear full restraints during recreation and when his

personal mental health information was dissemination to other inmates and to non-

medical prison personnel.


                                        THE PLAINTIFF


                                        *Lloyd George MORGAN, JR*
                                        Lloyd George Morgan, Jr., Pro Se
                                        Inmate #117796
                                        Cheshire Correctional Institution
                                        900 Highland Avenue
                                        Cheshire, CT 06410


Although not appearing herein, the undersigned
assisted in the preparation of this memorandum of law:

*Richard P. Cahill*
Richard P. Cahill, Esq.
Schulman & Associates
Inmates' Legal Assistance Program
78 Oak Street, P.O. Box 260237
Hartford, CT 06126-0237
Tel: (860) 246-1118
Fax: (860) 246-1119

## CERTIFICATION

I hereby certify that a copy hereof was mailed, postage prepaid, on this 30th day of

November, 2004, to the following counsel and pro se parties of records:

Lynn D. Wittenbrink, Esq.
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105

Annette M. Lamoreaux, Esq
Connecticut Civil Liberties Union Foundation
32 Grand Street
Hartford, CT 06106

_Lloyd George MORGAN, JR_
Lloyd George Morgan, Jr.

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 22165**

*2003 U.S. Dist. LEXIS 22165, \**

ALLAN C. NICHOLSON, PRISONER v. WARDEN BRIAN MURPHY, et al. n1

n1 The defendants are Warden Brian Murphy, Major Carter, Captain Cleaver, Captain Luna, Lieutenant Fisher, Correctional Officer Howell, Counselor Wilson, Correctional Treatment Officer Haskins and Grievance Coordinator Breedlove.

CASE NO. 3: 02CV1815 (MRK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2003 U.S. Dist. LEXIS 22165

September 19, 2003, Decided

**PRIOR HISTORY:** Nicholson v. Murphy, 2003 U.S. Dist. LEXIS 25245 (D. Conn., June 19, 2003)

**DISPOSITION:** Defendants' motion to dismiss was granted and case was dismissed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff inmate filed a civil rights action against defendant prison officials alleging that, while he was confined at a prior prison, his rights under U.S. Const. amend. IV, V, VIII, XIII, XIV, and Conn. Const. art. I, §§ 7, 8, 20, 17, were violated. The officials moved to dismiss for failure to exhaust administrative remedies and Eleventh Amendment immunity. The inmate sought preliminary injunctive relief seeking access to the law library.

**OVERVIEW:** There was no constitutional right of access to a prison law library and no actual injury shown. Due to the transfer to another prison, declaratory and injunctive relief against current prison officials was moot. Claims of unconstitutional treatment, conditions of confinement, denial of payment, and interference with access to the grievance process were not timely filed in a grievance. But the grievance as to placement in a disciplinary unit was timely filed and was exhausted. An award of damages against the officials in their official capacities was barred by the Eleventh Amendment. There were no allegations that confinement in the disciplinary unit was inhumane or deprived him of adequate food, clothing, shelter, sanitation, medical care, or safety. He did not allege any objectively serious conduct other than ordinary lack of care for his interests and concerns; the Eighth Amendment claim failed. There was no protected liberty interest in avoiding transfer to another unit and no Due Process Clause right to a pre-transfer hearing. And, he was only held there for 27 days. Nothing suggested intentional discrimination. Supplemental jurisdiction over the state law claims was declined.

**OUTCOME:** The motion to dismiss the federal claims was granted without prejudice, with the court declining to exercise supplemental jurisdiction over the state law claims.

**CORE TERMS:** inmate, grievance, prison, injunctive relief, motion to dismiss, confinement, administrative remedies, disciplinary, prisoner, restrictive, confined, hardship, exhaust, disciplinary hearing, protected liberty interest, supplemental jurisdiction, correctional facility,

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 22165    Filed 11/30/2004    Page 24 of 25    Page 2 of 18

Case 3:01-cv-01107-CHD    Document 172

atypical, housing unit, housing, correctional institution, exhaustion requirement, constitutional rights, affirmative defense, failure to exhaust, fails to state, demonstrating, state law, declaratory, placement

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss

*HN1* When considering a Fed. R. Civ. P. 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims. In its review of a motion to dismiss, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss
Civil Procedure > Joinder of Claims & Parties > Self-Representing Parties

*HN2* The United States Court of Appeals for the Second Circuit ordinarily requires the district courts to give substantial leeway to pro se litigants in considering motions to dismiss under Fed. Civ. P. 12(b). More Like This Headnote

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

*HN3* Preliminary injunctive relief is designed to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. More Like This Headnote

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

*HN4* Interim injunctive relief is an extraordinary and drastic remedy which should not be routinely granted. In addition, a federal court should grant injunctive relief against a state or municipal official only in situations of most compelling necessity. More Like This Headnote

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

*HN5* To warrant preliminary injunctive relief, the moving party must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and (3) a balance of hardships tipping decidedly in its favor. More Like This Headnote

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

*HN6* Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. Where the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Prisoners > Access to Courts

*HN7* To show that the defendants violated a plaintiff inmate's right of access to the

courts, an inmate must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct. There is no requirement that prison officials ensure that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court. More Like This Headnote

Civil Procedure > Justiciability > Standing 🔍
Constitutional Law > Civil Rights Enforcement > Prisoners > Access to Courts 🔍
HN8⊕ Law libraries and legal assistance programs do not represent constitutional rights in and of themselves. They are only the means to ensure a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. Thus, prisoners must demonstrate "actual injury" in order to have standing to bring a claim for denial of access to the courts. More Like This Headnote

Civil Procedure > Justiciability > Mootness 🔍
Civil Procedure > Injunctions > Preliminary & Temporary Injunctions 🔍
Constitutional Law > Civil Rights Enforcement > Prisoners > Confinement Conditions 🔍
HN9⊕ An inmate's request for declaratory and injunctive relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. More Like This Headnote

Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies 🔍
Constitutional Law > Civil Rights Enforcement > Prisoners > Prison Litigation Reform Act 🔍
HN10⊕ The United States Court of Appeals for the Second Circuit considers the failure to exhaust administrative remedies an affirmative defense. A defendant in a prisoner 42 U.S.C.S. § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the Prison Litigation Reform Act's requirements that a plaintiff first exhaust all administrative remedies. By characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss. Rather, the defendants must present proof of non-exhaustion. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses 🔍
Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss 🔍
HN11⊕ A court may consider an affirmative defense on a motion to dismiss where the defense is evident on the face of the complaint. More Like This Headnote

Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies 🔍
Constitutional Law > Civil Rights Enforcement > Prisoners > Prison Litigation Reform Act 🔍
Constitutional Law > Civil Rights Enforcement > Prisoners > Confinement Conditions 🔍
HN12⊕ The Prison Litigation Reform Act, 42 U.S.C.S. § 1997e(a), requires an inmate to exhaust administrative remedies as are available before bringing an action with respect to prison conditions. This provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may obtain the specific relief he desires through the administrative process. More Like This Headnote

Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies 🔍
Constitutional Law > Civil Rights Enforcement > Prisoners > Prison Litigation Reform Act 🔍
HN13⊕ 42 U.S.C.S. § 1997e(a) expressly states that inmates must exhaust all available administrative remedies before filing suit. Therefore, any attempt to exhaust administrative remedies after the case is filed is ineffective to satisfy the