Get a Document - by Citation - 2003 U.S. Dist. LEXIS 22165    Page 1 of 15

Case 3:01-cv-01107-CFD    Document 172-2    Filed 11/30/2004    Page 4 of 18

exhaustion requirement. In addition, prison officials are entitled to require strict compliance with an existing grievance procedure. More Like This Headnote

Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
Constitutional Law > Civil Rights Enforcement > Prisoners > Confinement Conditions
HN14± The Administrative Directives for the Connecticut Department of Correction are written guidelines, promulgated pursuant to Conn. Gen. Stat. § 18-81, establishing the parameters of operation for Connecticut correctional facilities. The Administrative Directives are analogous to the Program Statements promulgated by the federal Bureau of Prisons (BOP). More Like This Headnote

Evidence > Procedural Considerations > Judicial Notice
Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
HN15± Courts have taken judicial notice of the federal Bureau of Prisons' Program Statements. More Like This Headnote

Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
Constitutional Law > Civil Rights Enforcement > Prisoners > Confinement Conditions
HN16± Conn. Code Penal Disc. Admin. Directive 9.6, § 10(G), requires that a grievance be filed within 30 days from the occurrence of the incident. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Amendment 11
HN17± Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > Civil Rights Enforcement > Immunity > State Consent & Waiver of Immunity
HN18± 42 U.S.C.S. § 1983 does not override a state's Eleventh Amendment immunity. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > Civil Rights Enforcement > Immunity > Public Officials
HN19± The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
Constitutional Law > Procedural Due Process > Scope of Protection
HN20± The Eighth Amendment prohibits the infliction of "cruel and unusual punishment," U.S. Const. amend. VIII, and it applies to the states through the Due Process Clause of the Fourteenth Amendment. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
Constitutional Law > Civil Rights Enforcement > Prisoners > Confinement Conditions
HN21± After incarceration, only the unnecessary and wanton infliction of pain constitutes

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 22165 Page 5 of 18

Case 3:01-cv-01107-CFD   Document 172-2   Filed 11/30/2004   Page 2 of 15

cruel and unusual punishment forbidden by the Eighth Amendment. To prove a violation of the Eighth Amendment, therefore, an inmate must show (1) that the deprivation is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities, and (2) that the defendant official possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain. Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. Sentenced prisoners are entitled to adequate food, clothing, shelter, sanitation, medical care, and personal safety. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
Constitutional Law > Civil Rights Enforcement > Prisoners > Transfers

HN22 An inmate has no inherent right to remain in any particular correctional facility or area within a correctional facility. The transfer of an inmate from one correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one prison are more disagreeable or the prison has more severe rules. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. More Like This Headnote

Constitutional Law > Procedural Due Process > Scope of Protection
Constitutional Law > Civil Rights Enforcement > Prisoners > Discipline

HN23 To state a claim that the failure to hold a disciplinary hearing while being confined in a particular unit violated an inmate's right to due process, the inmate must demonstrate that he possessed a protected liberty or property interest and that he was denied that interest without being afforded due process of law. The inmate bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. If he is unable to show the existence of a protected interest, the claim must be dismissed regardless whether the defendants acted in accordance with the requisite procedures. More Like This Headnote

Constitutional Law > Procedural Due Process > Scope of Protection
Constitutional Law > Civil Rights Enforcement > Prisoners > Discipline

HN24 A protected liberty interest generally will arise only where, as punishment for alleged misconduct, a prisoner is involuntarily placed in confinement which is "qualitatively different" from the punishment characteristically suffered by a person convicted of a crime and results in "stigmatizing consequences." Thus, to show that a liberty interest is sufficient to invoke the protections of the Due Process Clause, a prisoner must establish both that his resulting confinement or restraint creates an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint. More Like This Headnote

Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
Constitutional Law > Civil Rights Enforcement > Prisoners > Transfers

HN25 Confinement in segregation is confinement that an inmate should reasonably anticipate. More Like This Headnote

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 22165                                       Page 6 of 18

Case 3:01-cv-01107-CFD    Document 172-2    Filed 11/30/2004    Page 3 of 15

Constitutional Law > Procedural Due Process > Scope of Protection
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
Constitutional Law > Civil Rights Enforcement > Prisoners > Discipline

**HN26** Keeplock or segregated housing unit confinement of 30 days or less in a prison is not atypical or significant hardship for purposes of a protected liberty interest in due process claims involving prison disciplinary hearings. More Like This Headnote

Constitutional Law > Equal Protection > Scope of Protection

**HN27** The Equal Protection Clause provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. This provision does not mandate identical treatment for each individual; rather it requires that all persons similarly situated should be treated alike. More Like This Headnote

Constitutional Law > Equal Protection > Scope of Protection

**HN28** To state an equal protection claim, a plaintiff must charge a government officer not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation. State legislation that creates suspect or "quasi-suspect" classifications or that impinges a fundamental right is subject to heightened judicial scrutiny. All other classifications are valid if they are rationally related to a legitimate state interest. More Like This Headnote

Constitutional Law > Equal Protection > Scope of Protection
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
Constitutional Law > Civil Rights Enforcement > Prisoners > Discipline

**HN29** A court does not apply a heightened standard of review to prisoner claims of a denial of equal protection because prisoners either in the aggregate or specified by offense are not a suspect class. More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction

**HN30** Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case. More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction

**HN31** The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience, and fairness to the litigants. The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent. In addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C.S. § 1367(c)(3). More Like This Headnote

**COUNSEL:** [*1] Allan C Nicholson, PLAINTIFF, Pro se, Somers, CT USA.

For Brian Murphy, Warden, I/O, Carter, Major, I/O, Cleaver, I/O, Luna, Capt, I/O, Fisher, Lt, I/O, Howell, Co, I/O, Wilson, Counsel, I/O, Haskins, Corr Treatment Ofcr, I/O, Breelove, Grievance Coordinator, I/O, DEFENDANTS: Robert Bishop Fiske, III, Attorney General's Office Public Safety & Special Revenue, Hartford, CT USA.

**JUDGES:** Mark R. Kravitz, United States District Judge.

**OPINIONBY:** Mark R. Kravitz

**OPINION:** RULING AND ORDER

Plaintiff Allan C. Nicholson ("Nicholson") is an inmate currently confined at the Osborn Correctional Institution in Somers, Connecticut. He brings this civil rights action pro se pursuant to 28 U.S.C. § 1915. Nicholson alleges that, while he was confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, the defendants violated his rights under the Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments of the U.S. Constitution and under Article first, sections seven, eight, twenty and seventeen of the Connecticut Constitution. The defendants have moved to dismiss this case on various grounds. For the reasons that follow, the defendants' motion is granted [*2] and this case is dismissed.

I. Standard of Review

HN1 When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683, 71 Ohio Op. 2d 474 (1974); Thomas v. City of N. Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents [*3] attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). HN2 The Second Circuit "ordinarily requires the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

II. Facts

The court accepts as true the following facts, which are taken from the complaint and attached exhibits.

On April 8, 2002, defendant Howell observed inmate Davenport, Nicholson's cellmate, using a make-shift punching bag tied to a rope that had been strung across the width of the cell. Defendant Haskins told inmate Davenport to remove the punching bag and informed him that he would receive a disciplinary report. Defendant Haskins woke Nicholson, who was sleeping in his bunk, and asked whether Nicholson also used the punching bag. Nicholson denied any involvement. Both inmates were ordered to leave the cell and go to the television room. Defendant Fisher removed the punching bag and spoke to inmate Davenport about the rope. Inmate Davenport was handcuffed and taken to the restrictive [*4] housing unit. En route, inmate Davenport told defendant Fisher that Nicholson was not involved in the incident. Nicholson also was handcuffed and taken to the restrictive housing unit.

Nicholson received a form stating that he was being held in administrative detention pending further investigation of the incident. Subsequently, he received a Class A disciplinary charge of violation of institutional rules. On April 10, 2002, defendants Luna and Wilson interviewed Nicholson regarding the disciplinary charge. Although Nicholson denied any knowledge of the rope, defendant Luna did not believe that he did not know that there was a rope in the cell.

On April 12, 2002, Nicholson was moved to unit H-2-76. This unit was used to house inmates found guilty of disciplinary charges. No disciplinary sanctions had been imposed on Nicholson

and he had not pled guilty or been found guilty of the charge. Defendant Cooper told Nicholson that he should not be housed in that unit and said that he would look into the matter. The following week, defendant Cleaver informed Nicholson that the disciplinary charge had been reduced from Class A to Class B, and then to Class C.

Disciplinary hearings usually [*5] were held on Thursday. On April 18, 2002, Nicholson was not taken to a disciplinary hearing. The following week, Nicholson spoke to defendant Murphy, who referred Nicholson to defendant Carter. Defendant Carter told Nicholson that he would not be moving back to I-pod. Nicholson was not called for a disciplinary hearing on April 25, 2002, or May 2, 2002.

On May 7, 2002, defendant Cleaver told Nicholson that he would release him from H-2 if Nicholson were not called for a disciplinary hearing that Thursday. On May 10, 2002, Nicholson informed defendant Cleaver that he had not been called for a disciplinary hearing on the previous day. Nicholson was moved to I-2 that evening.

After two weeks, Nicholson got his "blues" which would allow him to return to his prison work assignment. He returned to his assignment at Graphic Arts on May 29, 2002. On July 15, 2002, Nicholson discovered that he was not being paid for working. He was told that he had to be reclassified and should not return to his work assignment until his name had been added to the school roster. On July 26, 2002, Nicholson was reclassified for work assignment purposes.

On May 12, 2002, Nicholson filed a Level 1 Grievance. [*6] On July 5, 2002, he received what he considered an inadequate response. On July 7, 2002, Nicholson filed a Level 2 grievance. On August 5, 2002, he filed a Level 3 grievance. On August 12, 2002, defendant Breedlove returned the Level 3 grievance and told Nicholson that it had not been timely filed. When Nicholson tried to explain why the grievance was timely, defendant Breedlove used derogatory language toward him. Nicholson reported the encounter with defendant Breedlove to defendant Murphy who said the defendant Breedlove was wrong. Defendant Murphy told Nicholson to give the grievance to defendant Luna who would forward it to Murphy. Although defendant Luna told Nicholson that he would see him later in the housing unit to get the grievance, he did not do so. On August 14, 2002, before Nicholson could see defendant Luna, defendant Breedlove returned a second grievance packet to Nicholson. The Level 2 grievance in the second packet indicated that the decision could not be appealed to Level 3.

III. Discussion

Nicholson includes in his complaint the following claims: (1) he was subjected to an unreasonable seizure and deliberate indifference to his right to be secure in his [*7] person when he was handcuffed, sent to the television room and then sent to the restrictive housing unit; (2) he improperly continued to be held in the sanctions unit when no disciplinary sanctions had been imposed; (3) he was falsely accused of having knowledge of the rope; (4) he was subjected to cruel and unusual punishment and denied due process and equal protection by the defendants' failure to comply with institutional rules and directives; (5) he was denied his rights under the Thirteenth Amendment when defendants approved him for return to his work assignment but failed to pay him.

The defendants move to dismiss this action. Nicholson opposes the motion and also has filed a motion for preliminary injunctive relief.

A. Nicholson's Motion for Preliminary Injunctive Relief

Nicholson has filed a motion for preliminary injunctive relief seeking access to the law library at Osborn Correctional Institution for five hours per week. In his motion, Nicholson alleges that Osborn Correctional Institution was "allowing access of approximately two to three hours

per week to the library, however, in the previous two and a half weeks access has been completely denied."

HN3 Preliminary [*8] injunctive relief is designed "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. See id.; see also Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997) (reversing district court's granting of motion for preliminary injunctive relief because injury sought to be prevented through preliminary injunction was unrelated and contrary to injury which gave rise to complaint).

The issues in this case concern events at MacDougall-Walker Correctional Institution which occurred prior to May 10, 2002, the date Nicholson was returned to a cell in I-2 unit. The request for preliminary injunctive relief concerns Nicholson's present inability to go to the prison law library at Osborn Correctional Institution for five hours per week. Thus, this request for preliminary injunctive relief is unrelated [*9] to the issues in the amended complaint and is not proper in this action.

Further, even if the request were proper, the motion should be denied. HN4 "[I]nterim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'" Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (quoting Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)). In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E. D. Mo.), aff'd, 426 U.S. 943, 49 L. Ed. 2d 1180, 96 S. Ct. 3160 (1976).

In this Circuit the standard for injunctive relief is well established. HN5 To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000). [*10]

HN6 Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. See Drywall Tapers & Pointers Local 1974 v. Local 530, 954 F.2d 69, 76-77 (2d Cir. 1992). Where, as here, "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., Moore's Federal Practice P65.04[3] (2d ed. 1995). Upon review of the record, the court determines that oral testimony and argument are not necessary. In this regard, the court notes that in his motion for a preliminary injunction, Nicholson himself states that "no oral argument [is] requested" and "testimony is not required."

In Lewis v. Casey, 518 U.S. 343, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996), the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right. The Court held that HN7 to show that the defendants violated his right of access [*11] to the courts, an inmate must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct. See id. at 349. As an illustration, the Court noted that if an inmate were able to show that, as a result of the defendant's action, he was unable to file an initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim, he could state a claim for denial

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 22165          Page 7 of 15

Case 3:01-cv-01107-CFD   Document 172-2   Filed 11/30/2004   Page 10 of 18

of access to the courts. See id. at 351. The Court, however, specifically disclaimed any requirement that prison officials ensure that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court. See id. at 355.

HN8 Law libraries and legal assistance programs do not represent constitutional rights in and of themselves. They are only the means to ensure "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Id. at 351 (internal quotation marks omitted). Thus, prisoners must demonstrate "actual injury" in order to [*12] have standing to bring a claim for denial of access to the courts. See id.

Nicholson has not alleged any facts demonstrating an actual injury. At this time, he has responded to the defendants' motion to dismiss and no further legal research is required or even alleged to be required. Should further legal research be needed, Nicholson may contact Inmates' Legal Assistance Program. Because Nicholson has no constitutional right of access to a prison law library and has not alleged facts demonstrating an actual injury, his motion for preliminary injunctive relief should be denied on the merits as well.

B. Claims for Declaratory and Injunctive Relief

The defendants have not addressed specifically Nicholson's claims for declaratory and injunctive relief. The Second Circuit has held that HN9 an inmate's request for declaratory and injunctive relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark [*13] of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Other courts concur with this result. See, e. g., McAlpine v. Thompson, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement); Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993) (holding that inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that inmate's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit).

Nicholson indicates in his motion for injunctive relief that he has been transferred to Osborn Correctional Institution. Thus, his request for declaratory and injunctive relief against the defendants, correctional officials assigned to MacDougall-Walker Correctional Institution, [*14] is moot. These claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) which requires the court to dismiss, at any time, an action that fails to state a claim upon which relief may be granted.

C. Defendants' Motion to Dismiss

The court next considers the defendants' motion to dismiss the complaint. The defendants raise six grounds in support of their motion: (1) Nicholson failed to timely or completely exhaust his administrative remedies with regard to each claim asserted in the complaint before commencing this action; (2) the Eleventh Amendment bars all claims for damages based upon violation of state law and all claims for damages against the defendants in their official capacities for violation of federal rights; (3) Nicholson fails to state a claim for violation of any rights guaranteed by the Fifth, Eighth or Thirteenth Amendments; (4) Nicholson fails to state a claim for denial of his right to equal protection of the laws; (5) Nicholson fails to state a claim for denial of his Fourteenth Amendment right to substantive or procedural due process; and (6) the defendants are protected by qualified immunity.

1. Exhaustion of Administrative Remedies [*15].

The defendants argue that Nicholson failed to timely and completely exhaust his administrative remedies before commencing this action. In response, Nicholson argues that he filed grievances at Levels 1, 2 and 3, thereby exhausting his administrative remedies. Copies of Nicholson's grievances are attached to the complaint.

*HN10* The Second Circuit considers the failure to exhaust administrative remedies an affirmative defense. "A defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [that plaintiff first exhaust all administrative remedies]." Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). By characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss. Rather, the defendants must present proof of non-exhaustion. See also Reyes v. Punzal, 206 F. Supp. 2d 431, 433 (W. D.N.Y. 2002) ("in the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense ...and ...defendant bears the burden of [*16] proving plaintiff's failure to comply with the exhaustion requirement")(citations omitted); Hallett v. New York State Dep't of Correctional Servs., 109 F. Supp. 2d 190, 196-97 (S. D.N.Y. 2000) (same). But see Snider v. Melindez, 199 F.3d 108, 111-14 (2d Cir. 1999) (creating an exception to this rule by permitting the court to dismiss a complaint sua sponte, after notice to the plaintiff and an opportunity to be heard, where the plaintiff's failure to exhaust administrative remedies under the PLRA is "readily apparent," or "unambiguously established in the record").

Nicholson has received notice of the exhaustion requirement in the defendants' motion to dismiss. In response, he argues that he complies with the exhaustion requirement, and he has attached copies of his grievance forms to the complaint. Nicholson does not argue that he made any other attempts to exhaust his administrative remedies with regard to the claims asserted in this case beyond the copies of grievances attached to his complaint and he has not provided the court with copies of any other grievance forms. Thus, because the court need not consider any material outside of the pleadings [*17] to resolve this issue, it may consider the exhaustion issue in deciding the motion to dismiss. See, e. g., Willner v. Town of North Hempstead, 977 F. Supp. 182, 191 (E. D.N.Y. 1997) (noting that *HN11* court may consider affirmative defense on a motion to dismiss where defense is evident on the face of the complaint (citing Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

*HN12* The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action ...with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741, 149 L. Ed. 2d 958, 121 S. Ct. 1819 (2001).

*HN13* The statute expressly states that inmates must exhaust all available administrative remedies [*18] before filing suit. See Webb v. Goord, 340 F.3d 105 (2nd Cir. 2003); Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001). Therefore, any attempt to exhaust administrative remedies after the case was filed is ineffective to satisfy the exhaustion requirement. In addition, "[p]rison officials are entitled to require strict compliance with an existing grievance procedure." Hemphill v. New York, 198 F. Supp. 2d 546, 549 (S. D.N.Y. 2002). See Byas v. New York, 2002 U.S. Dist. LEXIS 13072, No. 99 CIV. 1673 (NRB), 2002 WL 1586963, at *2 (S. D.N.Y. June 17, 2002) ("Permitting a plaintiff to bypass the codified grievance procedure by sending letters directly to the facility's superintendent would

undermine the efficiency and the effectiveness that the prison grievance program is intended to achieve.")

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances. n2 During the relevant time period, section 6(A) provided that the following matters were grievable:

> 1. The interpretation and application of policies, rules and procedures of the unit, division [*19] and Department.
> 2. The existence or substance of policies, rules and procedure of the unit, division and Department ...
> 3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
> 4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
> 5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.
> 6. Property loss or damage.

Nicholson's claims of unconstitutional treatment and conditions of confinement, denial of payment and interference with his access to the grievance process are included within the list of grievable matters at items 3 and 5. Thus, Nicholson was required to fully exhaust his administrative remedies as to each of these claims before he filed this action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 HN14 The Administrative Directives are written guidelines, promulgated pursuant to Connecticut General Statutes § 18-81, establishing the parameters of operation for Connecticut correctional facilities. See Beasley v. Commissioner of Corrections, 1997 Conn. Super. LEXIS 1440, Nos. CV 952059, CV 962176, 1997 WL 263723, at *4 (Conn. Super. Ct. May 12, 1997). The Administrative Directives are analogous to the Program Statements promulgated by the Bureau of Prisons ("BOP"). HN15 Courts have taken judicial notice of the BOP Program Statements. See Antonelli v. Ralston, 609 F.2d 340, 341 n. 1 (8th Cir. 1979); Gleave v. Graham, 954 F. Supp. 599, 605 (W. D.N.Y. 1997). See also United States v. Penn Foundry & Mfg. Co., 337 U.S. 198, 215, 93 L. Ed. 1308, 69 S. Ct. 1009, 113 Ct. Cl. 691 (1949) (Douglas, J., concurring) (official communications disclosing policy, such as reports, rules and regulations of an agency, are reliable and authoritative and need not be proven); Christman v. Skinner, 468 F.2d 723, 726 (2d Cir. 1972)(proper for trial court to take judicial notice of state prison regulations concerning books and magazines); Hernandez v. N.Y. City Dep't of Corr., 2003 U.S. Dist. LEXIS 2664, 2003 WL 542116, at *3 (S. D.N.Y. Feb. 18, 2003) (taking judicial notice, absent objection, of DOC Inmate Grievance Resolution Program Directive); Carter v. McGinnis, 320 F. Supp. 1092, 1094 (W. D.N.Y. 1970) (taking judicial notice of New York State Department of Correction disciplinary rules and regulations). Thus, this court takes judicial notice of Connecticut Department of Correction Administrative Directive 9.6.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*20]

The defendants argue that Nicholson's grievance is untimely. *HN16* Administrative Directive 9.6, section 10(G), requires that a grievance be filed within thirty days from the occurrence of the incident. Nicholson was taken to restrictive housing on April 8, 2002. His grievance is dated May 12, 2002. The subject of the grievance, however, appears to be Nicholson's placement in the H-2 disciplinary unit on April 13, 2002, not the initial placement in restrictive housing on April 8. Thus, insofar as Nicholson's complaints in this action relate to his placement in the H-2 disciplinary unit, his grievance was timely filed. The defendants' motion to dismiss on the ground of failure to exhaust administrative remedies is denied with respect to Nicholson's placement in the H-2 disciplinary unit.

The grievances relating to the April 13, 2002 placement in the H-2 unit are the only grievances attached to the complaint. Nicholson has not attached evidence to his complaint, or even alleged or even argued in opposition to the motion to dismiss, that he filed grievances relating to his claims regarding (1) the circumstances surrounding his removal from his cell and transfer in handcuffs to restrictive [*21] housing on April 8, (2) the failure to pay him for his prison job, or (3) the interference with his access to the inmate grievance process. Thus, the defendants' motion to dismiss is granted as to each of the foregoing claims because Nicholson failed to exhaust his administrative remedies before commencing this action. However, the dismissal of these claims is without prejudice to Nicholson filing an amended complaint provided he demonstrates in any such amended complaint that he did in fact file institutional grievances regarding these claims.

2. Official Capacity Claims for Damages

The defendants next argue that all claims for damages against them in their official capacities are barred by the Eleventh Amendment.

*HN17* Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684, 73 L. Ed. 2d 1057, 102 S. Ct. 3304 (1982). *HN18* Section 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 342, 59 L. Ed. 2d 358, 99 S. Ct. 1139 (1979). [*22] *HN19* The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. See Kentucky v. Graham, 473 U.S. 159, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985). A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n. 11, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984).

Nicholson has named the defendants in their individual and official capacities. He does not specify whether he seeks damages from them in their individual or official capacities. Because an award of damages against the defendants in their official capacities is barred by the Eleventh Amendment, the motion to dismiss is granted to the extent that the complaint may be construed as seeking damages from the defendants in their official capacities.

3. Claim for Unconstitutional Transfer to H-2 Unit

The only claims for which Nicholson exhausted his administrative remedies are those based upon his transfer to the H-2 unit despite that fact that he had not been found guilty of a disciplinary [*23] infraction and was not serving any disciplinary sanctions. The defendants argue that these allegations fail to state a claim upon which relief may be granted. The court agrees.

*HN20* The Eighth Amendment prohibits the infliction of "cruel and unusual punishment," U.S.

Const. Amend. VIII, and it applies to the states through the Due Process Clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666-67, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962). *HN21* After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Ingraham v. Wright, 430 U.S. 651, 670, 51 L. Ed. 2d 711, 97 S. Ct. 1401 (1977). To prove a violation of the Eighth Amendment, therefore, an inmate must show "(1) that the deprivation is 'objectively sufficiently serious' such that the plaintiff was denied the 'minimal civilized measure of life's necessities, 'and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain. '" Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003), quoting Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994); [*24] see Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001). Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986). The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979); Lareau v. Manson, 651 F.2d 96, 106 (2d Cir. 1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347, 69 L. Ed. 2d 59, 101 S. Ct. 2392, 21 Ohio Op. 3d 382 (1981).

Nicholson has not alleged facts sufficient to state [*25] a claim for violation of the Eighth Amendment's prohibition on cruel and unusual punishment. He does not allege that his confinement in the H-2 unit was inhumane in any way or that it deprived him of adequate food, clothing, shelter, sanitation, medical care or personal safety. Nor has he alleged any objectively serious conduct on the part of the defendants that evinces anything more than, at best, an "ordinary lack of care" for his interests and concerns. Whitley v. Albers, 475 U.S. at 319. Accordingly, the defendants' motion to dismiss Nicholson's claims based on the Eighth Amendment is granted.

In addition, *HN22* an inmate has no inherent right to remain in any particular correctional facility or area within a correctional facility. See Olim v. Wakinekona, 461 U.S. 238, 248, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state). The transfer of an inmate from one correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules." Meachum v. Fano, 427 U.S. 215, 225, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976). [*26] See Russell v. Scully, 15 F.3d 219 (2d Cir. 1993) (inmates have no due process interest in being confined in a certain location within a prison). See generally Asquith v. Department of Corrections, 186 F.3d 407, 410, 411 (3d Cir. 1999) (holding that inmates have no protected liberty interest in remaining in a preferred correctional facility); Frazier v. Dubois, 922 F.2d 560, 561-62 (10th Cir. 1990) (holding that inmates generally are not entitled to due process before transfer); Berdine v. Sullivan, 161 F. Supp. 2d 972, 974 (E. D. Wis. 2001) ("a prisoner has no liberty interest in avoiding transfer to another prison, be it out-of-state, more restrictive, or owned and run by a private corporation"). "Prison administrators ...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979).

Because Nicholson has no protected liberty interest in avoiding transfer to another correctional facility [*27] or another unit within the same correctional facility, his constitutional rights were not violated by his transfer to the H-2 unit. In addition, without a

protected liberty interest, Nicholson has no constitutional right to a pre-transfer hearing under the Due Process Clause.

Nicholson also fails to allege facts sufficient to state HN23 a claim that the failure to hold a disciplinary hearing while he was confined in the H-2 unit violated his right to due process. To state such a claim, the Supreme Court requires that Nicholson demonstrate that he possessed a protected liberty or property interest and that he was denied that interest without being afforded due process of law. See Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996). Nicholson bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). If he is unable to show the existence of a protected interest, the claim must be dismissed regardless whether the defendants acted in accordance with the requisite procedures. See id. at 317-18.

In Sandin v. Conner, 515 U.S. 472, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995), [*28] the Supreme Court established the appropriate standard for determining the existence of a protected liberty interest in due process claims involving prison disciplinary hearings. The Court held that HN24 a protected liberty interest generally will arise only where, as punishment for alleged misconduct, a prisoner is involuntarily placed in confinement which is "' qualitatively different' from the punishment characteristically suffered by a person convicted of a crime and results in 'stigmatizing consequences. '" Id. at 479 n. 4 (quoting Vitek v. Jones, 445 U.S. 480, 493-94, 63 L. Ed. 2d 552, 100 S. Ct. 1254 (1980)). Thus, to show that a liberty interest is sufficient to invoke the protections of the Due Process Clause, a prisoner must establish both that his resulting confinement or restraint creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint. Sandin, 515 U.S. at 484; see Frazier, 81 F.3d at 317.

Nicholson is not challenging [*29] the procedures used at a disciplinary hearing. Rather, he challenges his confinement in the H-2 unit without first being afforded a disciplinary hearing or without having a hearing while confined in the unit. However, because Nicholson's challenge is to an alleged punishment without due process, the court considers the claim under the test set forth in Sandin.

Nicholson was held in the H-2 unit for twenty-seven days, from April 13, 2002, until May 10, 2002. HN25 Confinement in segregation is confinement that an inmate should reasonably anticipate. See Russell v. Scully, 15 F.3d 219, 221 (2d Cir. 1993); see also Rosario v. Selsky, 1995 U.S. Dist. LEXIS 19175, No. 94 Civ. 6872, 1995 WL 764178, at *3 (S. D.N.Y. Dec 28, 1995) (holding that 120 days confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison). Thus, Nicholson has not alleged facts demonstrating imposition of a sanction qualitatively different from ordinary prison life.

The Second Circuit has not adopted a bright line test to determine when confinement constitutes an atypical and significant hardship. However, "the decisions [*30] in the Second Circuit are unanimous that HN26 keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin." Williams v. Keane, 1997 U.S. Dist. LEXIS 12665, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S. D.N.Y. Aug. 25, 1997) (citing cases). See also Fine v. Gallow, No. 3: 97cv497(SRU), 2000 WL 565232, at *9 (D. Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of five days confinement in punitive segregation and fifteen days confined to quarters, and seven days confinement in punitive segregation, fifteen days confined to quarters and thirty days loss of commissary privileges did not constitute an atypical and significant hardship); McNellis v. Meachum, Civ.

No. 2: 92cv936 (PCD) (D. Conn. Oct. 4, 1995) (holding that thirty-day period of disciplinary segregation does not give rise to liberty interest under Sandin).

Because Nicholson was held in the H-2 unit for only twenty-seven days, his due process claim fails as a matter of law. Accordingly, the defendants' motion to dismiss Nicholson's due process claims regarding his transfer **[*31]** to the H-2 unit is granted.

Finally, Nicholson fails to state a claim for denial of equal protection of the laws based upon his confinement in the H-2 unit. *HN27* The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This provision does not mandate identical treatment for each individual; rather it requires that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985).

*HN28* "To state an equal protection claim, a plaintiff must charge a government officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.'" Brady v. Town of Colchester, 863 F.2d 205, 216 (2d Cir. 1988) (citation omitted). State legislation that creates suspect or "quasi-suspect" classifications or that impinges a fundamental right is subject to heightened judicial scrutiny. City of Cleburne, 473 U.S. at 439. All other classifications are valid if they are "rationally related to a legitimate state interest." Id. at 440. **[*32]** *HN29* The court does not apply a heightened standard of review to prisoner claims because prisoners "either in the aggregate or specified by offense" are not a suspect class. Lee v. Governor of New York, 87 F.3d 55, 60 (2d Cir. 1996).

Nicholson does not allege that he is a member of a suspect class and, as determined above, his confinement in the H-2 unit does not violate a fundamental right. Thus, to assert an equal protection claim, he must allege that he was treated differently from other inmates in similar circumstances and that the unequal treatment was the result of intentional discrimination. Nicholson alleges that he was transferred to the H-2 unit improperly because inmates are assigned to that unit only after they have been found guilty of disciplinary infractions.

Nicholson attaches to his complaint statements from two inmates stating that they were sent to restrictive housing during the investigation into various incidents unrelated to the matter for which Nicholson was sent to restrictive housing. Following the investigation, these two inmates were returned to the I-pod in which Nicholson was originally housed. Although Nicholson alleges that defendant **[*33]** Carter told him that he would not return to I-pod, he does not indicate the reason for Carter's statement. Nicholson also attaches to his complaint a note from defendant Cleaver stating that Nicholson was transferred from restrictive housing to the H-2 unit as an unassigned inmate until a bed was available in I-pod. Nicholson has thus provided evidence attached to his own complaint indicating a non-discriminatory reason for his continued stay in H-2 unit, and he has alleged no facts suggesting that the defendants intentionally discriminated against him. Thus, Nicholson has not alleged facts demonstrating or from which the court could infer that he was denied equal protection of the laws relating to his transfer to and continued stay in the H-2 unit.

The defendants' motion to dismiss is, therefore, granted as to each of the constitutional claims that Nicholson asserts relating to his transfer to, and continued stay in, the H-2 unit. However, Nicholson may file an amended complaint regarding those claims if he can allege facts from which the court could reasonably infer that his confinement in the H-2 unit constituted an atypical and significant hardship and/or that the reasons for **[*34]** the delay in returning him to I-pod were pretextual and that the defendants intentionally discriminated against him in causing that delay.

Because, as stated previously, all of Nicholson's other federal law claims were dismissed for

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 22165 Page 14 of 15

Case 3:01-cv-01107-CFD Document 172-2 Filed 11/30/2004 Page 15 of 18

failure to exhaust administrative remedies, the court need not consider the other grounds for relief raised by the defendants.

D. State Law Claims

Nicholson states in his complaint that he also brings claims for violation of rights secured by the Connecticut Constitution.

HN30 Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case. See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966). HN31 The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants. The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent. See id. at 726. In [*35] addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 98 L. Ed. 2d 720, 108 S. Ct. 614 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity- will point toward declining to exercise jurisdiction over the remaining state-law claims"); Spear v. Town of West Hartford, 771 F. Supp. 521, 530 (D. Conn. 1991) ("absent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendent state law claims on the basis of a federal question claim already disposed of"), aff'd, 954 F.2d 63 (2d Cir.), cert. denied, 506 U.S. 819, 121 L. Ed. 2d 33, 113 S. Ct. 66 (1992).

The court has granted the defendants' motion to dismiss as to all federal claims contained in the complaint. The court declines to exercise supplemental jurisdiction over any remaining state law [*36] claims.

IV. Conclusion

Nicholson's Motion for Injunctive Relief [doc. # 20] is **DENIED**. Defendants' Motion to Dismiss [doc. # 24] is **GRANTED** without prejudice to Nicholson filing an amended complaint provided he can allege and demonstrate in any such amended complaint that he exhausted his administrative remedies regarding the claims that have been dismissed today for failure to exhaust, or if he can allege facts from which the court could reasonably infer that his confinement in the H-2 unit constituted an atypical and significant hardship and/or that the reason proffered for the delay in transferring him back to I-pod was pretextual and that in causing that delay the defendants intentionally discriminated against him. Any amended complaint must be filed within **twenty (20)** days from the date of this order. All claims for declaratory and injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The court declines to exercise supplemental jurisdiction over Nicholson's state law claims.

The Clerk is directed to close this case. Should Nicholson file an amended complaint as directed, the Clerk's [*37] Office will reopen the file.

**SO ORDERED** this 19th day of September, 2003, at New Haven, Connecticut.

Mark R. Kravitz

United States District Judge

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 22165                                    Page 18 of 18

Case 3:01-cv-01107-CFD    Document 172-2    Filed 11/30/2004    Page 15 of 15

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 22165**
View: Full
Date/Time: Monday, November 22, 2004 - 2:27 PM EST

\* Signal Legend:
- ● - Warning: Negative treatment is indicated
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.