Get a Document - by Citation - 1995 U.S. Dist. LEXIS 8729

Case 3:01-cv-01107-CFD    Document 172-3    Filed 11/30/2004    Page 1 of 12

Page 1 of 12

Service: **Get by LEXSEE®**
Citation: **1995 U.S. Dist. LEXIS 8729**

*1995 U.S. Dist. LEXIS 8729, **

RUDY MARTINEZ, Plaintiff, v. J.W. FAIRMAN, JR., et al., Defendants.

No. 93 C 6225

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1995 U.S. Dist. LEXIS 8729

June 21, 1995, Decided
June 22, 1995, DOCKETED

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff inmate filed an action under 42 U.S.C.S. §§ 1983 and 1988 alleging that during his detention at the Cook County Jail, defendant jail officials (officials) violated his rights to due process under U.S. Const. amend. XIV and to be free from cruel and unusual punishment pursuant to U.S. Const. amend. VIII. The officials filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** The officials filed a motion to dismiss the inmate's civil rights action. In considering the motion the court assumed the truth of all the facts alleged in the complaint. The court recited the facts alleged by the inmate concerning the conditions of his imprisonment. The court ruled that the inmate alleged facts sufficient to survive the motion to dismiss with respect to his claims against all but one of the officials in their individual capacities. With respect to the claims against the officials in their official capacities the court found that in all but one instance the inmate's allegations that the officials' mistreatment of him was based on official policy and practice were mere boilerplate assertions. The court ruled that the inmate alleged the requisite culpable state of mind on the part of the officials in connection with his claims under U.S. Const. amend. VIII. The court rejected the officials' argument that the inmate failed to allege sufficient physical harm to pursue his Eighth Amendment claim.

**OUTCOME:** The court granted in part and denied in part the officials' motion to dismiss. The court dismissed all of the claims against one official who had no personal knowledge of the prisoner's treatment. The court granted the motion as to all but one of the remaining employees in their official capacities. The court denied the motion with respect to all the remaining officials in their personal capacities.

**CORE TERMS:** shackles, prisoner, cell, Eighth Amendment, segregation, leg, inmate, confinement, deprivation, transferred, motion to dismiss, disciplinary, prison, wear, cruel and unusual punishment, confined, notice, deliberate indifference, penological, handcuffs, locked, protected liberty interest, physical restraint, state of mind, municipal, entity, custom, solitary confinement, pretrial detainee, involvement

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss
*HN1* In deciding a motion to dismiss, the court must assume the truth of all facts alleged

in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. Dismissal is properly granted if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. More Like This Headnote

Constitutional Law > Procedural Due Process > Scope of Protection
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
*HN2* A state can, through the repeated use of explicitly mandatory language, create for prisoners a protected liberty interest in remaining in the general prison population. Where that has happened, the state must provide due process before impinging on that interest. More Like This Headnote

Constitutional Law > Procedural Due Process > Scope of Protection
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
*HN3* In Illinois no protected liberty interest is violated where an inmate is placed in administrative segregation. However, Illinois regulations do provide prisoners a protected liberty interest in not being removed for disciplinary reasons. Consequently, a pre-deprivation notice and hearing is required before any disciplinary segregation, even of the shortest duration, is imposed. More Like This Headnote

Constitutional Law > Procedural Due Process > Scope of Protection
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
*HN4* A prisoner serving a sentence has the same right as a pretrial detainee not to be transferred for disciplinary purposes without notice and hearing. More Like This Headnote

Constitutional Law > Procedural Due Process > Scope of Protection
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
*HN5* A pretrial detainee who is not yet convicted of a crime is not to be subjected to any punitive measure before his conviction even with notice and hearing. More Like This Headnote

Constitutional Law > Substantive Due Process > Scope of Protection
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
*HN6* Freedom of bodily movement is a substantive right derived from the due process clause, and it can be violated when the degree or manner of physical restraint is unrelated to an appropriate exercise of judgment by a professional. Due process requires that the nature and duration of the physical restraint bear some reasonable relation to the purpose for which it is prescribed. The purpose for which such a stricture is imposed must be a legitimate penological interest, and must operate neutrally. More Like This Headnote

Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
*HN7* Where an inmate is prone to violence or is suicidal, extraordinary restraint may be justified to prevent the prisoner from harming himself or others. Restraints are also acceptable where segregated inmates, who are often the most intractable prisoners, are given access to vulnerable areas of a correctional facility. More Like This Headnote

Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
*HN8* The government bears the burden of demonstrating a legitimate penological or medical reason for its use of shackles. This requires a showing that the decision to

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 8729 Page 3 of 12

Case 3:01-cv-01107-CFD    Document 172-3    Filed 11/30/2004    Page 3 of 12

restrain the plaintiff was made by an appropriate professional employing his professional judgment. Although courts will generally presume that such a decision is correct, liability may still be imposed if the decision was such a departure from accepted professional practices that it is clear the decision-maker did not use appropriate professional judgment. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
HN9♣ The Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime. This includes the conditions under which a prisoner is confined when, either alone or in combination, the conditions deprive inmates of the minimal civilized measure of life's necessities. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
HN10♣ To state an Eighth Amendment violation in connection with incarceration a plaintiff must allege (1) that objectively, the conditions of imprisonment were serious enough to be considered cruel and unusual, and (2) that subjectively, the defendant acted with a sufficiently culpable state of mind. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
HN11♣ Conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
HN12♣ Handcuffing, shackling, and other forms of physical restraint are not always unconstitutional -- they are sometimes necessary when dealing with inmates who are difficult to control. Although restraints are permissible, unconscionable conditions of restraint are impermissible. Moreover, where movement is denied and muscles are allowed to atrophy, the health of the individual is threatened and the state's constitutional obligation is compromised. Consequently, the Eighth Amendment recognizes that there is a constitutional limitation on the degree to which an institution may deny a prisoner the ability to engage in physical activity. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
HN13♣ Courts have also refused to find an Eighth Amendment violation where an inmate has had significant freedom of movement and space within his unit or his cell to engage in exercise, even though he is denied access to a gym. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment

Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
**HN14** When denial of exercise is combined with other serious deprivations, it may be deemed to rise to the level of cruel and unusual punishment despite the lack of serious physical harm. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment
Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights
**HN15** In cases questioning the conditions of a prisoner's confinement, the culpable state of mind for a prison official under an Eighth Amendment analysis is "deliberate indifference." "Deliberate indifference" is not mere negligence, or even gross negligence. Rather, deliberate indifference requires a plaintiff to show that prison officials either intended for the plaintiff to be injured or knowingly disregarded an excessive threat to the inmate's health or safety. This is a subjective test. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
**HN16** Although the United States Constitution is the source of substantive federal rights, it is 42 U.S.C.S. § 1983 that provides the framework under which a plaintiff may seek compensation for constitutional injuries. More Like This Headnote

Torts > Vicarious Liability > Respondeat Superior
Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
**HN17** Generally, a defendant must have some direct personal responsibility for the deprivation of constitutional right for individual liability to attach under 42 U.S.C.S. § 1983. Respondeat superior may not be used as a theory of liability under § 1983. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
**HN18** An official satisfies the personal responsibility requirement of 42 U.S.C.S. § 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation occurs at her direction or with her knowledge and consent. More Like This Headnote

Torts > Vicarious Liability > Respondeat Superior
Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
**HN19** Respondeat superior is an impermissible theory of liability under 42 U.S.C.S. § 1983 because it relies upon negligent supervision. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
**HN20** There is some indication in the cases that officials who act in facilitation of a constitutional tort may be held liable under 42 U.S.C.S. § 1983. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
Constitutional Law > Civil Rights Enforcement > Immunity > Local Governments
**HN21** Generally, a suit against a person in his or her official capacity is to be treated as a suit against the state or municipal entity by which the named individual is employed. In order for a municipal entity to be held liable under 42 U.S.C.S. § 1983 for acts committed by its employees, a plaintiff must prove that his injury

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 8729    Page 5 of 12

Case 3:01-cv-01107-CFD    Document 172-3    Filed 11/30/2004    Page 5 of 12

was caused by a policy or custom of the entity. A single instance of deprivation can be caused by government policy if the decision in that instance was properly made by that government's authorized decisionmakers. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
Constitutional Law > Civil Rights Enforcement > Immunity > Local Governments

HN22 There are three instances in the context of 42 U.S.C.S. § 1983 in which a municipality can be said to have violated the rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation, (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. More Like This Headnote

**COUNSEL:** [*1] For RUDY MARTINEZ, plaintiff: Jerold Sherwin Solovy, Sandra Michelle Malinowski, Jenner & Block, Chicago, IL.

For J W FAIRMAN, Director, BENNY CALDWELL, Superintendant, ASST DIR CARTER, S WAZNIS, Superintendant, L PENSON, Superintendant, defendant: James Joseph Jozefowicz, State's Attorney of Cook County, Chicago, IL. Terry L. McDonald, Cook County State's Attorney, Chicago, IL.

**JUDGES:** John F. Grady, United States District Judge

**OPINIONBY:** John F. Grady

**OPINION: MEMORANDUM OPINION**

Plaintiff brings suit under 42 U.S.C. §§ 1983 and 1988, alleging defendants violated his rights to due process and freedom from cruel and unusual punishment during his detention at the Cook County Jail. Defendants now move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated in this opinion, the motion is granted in part and denied in part.

**BACKGROUND**

The facts alleged in the complaint are as follows. In September of 1992, Rudy Martinez was transferred to the Cook County Jail from a federal correctional facility in Kansas to await trial on a Illinois state charge. He was housed in Division I, in the ABO unit. Defendant Benny Caldwell was the Superintendent of Division I of the Cook County Jail.

During the first week of April 1993, the inmates at the jail staged an institution-wide food strike. Martinez alleges that prison officials believed the strike was instigated by the inmates in the ABO unit. On April 14, 1993, plaintiff was transferred to disciplinary segregation in Division Ten, without receiving any notice [*2] or hearing. Defendant Stan Waznis was the Superintendent in Division Ten. Martinez asked Waznis why he was being transferred when he had been the subject of no disciplinary action. Waznis replied that defendants Benny Caldwell and Lanmark Carter, the Assistant Executive Director of Internal Operations, had ordered that Martinez be transferred and placed in solitary confinement.

While housed in Division Ten, Martinez was confined to his cell for 23 hours a day. During the one hour he was permitted to leave his cell, he was required to wear handcuffs and leg shackles. On April 20, 1993, Defendant Lynda Pinson, Superintendent of Division Nine,

informed Martinez he would be transferred to her division. On or about April 22, 1993, plaintiff was transferred to Division Nine and placed in a segregation unit. He was confined to his cell for 23 hours a day, and wore handcuffs and shackles for the hour he was permitted to leave his cell. Martinez asked Pinson why he had been transferred. Pinson replied that the transfer had been ordered by defendant Carter.

On May 8, 1993, defendant Carter came to Martinez' cell. He told Martinez that defendant J.W. Fairman, the Director of the Cook County [*3] Department of Corrections, had ordered his 23 hour confinement. Carter also told Martinez that he had been moved from the ABO unit because he had been there for seven months, and that was too long.

Shortly thereafter, the conditions of plaintiff's confinement changed. On May 10, he was informed that he would be locked out of his cell for five hours a day, and that while he was out of his cell he would be in leg shackles. He would be allowed one exercise period per week. Plaintiff was also required to wear handcuffs and shackles during visits he received on May 14, May 21 and May 28.

Martinez filed a grievance with defendant Fairman sometime after May 14, but received no response. Two weeks later, he sent a second grievance. This too, received no response. On May 18, 1993, Carter came to Martinez' cell to notify him that he would be locked out of his cell for an increasing number of hours each day, and would have to wear leg shackles while outside his cell. By June of 1993, plaintiff was spending up to twelve and a half hours a day in leg shackles, locked outside his cell.

Spending so much time in leg shackles caused Martinez to experience swelling and soreness in his ankles. He [*4] managed to get the attention of a physician's assistant from the adjacent medical wing in May of 1993. Although the physician's assistant did not examine the ankle, he did provide an ace bandage. Martinez tore the bandage into two pieces which he wrapped around his ankles. By June of 1993, the bandage had worn through, directly exposing his skin to the shackles. Plaintiff requested a new bandage but did not receive it. On or about July 30, 1993, plaintiff was moved back to Division One and the ABO unit.

Plaintiff now brings suit against Fairman, Carter, Caldwell, Michael Sheahan, Pinson and Waznis, alleging that his confinement in Division Ten and Division Nine violated both his right to due process and his right to be free from cruel and unusual punishment. Defendants have moved to dismiss, arguing that (1) Martinez' transfer did not violate due process, (2) Martinez' placement in shackles did not violate due process, (3) the conditions of Martinez' confinement did not violate the Eighth Amendment, (4) Martinez does not state a claim for violation of the Eighth Amendment because he does not sufficiently allege deliberate indifference, and (4) Martinez does not state a cause of action [*5] under § 1983 against defendants in their individual or in their official capacities.

## DISCUSSION

HN1 In deciding a motion to dismiss, the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. See McMath v. City of Gary, 976 F.2d 1026, 1031 (7th Cir. 1992); Wilson v. Formigoni, 42 F.3d 1060, 1062 (7th Cir. 1994). Dismissal is properly granted "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Cushing v. City of Chicago, 3 F.3d 1156, 1159 (7th Cir. 1993) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)).

### I. Procedural Due Process and Prisoner Segregation

Martinez' first claim under § 1983 is that his right to due process was violated when he was placed in segregation without a notice or a hearing. The Supreme Court has held that HN2 a

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 8729    Page 7 of 12

Case 3:01-cv-01107-CFD    Document 172-3    Filed 11/30/2004    Page 7 of 12

state can, through the "repeated use of explicitly mandatory language," create for prisoners a protected liberty interest in remaining in the general prison population. Hewitt v. Helms, [*6] 459 U.S. 460, 469-72, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1982). Where that has happened, the state must provide due process before impinging on that interest. Id. In specifically analyzing the regulations governing Illinois prisons, the Seventh Circuit has held that HN3 no protected liberty interest is violated where an inmate is placed in administrative segregation. Pardo v. Hosier, 946 F.2d 1278 (7th Cir. 1991). However, Illinois regulations do provide prisoners a protected liberty interest in not being removed for disciplinary reasons. Gilbert v. Frazier, 931 F.2d 1581, 1582 (7th Cir. 1991). Consequently, the Seventh Circuit has held that a pre-deprivation notice and hearing is required before any disciplinary segregation, even of the shortest duration, is imposed. Id.

Defendants argue that this particular segregation concerning Martinez "appears to have been for administrative rather than disciplinary reasons." Defendants' Reply to Plaintiff's Memorandum of Law, p. 5. However, the facts recited by Martinez are consistent with his allegation that the segregation was disciplinary, and for the purposes of a motion to dismiss, we accept that allegation as true. Wilson [*7] v. Formigoni, 42 F.3d at 1062.

Defendants further argue that Cook County Jail had discretion to put Martinez in administrative segregation the moment he arrived, due to his status as a convict serving a sentence. Defendants' Amended Motion to Dismiss, p. 7. But HN4 a prisoner serving a sentence has the same right as a pretrial detainee not to be transferred for disciplinary purposes without notice and hearing. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Although plaintiff was serving a federal sentence, he was transferred for the purpose of prosecution on a state charge for which he had not yet been convicted. This suggests an interesting question as to whether the appropriate standard is that for a convicted prisoner, governed by the Eighth Amendment, or for a pretrial detainee, governed by due process under the Fourteenth Amendment. HN5 A pretrial detainee who is not yet convicted of a crime is not to be subjected to any punitive measure before his conviction. See, Swofford v. Mandrell, 969 F.2d 547, 549 (7th Cir. 1992), Lock v. Jenkins, 641 F.2d 488, 491, n.7 (7th Cir. 1981), even with notice and hearing.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*8]

**II. Substantive Due Process and Physical Restraints**

Plaintiff's second due process claim is closely related to his first. He claims that being placed in leg shackles every day for over three months without a legitimate penological justification violates his right to due process.

HN6 Freedom of bodily movement is a substantive right derived from the due process clause, and it can be violated when the degree or manner of physical restraint is unrelated to an appropriate exercise of judgment by a professional. Wells v. Franzen, 777 F.2d 1258, 1261 (7th Cir. 1985); See Youngberg v. Romeo, 457 U.S. 307, 321-23, 73 L. Ed. 2d 28, 102 S. Ct. 2452 (1981). "Due process requires that the nature and duration of the physical restraint bear some reasonable relation to the purpose for which it is prescribed." 777 F.2d at 1262; see also, Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995). The purpose for which such a stricture is imposed must be a "legitimate penological interest," and must operate neutrally. Turner v. Safley, 482 U.S. 78, 89-90, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1986).

Courts are cognizant of the fact that maintaining a controlled prison environment [*9] often requires the use of physical restraints. *HN7* Where an inmate is prone to violence or is suicidal, extraordinary restraint may be justified to prevent the prisoner from harming himself or others. Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995). Restraints are also acceptable where segregated inmates, who are often the most intractable prisoners, are given access to vulnerable areas of a correctional facility. See Knox v. McGinnis, 998 F.2d 1405, 1412 (7th Cir. 1993) (referring to Hanna v. Lane, 610 F. Supp. 32 (N.D. Ill. 1985): "On the whole, these decisions sanction use of restrictive mechanisms, including the black box, on special status prisoners when they are taken outside the prison or when they move inside the prison to particularly vulnerable areas such as the law library or visiting areas.")

Defendants assert that because plaintiff has a felony conviction and was awaiting trial on a murder charge, he is to be considered "dangerous." Applying physical restraints to a "dangerous" prisoner, they argue, serves a "legitimate penological interest."

*HN8* The government bears the burden of demonstrating a legitimate penological or medical reason for its use of shackles. [*10] Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995). This requires a showing that the decision to restrain the plaintiff was made by an "appropriate professional" employing his professional judgment. Youngberg v. Romeo, 457 U.S. 307, 324, 73 L. Ed. 2d 28, 102 S. Ct. 2452 (1981); Wells v. Franzen, 777 F.2d 1258, 1261-62 (7th Cir. 1985). Although courts will generally presume that such a decision is correct, liability may still be imposed if the decision was such a departure from accepted professional practices that it is clear the decision-maker did not use appropriate professional judgment. Youngberg, 457 U.S. at 323. Even if we were to draw the inference that Martinez was indeed "dangerous," n2 we could not conclude that his restraint must have been justified without further inquiry into the particular rationale behind this decision to place him in shackles.

---------------- Footnotes ----------------

n2 Even if plaintiff's claim could be defeated solely by a showing that he is "dangerous," drawing inferences from facts, even undisputed facts, that are not presented in the complaint is inappropriate in deciding a motion to dismiss. See Kunik v. Racine County, Wis., 946 F.2d 1574, 1579 (7th Cir. 1991).

------------ End Footnotes------------- [*11]

### III. Eighth Amendment and Physical Restraints

Plaintiff alleges in Count II of his complaint that the conditions of his confinement during the relevant period were in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff lists the conditions which he says constitute the violation: (1) for the first 26 days of his segregation, he was confined to his cell for 23 hours and wore handcuffs and shackles for the hour he was permitted out of his cell, and was permitted only one brief exercise period; (2) for the remainder of his time in segregation, he was locked out of his cell for at first five and subsequently twelve and a half hours a day, while wearing leg shackles; and (3) for two and a half months, plaintiff received only one hour of exercise per week.

*HN9* The Eighth Amendment prohibits punishments which involve the "unnecessary and wanton infliction of pain," or are grossly disproportionate to the severity of the crime. Rhodes v. Chapman, 452 U.S. 337, 346, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1980). This includes the conditions under which a prisoner is confined when, either alone or in combination, the

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 8729 Page 9 of 12

Case 3:01-cv-01107-CFD   Document 172-3   Filed 11/30/2004   Page 9 of 12

conditions deprive inmates [*12] of the "minimal civilized measure of life's necessities." Id. at 347; see also, Morissette v. Peters, 45 F.3d 1119, 1123 (7th Cir. 1995); French v. Owens, 777 F.2d 1250, 1252 (7th Cir. 1985).

HN10 To state an Eighth Amendment violation, plaintiff must allege (1) that objectively, the conditions were serious enough to be considered cruel and unusual, and (2) that subjectively, the defendants acted with a sufficiently culpable state of mind. McNeil v. Lane, 16 F.3d 123, 124 (7th Cir. 1994).

Defendants argue that the conditions applied to Martinez could not objectively be considered cruel and unusual punishment. Plaintiff argues that the combination of significant time in leg shackles, coupled with the meager amount of scheduled exercise is serious enough to raise Eighth Amendment concerns. The Supreme Court has said that HN11 "conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Wilson v. Seiter, 501 U.S. 294, 304, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1990); [*13] see also Lunsford v. Bennett, 17 F.3d 1574, 1580-81 (7th Cir. 1994).

HN12 Handcuffing, shackling, and other forms of physical restraint are not always unconstitutional -- they are sometimes necessary when dealing with inmates who are difficult to control. Bruscino v. Carlson, 854 F.2d 162, 163 (7th Cir. 1988); French v. Owens, 777 F.2d 1250, 1254 (7th Cir. 1985). Although restraints are permissible, unconscionable conditions of restraint are impermissible. Wells v. Franzen, 777 F.2d at 1264. Moreover, "where movement is denied and muscles are allowed to atrophy, the health of the individual is threatened and the state's constitutional obligation is compromised." French v. Owens, 777 F.2d at 1255. Consequently, the Eighth Amendment recognizes that there is a constitutional limitation on the degree to which an institution may deny a prisoner the ability to engage in physical activity.

Although plaintiff argues that there is a bright-line rule that prisoners are entitled to a certain minimum hours of exercise per week, the law is not that rigid. In Davenport v. DeRobertis, 844 F.2d 1310 (7th Cir. 1988), the Seventh Circuit upheld a district judge's ruling that segregation [*14] inmates at Stateville are entitled to five hours of exercise per week. The court cautioned, however, that this was not a constitutional minimum, and that less may be allowed depending on the circumstances. Id. at 1316. In instances where an inmate is denied exercise for a relatively brief period of time, such as 30 days or less, courts have been reluctant to say that the deprivation is of constitutional proportions. Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988). HN13 Courts have also refused to find an Eighth Amendment violation where an inmate has had significant freedom of movement and space within his unit or his cell to engage in exercise, even though he is denied access to a gym. Id.; Stewart v. McGinnis, 800 F. Supp. 604, 616 (N.D. Ill. 1992) (Shadur, J.); Pippins v. Adams County Jail, 851 F. Supp. 1228, 1232 (C.D. Ill. 1994) (Mills, J.).

Defendants assert that unless Martinez alleges that he experienced a serious health problem resulting from his lack of exercise, he has not stated an Eighth Amendment claim. This is not necessarily so. HN14 When denial of exercise is combined with other serious deprivations, it may be deemed to rise to the level of cruel and [*15] unusual punishment despite the lack of serious physical harm. Stewart v. McGinnis, 800 F. Supp. 604, 616 (citing Wilson v. Seiter, 501 U.S. 294, 304, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1990)). Indeed, the Seventh Circuit's analysis in Davenport v. DeRobertis, 844 F.2d 1310 (7th Cir. 1988), focused more on the psychological effects of prolonged solitary confinement when paired with lack of exercise than it did on the actual physical effects of idleness on the prisoners.

In the instant case, not only was Martinez given minimal time to exercise, he was forced to

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 8729
Case 3:01-cv-01107-CFD    Document 172-8    Filed 11/30/2004    Page 10 of 12
Page 10 of 12

wear leg shackles as well. Even more disturbing, the amount of time he was forced to wear shackles was progressively increased from one hour a day, to five hours a day, and finally to twelve and a half hours a day. It is obviously impossible for a prisoner to engage in any meaningful physical activity while his limbs are restrained. Moreover, Martinez has alleged that the amount of time spent in the shackles caused significant swelling and soreness in his legs, further limiting his ability to engage in physical activity even when the shackles were removed. We believe that lack of exercise, combined with prolonged [*16] confinement in leg shackles can create a serious enough deprivation of physical activity that it could be found to constitute cruel and unusual punishment.

Defendants also argue that plaintiff has not alleged the subjective prong of the Eighth Amendment analysis -- that the defendants acted with a sufficiently culpable state of mind. HN15 In cases questioning the conditions of a prisoner's confinement, the appropriate state of mind is "deliberate indifference." Farmer v. Brennan, U.S. , , 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994). "Deliberate indifference" is not mere negligence, or even gross negligence. King v. Fairman, 997 F.2d 259, 261 (7th Cir. 1993). Rather, deliberate indifference requires a plaintiff to show that prison officials either intended for the plaintiff to be injured or knowingly disregarded an excessive threat to the inmate's health or safety. Farmer v. Brennan, 114 S. Ct. at 1979; Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995); McGill v. Duckworth, 944 F.2d 344, 347-48 (7th Cir. 1991). The Supreme Court has held that this is a subjective test. Farmer v. Brennan, 114 S. Ct. at 1979. "The official must [*17] both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

In this instance, plaintiff has alleged that all of the defendants (with the exception of Michael Sheahan) were aware of the conditions of his confinement. Indeed, each defendant either ordered or executed the order that he be confined under these conditions. Defendants Waznis, Pinson and Carter had the opportunity to observe Martinez' confinement conditions when they visited his cell. In the case of defendant Fairman, plaintiff alleges he sent two grievances complaining of his plight, which were ignored. Each defendant (except Sheahan) is alleged to have been aware of the minimal exercise plaintiff received and the shackles he was forced to wear. None of them did anything about it. This could be found to constitute deliberate indifference.

### IV. Section 1983 and Capacity

HN16 Although the Constitution is the source of substantive federal rights, it is 42 U.S.C. § 1983 which provides the framework under which Martinez may seek compensation for his injuries. See Albright v. Oliver, U.S. [*18] , 114 S. Ct. 807, 811, 127 L. Ed. 2d 114 (1994); Baker v. McCollan, 443 U.S. 137, 144, n.3, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979). Martinez has sued all of the defendants under this statute, both in their individual capacities and in their official capacities.

HN17 Generally, a defendant must have some direct personal responsibility for the deprivation of constitutional right for individual liability to attach under § 1983. Maltby v. Winston, 36 F.3d 548, 559 (7th Cir. 1994); Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir. 1981). Respondeat superior may not be used as a theory of liability under § 1983. Monell v. Dept. of Social Services, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978); Kernats v. O'Sullivan, 35 F.3d 1171, 1182 (7th Cir. 1994); Del Raine v. Williford, 32 F.3d 1024, 1047 (7th Cir. 1994).

Defendants argue that plaintiff has not alleged individual involvement on the part of any of the defendants. As to defendant Michael Sheahan, we agree. Aside from his mention in the caption of this complaint, plaintiff has alleged no participation by Sheahan in any of the events surrounding his segregation and the conditions of his confinement. Consequently,

**[*19]** the claim against Sheahan is dismissed.

The other defendants, however, are all alleged to have had personal knowledge and involvement in the events. *HN18* "An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation occurs at her direction or with her knowledge and consent." Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982); see also, Maltby v. Winston, 36 F.3d 548, 559 (7th Cir. 1994); Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986). *HN19* Respondeat superior is an impermissible theory of liability under § 1983 because it relies upon negligent supervision. Rascon v. Hardiman, 803 F.2d at 273-74. But Martinez' claim is not that he was placed in segregation and in leg shackles by others who were negligently supervised by the defendants. His claim as to most of the defendants is that they explicitly instructed their subordinates to carry out these actions against him. n3 This is personal involvement which could justify a finding of individual liability under § 1983.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Defendant Waznis and Pinson pose a slightly more difficult problem, as they were both responsible for executing orders allegedly given by others. We do find, however, enough personal participation in the events by these two defendants to survive a motion to dismiss. Aside from the somewhat distasteful idea of allowing participants in a constitutional deprivation to escape liability because they were "just following orders," *HN20* there is some indication that officials who act in facilitation of a constitutional tort may be held liable. Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988); see also, Yang v. Hardin, 37 F.3d 282, 284-85 (7th Cir. 1994) (police officer who merely stood by as another officer committed a constitutional tort is liable for his own failure to act on plaintiff's behalf).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*20]**

Defendants also claim that plaintiff has failed to allege facts that would support a suit against the defendants in their official capacities. *HN21* Generally, a suit against a person in his or her official capacity is to be treated as a suit against the state or municipal entity by which the named individual is employed. Kentucky v. Graham, 473 U.S. 159, 166, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1984). In order for a municipal entity to be held liable under § 1983 for acts committed by its employees, a plaintiff must prove that his injury was caused by a policy or custom of the entity. Monell v. New York City Dept. of Soc. Services, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1977). A single instance of deprivation can be caused by government policy if the decision in that instance was "properly made by that government's authorized decisionmakers." Pembaur v. Cincinnati, 475 U.S. 469, 481, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1985).

The Seventh Circuit has outlined specifically what showing must be made by a plaintiff in an official capacity suit in order to survive a motion to dismiss:

> The caselaw has identified *HN22* three instances in which a municipality can be **[*21]** said to have violated the rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation, (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law,'" or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority."

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 8729

Case 3:01-cv-01107-CFD   Document 172-8   Filed 11/30/2004   Page 12  Page 12 of 12

<u>Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 735 (7th Cir. 1994)</u> (citations omitted).

In this instance, plaintiff does allege a policy and practice on the part of the defendants, but these allegations amount to boilerplate assertions. There are no facts from which we could infer that there was a written policy or a custom with the "force of law" that prisoners be placed in disciplinary segregation without a hearing or placed in leg shackles and solitary confinement. However, plaintiff does allege the direct participation of J.W. Fairman, Jr., the director of the Cook County Department of Corrections and an individual with "final policymaking authority" with respect to the operations at the Cook County Jail. This is sufficient [*22] to state a cause of action against Fairman in his official capacity. The official capacity claims as to the rest of the defendants, however, will be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. All claims against defendant Sheahan are dismissed. All claims against defendants Carter, Caldwell, Waznis and Pinson in their official capacities are also dismissed. The motion to dismiss is denied as to the claims against the remaining defendants in their individual capacities and the claim against defendant Fairman in his official capacity.

DATED: June 21, 1995

ENTER:

John F. Grady, United States District Judge

Service: **Get by LEXSEE®**
Citation: **1995 U.S. Dist. LEXIS 8729**
View: Full
Date/Time: Monday, November 22, 2004 - 3:54 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
◐ - Citing Refs. With Analysis Available
❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.