UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LLOYD GEORGE MORGAN, JR. | : | PRISONER |
| | : | CIVIL NO. 3:01CV1107 (CFD) (WIG) |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| JOHN J. ARMSTRONG, | : | |
| PETER M. MATOS, | : | |
| LARRY J. MYERS, | : | |
| THOMAS COATES, | : | |
| MICHAEL P. LAJOIE, | : | |
| CHRISTINE M. WHIDDEN, | : | JURY DEMAND |
| DR. PAUL M. CHAPLIN, | : | |
| DR. RONALD HENSLEY, and | : | |
| THOMAS LATIER, | : | |
|    sued in their individual | : | |
|    and official capacities | : | |
| | : | |
| Defendants | : | NOVEMBER 29, 2004 |

## SECOND AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1. This is a civil rights action filed by Lloyd George Morgan, Jr., a Connecticut inmate, for monetary damages and declaratory relief under 42 U.S.C. § 1983. The plaintiff's right to be free from cruel and unusual punishment was violated when he was denied the opportunity to engage in any type of meaningful exercise. In addition, the

1

plaintiff's right to privacy was violated when personal mental health information was disseminated to other inmates and to non-medical prison personnel.

2. The plaintiff contends that the deprivations and violations of his constitutional rights were carried out pursuant to the rules, regulations, customs, policies and practices of the defendants in their capacity as employees of the Connecticut Department of Correction or Correctional Managed Health Care and that the named defendants, acting under color of state law, knowingly caused the plaintiff to be deprived of his federal constitutional rights.

3. The plaintiff requests this court declare that the acts and/or omissions of the defendants were unconstitutional under the United States Constitution and, by an award of compensatory and punitive damages, compensate him for the violations of his constitutional rights and deter the defendants from further participation in such unconstitutional acts and/or omissions.

## JURISDICTION

4. This action is brought to remedy the deprivation, under color of state law, of rights guaranteed by the Eighth, Ninth and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a) (3) and 42 U.S.C. § 1983.

5. Jurisdiction to provide declaratory relief is conferred on this court by 28 U.S.C. § 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure.

## **PARTIES**

6. The plaintiff, Lloyd George Morgan, Jr., is a citizen of Connecticut. He is sentenced to the custody of the Connecticut Department of Correction (hereinafter "DOC") and currently is housed at Cheshire Correctional Institution in Cheshire, Connecticut. His inmate number is 117796. At the time of the incidents that gave rise to this complaint, the plaintiff was housed at Northern Correctional Institution (hereinafter "Northern") in Somers, Connecticut.

7. Defendant John J. Armstrong, at all times relevant to this complaint, was the commissioner of the DOC. As commissioner, he was responsible for administering and overseeing the rules, regulations, customs, practices and policies of the DOC. He is sued in his individual and official capacities.

8. Defendant Peter M. Matos, at all times relevant to this complaint, was a deputy commissioner of the DOC. He is sued in his individual and official capacities.

9. Defendant Larry J. Myers, at all times relevant to this complaint, was the warden at Northern. He is sued in his individual and official capacities.

10. Defendant Thomas Coates, at all times relevant to this complaint, was employed by the DOC as a correction officer holding the rank of administrative major at Northern. He is sued in his individual and official capacities.

11. Defendant Michael P. LaJoie, at all times relevant to this complaint, was employed by the DOC as a correction officer holding the rank of major of operations at Northern. He is sued in his individual and official capacities.

12. Defendant Christine M. Whidden, at all times relevant to this complaint, was employed by the DOC as a correction officer holding the rank of major of programs and treatment at Northern. She is sued in her individual and official capacities.

13. Defendant Dr. Paul M. Chaplin, at all times relevant to this complaint, was employed as a psychologist by Correctional Managed Health Care (hereinafter "CMHC"). CMHC, which is part of the University of Connecticut Health Center, has a contract with the DOC to provide medical and mental health services to inmates incarcerated in Connecticut's prisons. He is sued in his individual and official capacities.

14. Defendant Dr. Ronald Hensley, at all times relevant to this complaint, was employed as a psychiatrist by CMHC. He is sued in his individual and official capacities.

15. Defendant Thomas Latier, at all times relevant to this complaint, was employed by CMHC as a mental health worker at Northern. He is sued in his individual and official capacities.

### FIRST CAUSE OF ACTION
**(Cruel and unusual punishment)**

16. The plaintiff re-alleges and incorporates by reference paragraphs 1 through 15 herein.

17. The plaintiff currently is serving a 20-year sentence. The sentence will end on or about January 4, 2020. When his current sentence ends, the plaintiff will begin serving a consecutive four-year sentence. According to the DOC's central records office, the consecutive sentence will end in 2023, taking into account sentence credits that the

plaintiff is expected to earn.

18. The plaintiff is overweight. He suffers from high blood pressure and diabetes.

19. On or about March 30, 2001, the plaintiff was transferred from MacDougall Correctional Institution in Suffield, Connecticut, to the Administrative Segregation program at Northern.

20. Northern is a Level 5 "Supermax" prison, the most restrictive form of confinement in the Connecticut prison system.

21. Northern's Administrative Segregation program consists of three phases. When he was transferred to Northern on or about March 30, 2001, the plaintiff was placed into Phase One of the program.

22. The plaintiff remained in Phase One for approximately two years.

23. In Phase One of Administrative Segregation, inmates are locked in their cells for 24 hours a day, except for five one-hour recreation periods each week.

24. During his recreation periods in Phase One, the plaintiff was handcuffed behind his back and his ankles were shackled. The hand and ankle restraints were connected by a heavy metal tether chain with a heavy padlock.

25. While restrained in this manner, the plaintiff was locked in a cage in the prison's recreation yard. Usually, the plaintiff was alone in the cage. On occasion, he and his cell mate were in the cage at the same time.

26. The cage was equipped with a "trap" that would allow correction officers to remove some or all of the plaintiff's restraints after they locked him in the cage. But the

"trap" was not utilized, and the plaintiff remained fully restrained while in the cage.

27. While restrained in this manner, the plaintiff was unable to engage in any meaningful exercise.

28. The restraints prevented the plaintiff from engaging in any type of physical activity, other than slowly walking around the cage.

29. The plaintiff's inability to engage in any meaningful exercise continued for approximately two years while he remained in Phase One.

30. The plaintiff's inability to exercise exacerbated his problems with obesity, high blood pressure and diabetes.

31. Those afflicted with diabetes are prone to circulatory problems.

32. The handcuffs and ankle shackles sometimes were applied too tightly, increasing the plaintiff's risk of circulatory problems.

33. On May 4, 2001, the plaintiff's handcuffs were applied too tightly.

34. While in the recreation cage on that day, the plaintiff decided to sit down in an attempt to relieve the pressure on his wrists caused by the heavy restraints.

35. While moving to the sitting position or while attempting to stand up again, the plaintiff became light-headed and lost his balance. The restraints left him powerless to break his fall.

36. The fall resulted in injuries to the plaintiff's head, right shoulder and right knee. The nurse who examined the plaintiff after the fall noted in his medical records that he was at "high risk for injury."

37. The rule, regulation, custom, policy or practice under which the plaintiff was required to wear full restraints during recreation periods deprived the plaintiff of the basic human need for exercise, in violation of rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

38. Defendants Armstrong and Matos created and/or allowed the continuation of the rule, regulation, custom, policy or practice that required the plaintiff to be in full restraints during recreation periods.

39. As the highest-ranking DOC officials at Northern, defendants Myers, Coates, LaJoie and Whidden created, allowed the continuation of and/or enforced the rule, regulation, custom, policy or practice that required the plaintiff to be in full restraints during recreation periods.

40. The plaintiff complained about being forced to wear full restraints during recreation.

41. On or about May 1, 2001, the plaintiff wrote a letter of complaint to defendant Coates. In a reply dated May 7, 2001, defendant Coates said "Northern CI has established recreation policies to address security concerns and meet the statutory requirements."

42. The plaintiff appealed to defendant Myers, who replied that defendant Coates' response was appropriate

43. Defendants Armstrong and Matos deprived the plaintiff of any opportunity for exercise, a basic human need, by creating and/or allowing the continuation of the rule, regulation, custom, policy or practice that required the plaintiff to be in full restraints

7

during recreation periods in Phase One.

44. Defendants Myers, Coates, LaJoie and Whidden deprived the plaintiff of any opportunity for exercise, a basic human need, by creating, allowing the continuation of and/or enforcing the rule, regulation, custom, practice or policy that required the plaintiff to be in full restraints during recreation periods in Phase One.

45. Defendants Armstrong, Matos, Myers, Coates, LaJoie and Whidden demonstrated deliberate indifference to the basic human needs of inmates in general and to the plaintiff in particular.

46. The actions and/or omissions of defendants Armstrong, Matos, Myers, Coates, LaJoie and Whidden, as set forth above, deprived the plaintiff of human and dignified treatment, posed an unreasonable threat to the plaintiff's physical and mental health and violated the plaintiff's right to be free from cruel and unusual punishment, as secured by the Eighth and Fourteenth Amendments to the United States Constitution.

47. The defendants knew or should have known that their actions and/or omissions in creating, allowing the continuation of and/or enforcing the recreation policy constituted a deliberate deprivation and/or indifference to the constitutional and civil rights of the plaintiff.

48. The defendants knew or should have known that the plaintiff's obesity, high blood pressure, diabetes, circulatory problems and other medical problems exposed him to a high risk of injury.

## SECOND CAUSE OF ACTION
### (Violation of right to privacy)

49. The plaintiff re-alleges and incorporates by reference paragraphs 1 through 24 herein.

50. The plaintiff has a history of mental health problems dating back to childhood.

51. During a previous period of incarceration, the plaintiff was brutally attacked by another inmate.

52. The attack exacerbated the plaintiff's mental health problems and left the plaintiff in constant fear of being assaulted by other inmates.

53. While at Northern, the plaintiff made numerous requests for mental health treatment. He also made numerous requests to be housed alone in a cell because of his fear of attacks by other inmates.

54. The system of providing mental health treatment to inmates at Northern consisted of mental health workers making rounds to discuss inmates' mental health issues with them at the doors of their cells.

55. In order to request mental health treatment while he was at Northern during the period from March 30 2001, through November 7, 2003, the plaintiff was required to discuss personal and confidential mental health issues with defendants Chaplin, Hensley and Latier at the door of his cell. When he did so, other inmates and non-medical prison personnel were able to hear the plaintiff's personal and confidential mental health issues.

56. Defendants Chaplin, Hensley and Latier discussed the plaintiff's personal and confidential mental health issues at the door of the plaintiff's cell, within earshot of other inmates and non-medical prison staff.

57. Other inmates, who overheard the discussions, taunted the plaintiff in regard to what they heard, resulting in humiliation and embarrassment to the plaintiff.

58. The conversations at the door of the plaintiff's cell resulted in dissemination of the plaintiff's personal and confidential mental health information to other inmates and non-medical prison staff.

59. The actions of defendants Chaplin, Hensley and Latier, in requiring the plaintiff to discuss personal and confidential mental health issues at the door of his cell and in disseminating the plaintiff's personal and confidential mental health information to other inmates and non-medical prison staff, violated the plaintiff's right to privacy, as secured by the Ninth and Fourteenth Amendments and other provisions of the United States Constitution.

## ADMINISTRATIVE REMEDIES

60. The plaintiff exhausted available administrative remedies.

## DEMAND FOR JURY TRIAL

This complaint contains a Jury Demand pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure and the plaintiff's rights secured under the Seventh Amendment to the United States Constitution. The plaintiff respectfully demands a trial by jury on all triable issues herein.

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff claims:

1. Declaratory relief that the defendants' acts, policies and practices herein described and complained of violated the plaintiff's rights under the United States Constitution;

2. Compensatory damages in an amount as proven at trial;

3. Nominal damages;

4. Punitive damages against each defendant in the amount of one hundred thousand dollars ($100,000.00);

5. The costs of this action, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

6. Such other and further relief as the court deems to be appropriate and just.

THE PLAINTIFF

Lloyd George Morgan, Jr., Pro Se
Inmate #117796
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT 06410

11

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the **plaintiff in the above action**, that he has read the above complaint and that the information in the complaint is true and correct.

Executed at Cheshire, Connecticut, on this 29 day of November, 2004.

*Lloyd George Morgan, JR*
Lloyd George Morgan, Jr.

Although not appearing herein, the undersigned
assisted in the preparation of this complaint:

*Richard P. Cahill*
Richard P. Cahill, Esq.
Schulman & Associates
Inmates' Legal Assistance Program
78 Oak Street, P.O. Box 260237
Hartford, CT 06126-0237
Tel (860) 246-1118
Fax: (860) 246-1119

**CERTIFICATION**

I hereby certify that a copy hereof was mailed, postage prepaid, on this 30th day of November, 2004, to the following counsel and pro se parties of record:

Lynn D. Wittenbrink, Esq.
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105

Annette M. Lamoreaux, Esq.
Connecticut Civil Liberties Union Foundation
32 Grand Street
Hartford, CT 06106

                                                                                                     Lloyd George Morgan, Jr.