UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LLOYD GEORGE MORGAN | : | PRISONER<br>CIVIL NO. 3:01CV1107(CFD) |
| v. | : | |
| JOHN ROWLAND, ET AL. | : | AUGUST 17, 2005 |

**AFFIDAVIT OF NURSE NANCY HILL**

I am over the age of 18 and understand and believe in the obligations of an oath:

1. I am a Registered Nurse holding the position of Correctional Head Nurse at Northern Correctional Institution (hereinafter 'Northern'). I have held this position for nine years in November of 2005. I have been a Registered Nurse since 1994.

2. There is a Medical Incident Report and a nurse's note for the plaintiff for that date completed by myself in the medical unit. **Ex. J, Health Records, p. 1163.**

3. The plaintiff indicated that he had felt light-headed, and I recorded:, "Reports feeling light-headed—had to sit down bumped head hurt R [right] shoulder and R knee. Hx [history] NIDDM [non-insulin dependent diabetes] Hx [history] HTN [hypertension]—I/M [inmate] out a REC yard." **Exs. J_ 1163.**

4. He also claimed he slid down the wall and hurt the right side of his body trying to get up. **Exs. J 1162.** While the diagnosis on the Medical Incident Report states, "High Risk for Injury" this diagnosis was made *after* the plaintiff presented with a bump on his head and as a non-insulin dependent diabetic, and in no way meant that custodial staff or anyone else within the Department should have prevented the plaintiff from injuring himself or attending recreation.

5. That the plaintiff was at High Risk for Injury was my professional nursing diagnosis and it meant that the plaintiff's blood pressure was elevated and that his blood sugar should be checked. The phrase "high risk for injury" did not mean anything about the fact that plaintiff now claims to have fallen in the recreation yard.

5. My medical plan based on the diagnosis was for the plaintiff to be assessed by A.P.R.N. for front-cuff status to address the plaintiff's claims that he should be cuffed in front. **Ex. 1162.**

6. If the plaintiff had complained that his handcuffs were too tight and that he was sitting down in the recreation yard in an effort to ease pressure on his wrists I would have indicated that in the Medical Incident Report, and I made no such indication. **Ex. J 1163.** Had the plaintiff complained of soreness to his wrists, I would have indicated that in the Medical Incident Report.

7. There is no indication that the plaintiff complained of pain or pressure or anything having to do his wrists. **Ex. J 1163.** The plaintiff received ice for his shoulder and his head and was told that he should sign-up for sick call for any further problems. **Ex. J 1163.**

8. I tested the plaintiff's blood sugar and at this time it was within normal limits. **Ex. J 1163.** At this time, Nurse Hill, the nurse on duty, indicated that the plaintiff would be followed up through a doctor or APRN visit as the plaintiff was at this point indicating that he thought he should be hand-cuffed in the front for his recreation periods. **Ex. J 1162.**

9. The plaintiff's heart at this time was fine, and his elevated blood pressure was not so high as to typically cause light-headedness. **Ex. J 1162.**

2

10. Four days later the plaintiff claimed to have a dizzy episode requiring an Emergency Sick Call visit again, and I was on duty again. **Ex. J 1161.** I noted at this time that the plaintiff had "No S/S [signs or symptoms] of hypoglycemia [low blood sugar]." **Ex. J 1161;** I further noted that the patient would not allow a "FS" [full screening secondary] to an officer in the screening room and that the plaintiff was "insisting on discussing other medical issues at this time." **Ex. J 1161.**

11. I instructed the plaintiff that "E.S.C. [emergency sick call] was for emergent reasons only." **Ex. J 1161.** I did not refuse the plaintiff all one-to-one interface with medical staff, but rather, noted that the plan discussed with the inmate was "I/M [inmate] to use regular RN sick call procedure for nurse/pt [patient] 1:1 consult R/T [related to] health issues/concerns." **Ex. J 1161.**

12. On this date the plaintiff refused to have his blood sugar monitored. **Ex. J 1161.** On May 8, 2004, the plaintiff also claimed he had chest pains, but I reviewed his history and it was clear the plaintiff had recently had a normal E.K.G. and had previously reported that his chest pains stopped when medical staff was present. **Ex. J 1162.**

13. The medical records for the time period in question show that the plaintiff was seen in the medical unit nearly weekly, all without any adverse consequences to his health from recreating in restraints.

14. When I toured the units at Northern, I noted several times that the plaintiff was often eating junk food containing high fat and high sugar content purchased at commissary. I would verbally instruct him to stop eating such foods.

15. The plaintiff eating and medical behavior was non-compliant with regard to controlling his health issues, and his blood sugar was extremely high on several occasions in 1999, before his admission to Northern in March of 2000. **Ex. J 1123.**

16. In September of 2001, the plaintiff indicated to medical staff that his shoulder was hurting due to injury from another inmate. **Ex. J. 1151.**

17. The plaintiff has a long history of chronic obesity which did not get worse during the time he was at Northern in Phase I of Administrative Segregation. For example, on January 7, 2000, over a year before entering Northern, the plaintiff's weight was 230 pounds. **Ex. J 941.** One month later, the plaintiff was the same weight he was at Northern, 247 pounds. **Ex. J 940.**

18. The plaintiff had previously complained of an injury to his right shoulder in October of 1999. **Ex. J 954, 946.** The plaintiff claimed that his cuffs were too tight, and that he injured his right shoulder when his shoulder hit a steel door in a truck. **Ex. J 954, 946.** At this point, plaintiff claimed, "The sheriffs put the cuffs on too tight and I hurt my shoulder in the van on the way." **Ex. J 954, 946.**

19. The plaintiff did not mention this previous injury when he came to report his alleged incident in the recreation yard on May 4, 2001, a month after he arrived at Northern.

I hereby swear and affirm that the foregoing is true and accurate to the best of my knowledge and belief.

_____
Nancy E. Hill

Subscribed and sworn to before me this 17th day of August, 2005.

_____
Lynn D. Wittenbrink
Assistant Attorney General