Exhibit B-1

DEC 25 2003



# Inmate Grievance Form B, Levels 2 and 3
RECEIVED  CN 9601/2
Rev. 10/07/02
## Connecticut Department of Correction

| Inmate Name MR. LLOYD GEORGE MORGAN JR | Inmate no. 117796 |
|---|---|

| Facility CHESHIRE C.I. | Housing unit RHU EB1-13 | Date 12-10-03 |
|---|---|---|

☐ Line grievance   ☐ Line emergency   ☒ Health grievance   ☐ Health emergency

| IGP no. MI-25-386-03 | T no. |
|---|---|

Use this form to appeal a Level 1 decision. Grievance Form A (for Level 1) and any attachments must accompany this form; no review will be undertaken if they do not accompany this form. Your appeal must be filed within 5 days of the Level 1 response; deposit it in the box for inmate grievances.

Appeal. I am appealing the Level 1 decision because: The Compromise offers No effective Remedy single cell (MHU) issues is Not a custody issue. I am intitled to a effective Adequate mental HEALTH treatment plan and a mental HEALTH single cell status for said Reasons in GRIEVANCE. I seek urgent Remedy.

| Inmate signature MR. Lloyd George MORGAN JR | Date 12-10-03 |
|---|---|

## FOR OFFICIAL USE ONLY – LEVEL 2 REVIEW

| Date received 1/6/04 | Disposition DENIED | Date of disposition 1/6/04 |
|---|---|---|

Reasons You have been seen by Mental health and a decision Not to provide a single cell has been Made. Treatment Decisions are not Grievable.

Level 2 reviewer R. Newbury, HSA   R. Newbury

☐ This grievance may be appealed within 5 days to Level 3

☒ This grievance may not be appealed to Level 3 (see A.D. 9.6, Section 17)

Appeal. I am appealing the Level 2 decision because:

| Inmate signature | Date |
|---|---|

### Deposit your appeal in the box for inmate grievances

## FOR OFFICIAL USE ONLY – LEVEL 3 REVIEW

| Date received | Disposition | Date of disposition |
|---|---|---|

Reasons

Level 3 reviewer

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LLOYD GEORGE MORGAN, JR. | : | PRISIONER |
| VS. | : | NO. 3:01CV1107(CFD)(WIG) |
| | : | |
| JOHN J. ARMSTRONG, ET AL. | : | OCTOBER 18, 2006 |

## ANSWER, AFFIRMATIVE DEFENSES AND
## SET-OFF TO SECOND AMENDED COMPLAINT

The defendants in the above-captioned matter answer the plaintiff's Second Amended Complaint in correspondingly numbered paragraphs.

1.    Denied.

2.    The defendants admit that the plaintiff makes contends certain deprivations and violations of his constitutional rights, but denies any such deprivations or violations.

3.    The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

4.    Denied.

5.    The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

6-10.    Admitted.

11.    The defendant Michael Lajoie admits that at times relevant to this complaint he was the correctional Major of Operations at Northern Correctional Institution and that he is sued in his individual and official capacities.  As to the remainder of allegations contained in this paragraph, the defendant is without sufficient information upon which to form a belief and therefore leaves the plaintiff to his proof.

12.     The defendant Christine Whidden admits that at times relevant to this complaint she was the correctional Major of Programs and Treatment at Northern Correctional Institution and that she is sued in his individual and official capacities. As to the remainder of allegations contained in this paragraph, the defendant is without sufficient information upon which to form a belief and therefore leaves the plaintiff to his proof.

13-15.     Admitted.

16.     The defendants reincorporate their responses to previous numbered paragraphs.

17-18.     The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

19.     Admitted.

20.     Denied.

21.     Admitted.

22.     Admitted.

23.     Denied.

24.     Denied.

25.     The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

26.     Admitted.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.    The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

32.    The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

33.    The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

34.    Denied.

35.    Denied.

36.    The first sentence is denied.  The second sentence is admitted.

37.    Denied.

38.    Admitted.

39.    The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

40.    The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

41.    Admitted.

42.    The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

43-48.    Denied.

49.    The defendants reincorporate their responses to previous numbered paragraphs.

50.    The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

51-52.   The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

53.   The defendants admit that while at Northern, the plaintiff made numerous requests for mental health treatment and for a single cell. As to the remainder of allegations contained in this paragraph, the defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

54.   Denied.

55.   Denied.

56-57.   The defendants are without sufficient information upon which to form a belief and therefore leave the plaintiff to his proof.

58-60.   Denied.

4

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The plaintiff fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act.

### THIRD AFFIRMATIVE DEFENSE

Each and every defendant in this action is entitled to qualified immunity.

### FOURTH AFFIRMATIVE DEFENSE

The Prison Litigation Reform Act prohibits plaintiff from recovering as to some of his allegations as he failed to allege a physical injury.

### FIFTH ADMINISTRATIVE DIRECTIVE

The Eleventh Amendment provides immunity.

### SIXTH AFFIRMATIVE DEFENSE

The plaintiff's claims are precluded by Conn. Gen. Stat. §§ 4-141 through 4-164 and § 4-165.

### SEVENTH AFFIRMATIVE DEFENSE

The defendants do not have sufficient personal involvement in any constitutional violations alleged.

## DEFENDANTS' CLAIM FOR SET-OFF

Should the plaintiff be awarded any damages as a result of this action, however unlikely and unjust, the State is entitled to the recoupment of any monies paid by the State on behalf of the plaintiff or any dependents, including but not limited to the costs of incarceration both currently owed and anticipated for the remainder of his sentence(s).

DEFENDANTS,
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Lynn D. Wittenbrink
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar No. ct08575
Telephone No.: (860) 808-5450
Fax No.: (860) 808-5591
Email: lynn.wittenbrink@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following, first-class postage prepaid on this 18th day of October, 2005:

Lloyd George Morgan, Inmate No. 117796
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT  06410

Annette M. Lamoreaux
Connecticut Civil Liberties Union
32 Grand Street
Hartford CT 06106

_____
Lynn D. Wittenbrink
Assistant Attorney General

6

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| LLOYD D. GEORGE MORGAN, JR. | : | CIVIL NO. — |
|  | : | 3:01CV1107 (WIG)(CFD) |
| Plaintiffs, | : | |
|  | : | |
| v. | : | |
|  | : | |
| GOVERNOR JOHN G. ROWLAND, et al. | : | |
|  | : | June 27, 2003 |
| Defendant. | : | |

## BRIEF OF AMICUS CURIAE
## CONNECTICUT CIVIL LIBERITES UNION FOUDATION

### Summary of Facts & Procedure

On June 14, 2001, Plaintiff Lloyd D. George Morgan, Jr. filed a complaint, pro se, under several statutes, including 42 U.S.C. §1983, alleging, *inter alia*, that Northern Correctional Institution's ["NCI"] policy of keeping inmates in full restraints during the one-hour per day recreation period constitutes a violation if his Eighth and Fourteenth Amendment rights under the United States Constitution. An Amended Complaint was filed on June 6, 2002. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, as well as attorney's fees.

Since April 2001, plaintiff has been incarcerated at NCI under the Department of Correction (DOC) classification status of Administrative Segregation Phase One ("Phase One"). Based on the claims in plaintiff's Amended Complaint, all Phase One prisoners are locked in their cells for a period of 24 hours daily, except for five hours per week (one hour per day, Monday through Friday) of out-of-cell recreation. During this hour, plaintiff is

placed in a small yard that is surrounded by concrete walls and caged at the top. Throughout this period, plaintiff is forced to wear handcuffs behind his back and ankle shackles. These two restraints are connected by a heavy tether chain with a lock. In this condition plaintiff is unable to do pushups, sit-ups, jumping jacks or run in place. Plaintiff's lack of exercise is exacerbated by the fact that he is overweight and suffers from high blood pressure and diabetes. (See Amended Complaint at ¶¶ 49-52).

Amicus curiae Connecticut Civil Liberties Union Foundation (CCLUF) filed its "Request For Leave to File Amicus Brief" on the constitutionality of NCI's prisoner exercise policy, on April 11, 2003, which motion was granted by this Court on June 14, 2003. [1]

## Summary of Argument

The right to exercise is a clearly established right under the Eighth Amendment. NCI's policy of forcing plaintiff to wear full restraints – including handcuffs behind his back, ankle shackles, and a metal tether connecting the two – during his daily one hour "recreation period" effectively denies him the opportunity to engage in any exercise whatsoever. While wearing full restraints in a small concrete yard plaintiff is unable to engage in even the most basic forms of exercise, including walking. This deprivation of exercise – a basic human need – constitutes a violation of plaintiff's Eighth Amendment right to remain free from cruel and unusual punishment. Defendants are not entitled to qualified immunity because the right to exercise is clearly established under the Eighth Amendment.

---

[1] Amicus CCLUF is submitting this amicus brief solely on the issue of prison exercise; CCLUF's failure to address other issues in Mr. Morgan's case should not in any way be interpreted as reflecting the merits of these other claims, which have not been specifically reviewed by CCLUF.

2

## I. The Right to Exercise is Clearly Established under the Eighth Amendment

By failing to provide prisoners with an opportunity to engage in even the most basic forms of exercise, defendants have violated plaintiff's right to remain free from cruel and unusual punishment. In order to prevail on an Eight Amendment claim, the plaintiff must satisfy both an objective element and a subjective element. See *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). To satisfy the objective element, the plaintiff must prove a sufficiently serious deprivation of a basic human need. See *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991); *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985). The subjective element requires a plaintiff to show that the defendant acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In cases involving prison conditions, that state of mind is one of "deliberate indifference." *Id.* By forcing plaintiff to wear full restraints during his one hour per day exercise period, defendants have violated plaintiff's right to exercise, which is clearly established under the Eighth Amendment.

### A. The denial of the opportunity to exercise constitutes a serious deprivation of a basic human need

With respect to the objective element, it has been clearly established that exercise is one of the most basic human needs that prison officials must provide for under the Eighth Amendment. See *Wilson v. Seiter*, 501 U.S. at 304-5; *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996). In the Second Circuit, one hour per day of exercise in a suitable area -- such as "a small, enclosed yard, open to the sky" -- has been found to satisfy the requirements of the Eighth Amendment. *Sostre v. McGinnis*, 442 F.2d 178, 186 (2d Cir. 1971). While the Court has not explicitly set a constitutional minimum standard, the Second Circuit has since made it clear that "some opportunity for exercise must be afforded to prisoners." *Anderson v.*

3

*Coughlin,* 757 F.2d at 35. This right has been found to include some out-of-cell exercise. *Williams v. Goord,* 142 F. Supp.2d 416, 428-29 (S.D.N.Y. 2001), citing *Williams v. Greifinger,* 97 F.3d at 704 (relying on the uniform conclusions of the other circuits "that the Eighth Amendment requires that prison inmates be allowed some out-of-cell exercise") (citations omitted). Other courts have stressed the importance of regular outdoor exercise to the psychological and physical well-being of inmates. See *Walker v. Mitzes,* 771 F.2d 920, 927-28 (6th Cir. 1985); *Ruiz v. Estelle,* 679 F.2d 1115, 1152 (5th Cir. 1982); *Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir. 1979). Indeed, "[g]iven current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being." *Delaney v. DeTella,* 256 F.3d 679, 683 (7th Cir. 2001).

Plaintiff is currently incarcerated at NCI under the classification status of Administrative Segregation Phase One.[2] All Phase One prisoners are locked in their cells for a period of 24 hours daily, except for five hours per week (one hour per day, Monday through Friday) of out-of-cell "recreation." During this hour, plaintiff is placed in a small individual recreation yard that is surrounded by concrete walls and caged at the top. Throughout this period, plaintiff is forced to wear handcuffs behind his back and leg shackles.[3] These two restraints are connected by a heavy tether chain with a lock. In this condition plaintiff is unable to do pushups, situps, jumping jacks, or run in place. Indeed, as the District Court for the Northern District of Illinois recognized in *Martinez v. Fairman,* 1995 WL 383072, 5 (N.D.Ill.1995), "[i]t is obviously impossible for a prisoner to engage in any meaningful physical activity while his limbs are restrained."

---

[2] The facts set out herein describe the alleged policies and conditions at Northern at the time of Plaintiff's Amended Complaint.
[3] Plaintiff is forced to wear full restraints despite the fact that he is alone in the yard and the caged area has a "trap" opening that would easily allow prison officials to remove the restraints.

4

The Second Circuit has previously held that a denial of an opportunity to engage in exercise over extended periods of time constitutes a violation of the Eighth Amendment. See *Jolly v. Coughlin*, 76 F.3d at 480 (upholding preliminary injunction requiring prison officials to release inmate from medical keeplock when inmate allowed out of cell only ten minutes per week for over three-and-one-half years); See also *Williams v. Greifinger*, 97 F.3d 699 (noting that defendant did not appeal District Court's finding that plaintiff's 589-day deprivation of exercise violated the Eight Amendment); *Amaker v. Goord*, 1999 WL 511990 at 6 (S.D.N.Y. 1999) (holding that a denial of exercise for approximately two thirds of 907 days states a sufficiently serious deprivation to satisfy the objective component of an Eighth Amendment violation).

Similarly, other Circuit Courts have identified constitutional violations where plaintiffs were denied the opportunity for out-of-cell exercise. See *Delaney v. DeTella*, 256 F.3d at 683 (7th Cir. 2001) (upholding district court's denial of summary judgment where prisoner was deprived of out-of-cell exercise for six months); *Allen v. Sakai*, 48 F.3d 1082, 1086-88 (9th Cir. 1995) (affirming district court's denial of qualified immunity where inmate allowed only forty-five minutes of outdoor exercise per week for period of six weeks and segregation was indefinite); *Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir. 1992) (holding that qualified immunity is not appropriate because reasonable prison official should have known that depriving inmate of out-of-cell exercise for periods of time violates the Eight Amendment).

While a Connecticut Superior Court Judge recently approved of NCI's policy of using full restraints during the one-hour recreation period, see *Caballero v. Warden*, 2003 Conn. Super. Lexis 5 (January 3, 2003), the Superior Court Judge ignored precedents in both the United States Supreme Court and the Second Circuit, which establish the importance of the

5

right to exercise. See *Wilson v. Seiter*, 501 U.S. at 304-5; *Williams v. Greifinger*, 97 F.3d at 704. In addition, the Second Circuit has repeatedly stressed that restrictions on exercise must be limited to "unusual circumstances," or circumstances in which exercise is "impossible" because of disciplinary needs. See *Sostre v. McGinnis*, 442 F.2d at 186; *Williams v. Greifinger*, 97 F.3d at 704. Furthermore, prison officials cannot take away a prisoner's exercise privileges for a substantial amount of time without a good reason. Indeed, "the fact that an inmate is violent may justify segregating him or her from the general prison population, but does not necessarily justify a prison's failure to make 'other exercise arrangements.'" *Williams v. Greifinger*, 97 F.3d at 704-5, quoting *Mitchell v. Rice*, 954 F.2d at 192.

The use of full restraints is even more restrictive than the use of handcuffs alone, a practice which the Southern District of New York recently called into question in *Williams v. Goord*, 142 F. Supp.2d 416 (S.D.N.Y. 2001). In *Williams v. Goord*, the plaintiff alleged that he was deprived of meaningful exercise for 28 days because he was placed in mechanical hand restraints during his daily one-hour recreation period. The Court found that the use of handcuffs alone presented a close constitutional question, but implicitly recognized that the addition of leg shackles would raise the deprivation to a constitutional violation since it is "it is obviously impossible for a prisoner to engage in any meaningful activity while his limbs are restrained." *Id.* at 427, citing *Martinez v. Fairman*, 1995 WL 383072 at 5. NCI's policy of forcing plaintiff to wear full restraints while enclosing him in a yard that so resembles a small dog's cage that it is commonly referred to as "the kennel," during his *only* opportunity for outdoor exercise makes a mockery of the Second Circuit's pronouncements on this subject and constitutes a clear violation of the Eight Amendment.

6

**B. Defendants acted with deliberate indifference in failing to provide plaintiff an opportunity to engage in meaningful exercise**

Throughout plaintiff's incarceration, defendants were fully aware that plaintiff was subjected to full restraints during the one-hour exercise period and was thus unable to exercise. In order to satisfy the subjective element of an Eighth Amendment violation, a plaintiff must show that defendants acted with deliberate indifference. A prison official's conduct does not rise to the level of deliberate indifference unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. In the instant case, defendants' awareness of the plaintiff's condition coupled with their repeated rejection of plaintiff's protests, supports the conclusion that defendants' acted with deliberate indifference. See *Amaker v. Goord*, 1999 WL 51990 (Court held that the allegations of a denial of exercise over a period of 600 days indicated a sufficiently capable state of mind to satisfy the subjective component.); *Delaney v. DeTella*, 256 F.3d at 683 (Court held that Defendant's inaction in spite of their knowledge of the potential risk inherent in the denial of exercise for 60 days satisfies the subjective element of an Eighth Amendment claim).

**II. Defendants are not entitled to qualified immunity**

Defendants are not entitled to qualified immunity since their actions violate a clearly established right under the Eighth Amendment. The doctrine of qualified immunity shields government officials acting in their official capacity from suits for money damages under 42 U.S.C. § 1983 unless their actions violate clearly established rights of which an objectively reasonable official would have known. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The burden rests on the defendants to raise the qualified immunity defense in their answer and to establish the defense on a motion for summary judgment or at trial. *Lee v. Sandberg*, 136

7

F.3d 94, 101 (2nd Cir. 1997). Whether a right is "clearly established" for purposes of qualified immunity turns on an analysis of whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Harlow*, 457 U.S. at 640. A court need not have passed on the identical course of conduct in order for its illegality to be "clearly established"; however, "in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).

For purposes of qualified immunity, "it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir. 1990)(citing *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)). In *Williams v. Greifinger*, 97 F.3d at 704, the Second Circuit explicitly held that an inmate's Eighth Amendment right to exercise was clearly established for purposes of qualified immunity asserted by prison officials. As detailed above, the contours of that right included an opportunity for outdoor exercise. The Second Circuit's holding on this point is dispositive and has not been overruled. See *Williams v. Goord*, 142 F. Supp. 3d at 430 (at the time of the alleged violation it was apparent that a denial of all meaningful out-of-cell exercise for a significant period of time without adequate justification constituted an Eighth Amendment violation. Accordingly, defendant's motion for summary judgment on the basis of qualified immunity was denied).

## Conclusion

Amicus curiae CCLUF thanks the court for the opportunity to present its views on this important issue. If additional briefing is required on any points raised herein, amicus will be available at the Court's request.

Respectfully submitted,

Philip Tegeler (ct05515)
Jennifer Bird, Law Student Intern
Connecticut Civil Liberties
      Union Foundation
32 Grand Street
Hartford, CT 06106
Telephone: 860-247-9823 x 211
Fax: 860-728-0287
ptegeler@cclu.org

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of June, 2003, a copy of the foregoing has been mailed postage prepaid to:

Lynn D. Wittenbrink
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105

Lloyd George Morgan Jr.
Inmate #117796
Northern Correctional Institute
PO Box 665
Somers, CT 06071

_____
Philip Tegeler

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LLOYD D. GEORGE MORGAN, JR.  :  CIVIL NO.
             :  3:01CV1107 (WIG)(CFD)
      Plaintiffs,   :

             :
     v.        :

GOVERNOR JOHN G. ROWLAND, et al. :

      Defendant.   :  April 10, 2003
             :

## REQUEST FOR LEAVE TO FILE AMICUS BRIEF

   The Connecticut Civil Liberties Union Foundation (CCLUF) respectfully requests the opportunity to appear and file a brief as amicus curiae in this case, on the constitutionality of Northern Correctional Institution's policies on prisoner exercise. The CCLUF does not currently have staff resources available to undertake legal representation of the plaintiff in this matter, but respectfully submits that its analysis of the constitutional issues may be of assistance to the Court. This case is one of at least three cases currently pending in the U.S. District Court that address the exercise issue at Northern[1].

### Summary of Facts & Proceedings

   On June 14, 2001, Plaintiff Lloyd D. George Morgan, Jr. filed a pro se complaint under several statutes, including 42 U.S.C. §1983, alleging that Northern Correctional

---

[1] The other cases are McNamara v. Armstrong., Civ. No. 3:01CV2082 (CFD)(WIG) and Robare v. Armstrong et al., Civ. No. 3:02CV234 (JCH)(HBF).

Institution's ["NCI"] policy of keeping inmates in full restraints during the one-hour per day recreation period constitutes a violation of his Eighth and Fourteenth Amendment rights under the United States Constitution. He seeks declaratory and injunctive relief, compensatory and punitive damages, as well as attorney's fees. Plaintiff asserts that he has properly exhausted his state administrative remedies pursuant to the Prison Litigation Reform Act.

**Interest of Amicus Curiae**

CCLUF is the litigative arm of the Connecticut Civil Liberties Union ("CCLU"), a state affiliate of the American Civil Liberties Union, which is a national non-partisan organization of approximately 250,000 members committed to protecting the civil rights and liberties of all persons. CCLU has three chapters and approximately 5,000 members in Connecticut. CCLUF engages in civil rights litigation in Connecticut's state, as well as its federal, courts.

CCLUF has had a long-standing interest in protecting the Eighth and Fourteenth Amendment rights of prison inmates. A few of the many prisoners' rights cases in which CCLUF has participated include Joslyn v. Armstrong, (U.S. District Court, 2001) (class action challenging use of restraints and stun guns at a Virginia supermax prison housing Connecticut inmates); Smith v. Armstrong (U.S. District Court, 1996) (class action challenge to inadequacy of prisoners' legal services program); Washington v. Meachum, 238 Conn. 692 (1996) (class action challenge to monitoring of prisoner phone calls and restrictions on prisoner access to attorney phone calls); and Doe v. Meachum, 126 F.R.D. 444; 126 F.R.D. 450 (D. Conn. 1989); (Consent Judgment, December 4, 1990) (class action challenging the prison system's policies

and practices regarding AIDS). Accordingly, CCLUF has a strong interest, as well as experience and expertise, in the issues that may arise on this appeal. Unfortunately, CCLUF does not have staff or resources available to undertake representation of the plaintiff in this case. Nonetheless, important constitutional issues are raised in this case, and we respectfully request permission to submit our analysis of these issues to the Court as amicus curiae.

**Conclusion**

For all of the foregoing reason, the Connecticut Civil Liberties Union Foundation respectfully requests that its request for leave to file an amicus brief to be granted.

Respectfully submitted

Philip Tegeler (ct05515)
Connecticut Civil Liberties
Union Foundation
32 Grand Street
Hartford, CT 06106
Telephone: 860-247-9823 x 211
Fax: 860-728-0287
ptegeler@cclu.org

## CERTIFICATE OF SERVICE

This is to certify that on this _12_ day of April, 2003, a copy of the foregoing has been mailed postage prepaid to:

Lynn D. Wittenbrink
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105


Lloyd George Morgan Jr.
Inmate #117796
Northern Correctional Institute
PO Box 665
Somers, CT 06071


_____
Philip Tegeler

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LLOYD GEORGE MORGAN, JR.                   :        PRISONER

     VS.                                             :        NO. 3:01CV1107(CFD)

                                             :

GOVERNOR JOHN G. ROWLAND, ET AL.           :        APRIL 22, 2003

## MEMORANDUM IN OPPOSITION TO "REQUEST FOR LEAVE TO FILE AMICUS BRIEF

The defendants in the above-captioned matter oppose the "Request for Leave to File Amicus Brief" dated April 10, 2003, filed by the Connecticut Civil Liberties Union (hereinafter "CCLU"). The defendants note that the request is premature, and presumes certain eventualities which may or may not come about in this matter. In addition, the pleading does not comport with Rule 11 of the Federal Rules of Civil Procedure or the Local Rules, as there is no provision by which *amicus* briefs are to be filed in federal district court matters.

The pleadings in the above-captioned matter are not at the point in which any "brief" or Memorandum of Law is currently due or pending, and may not get to that point as significant issues of personal service exist. Moreover, this issue may never be "briefed" depending on other issues such as this Court's ruling on the plaintiff's Motion to Amend his complaint. Certainly, any request to advise the Court of the CCLU's position with regard to the restraint policy at Northern Correctional Institution should wait until such an issue is ripe.

More importantly, there is no provision within the Federal Rules of Civil Procedure or the Local Rules for an amicus brief such as the CCLU proposes. Indeed, not only is there no provision allowing for a request such as the CCLU's, but such a filing is specifically prohibited. Rule 11 provides that:

> *Every pleading, written motion, and other paper* shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party.

(emphasis added).

Thus, the CCLU's request should be denied.

DEFENDANTS,
Governor John G. Rowland, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Lynn D. Wittenbrink
Assistant Attorney General
Federal Bar No. ct08575
110 Sherman Street
Hartford, CT 06105
Telephone No.: (860) 808-5450
Fax No.: (860) 808-5591
E-mail: lynn.Wittenbrink@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 22nd day of April, 2003:

Lloyd George Morgan, Jr., Inmate No. 117796
Northern Correctional Institution
287 Bilton Road, PO Box 665
Somers, CT  06071

Philip Tegeler
Connecticut Civil Liberties Union
32 Grand Street
Hartford CT
06106

Lynn D. Wittenbrink
Assistant Attorney General

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LLOYD D. GEORGE MORGAN, JR.   :
             :  CIVIL NO.
      Plaintiffs,   :  3:01CV1107 (WIG)(CFD)
             :
    v.        :
             :
GOVERNOR JOHN G. ROWLAND, et al. :
             :
      Defendant.   :  April 29, 2003

**REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO REQUEST
FOR LEAVE TO FILE AMICUS BRIEF**

Proposed amicus curiae Connecticut Civil Liberties Union Foundation (CCLUF)
offers the following responses to the points raised in defendants' memorandum (dated April
22, 2003):

1. It is proper to seek leave to appear and file an amicus brief in the U.S. District
Court, and such requests are regularly granted. See, e.g., Shawmut Bank Connecticut v.
Googins, 965 F.Supp. 304 (D. Conn. 1997) (amicus Office of the Comptroller of the
Currency and the American Bankers Association); Associated General Contractors of
Connecticut v. City of New Haven, 791 F.Supp. 941 (D. Conn. 1992) (amicus CCLUF) ("It
would be inappropriate to end this matter without acknowledgement of the contribution and
aid to the court's consideration of this case from the amicus briefs filed"); Rosa v. Gaynor,
784 F.Supp. 1 (D. Conn. 1989) (amicus State of Connecticut); Azizi v. Thornburgh, 719
F.Supp. 86 (D.Conn. 1989) (amicus Congressman John Rowland and others).

2. The request to appear and file a brief as amicus curiae was signed by the attorney for the proposed amicus party, in satisfaction of the local rules.

3. The CCLUF's request clearly sought "the opportunity *to appear* and file a brief as amicus curiae" (emphasis added). If the appearance of the amicus curiae is permitted, undersigned counsel would then be apprised of any future motions (such as a motion for summary judgment) that would benefit from the submission of an amicus brief. Proposed amicus curiae does not plan to submit a brief unless and until the Court requests it.

**Conclusion**

For all of the foregoing reasons, the Connecticut Civil Liberties Union Foundation respectfully requests that its request to appear and file an amicus brief to be granted.

Respectfully submitted

Philip Tegeler (ct05515)
Connecticut Civil Liberties
        Union Foundation
32 Grand Street
Hartford, CT 06106
Telephone: 860-247-9823 x 211
Fax:  860-728-0287
ptegeler@cclu.org

## CERTIFICATE OF SERVICE

This is to certify that on this 29ᵗʰ day of April, 2003, a copy of the foregoing has been mailed postage prepaid to:

Lynn D. Wittenbrink
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105

Lloyd George Morgan Jr.
Inmate #117796
Northern Correctional Institute
PO Box 665
Somers, CT 06071

_____
Philip Tegeler



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 APR 11  P 4: 37

US DISTRICT COURT
BRIDGEPORT CT

LLOYD D. GEORGE MORGAN, JR.                :
                                                                        :
                                 Plaintiffs,                    :   CIVIL
                                                                        :   3:01CV1107 (WIG)(CFD)
                          v.                                        :
                                                                        :
GOVERNOR JOHN G. ROWLAND, et al.      :
                                                                        :
                                 Defendant.                   :   April 10, 2003
                                                                        :


### REQUEST FOR LEAVE TO FILE AMICUS BRIEF


The Connecticut Civil Liberties Union Foundation (CCLUF) respectfully requests

the opportunity to appear and file a brief as amicus curiae in this case, on the

constitutionality of Northern Correctional Institution's policies on prisoner exercise. The

CCLUF does not currently have staff resources available to undertake legal representation of

the plaintiff in this matter, but respectfully submits that its analysis of the constitutional

issues may be of assistance to the Court. This case is one of at least three cases currently

pending in the U.S. District Court that address the exercise issue at Northern[1].


**Summary of Facts & Proceedings**

On June 14, 2001, Plaintiff Lloyd D. George Morgan, Jr. filed a pro se complaint

under several statutes, including 42 U.S.C. §1983, alleging that Northern Correctional

---

[1] The other cases are McNamara v. Armstrong., Civ. No. 3:01CV2082 (CFD)(WIG) and Robare v. Armstrong et al., Civ. No. 3:02CV234 (JCH)(HBF).

NO. 02-16720

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JOHN AUER,

Plaintiff/Appellant,

v.

WILLIAM DONAT, et al.,

Defendants/Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Case No. CV-N-99-0190-DWH(VPC)

Honorable David W. Hagen

AMICUS CURIAE BRIEF OF THE NATIONAL PRISON PROJECT
OF THE AMERICAN CIVIL LIBERTIES UNION AND
THE AMERICAN CIVIL LIBERTIES UNION OF NEVADA
IN SUPPORT OF PLAINTIFF/APPELLANT URGING REVERSAL

David C. Fathi
National Prison Project of the
 American Civil Liberties Union
 Foundation
733 15th St. N.W., Suite 620
Washington, DC 20005
(202) 393-4930

## IDENTITY AND INTEREST OF AMICUS

The American Civil Liberties Union (ACLU) is a nationwide, nonprofit, nonpartisan organization of more than 400,000 members dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws.  The ACLU established the National Prison Project in 1972 to protect and promote the civil and constitutional rights of prisoners.  The American Civil Liberties Union of Nevada is one of the ACLU's state affiliates.

A motion for leave to file this amicus curiae brief is filed herewith.

## INTRODUCTION

Plaintiff/Appellant John Auer, a Nevada state prisoner, alleges in this lawsuit that on February 28, 1998, corrections officers at Ely State Prison used excessive force on him.  In his first cause of action, he alleges that this incident violated his federally protected rights, and seeks various remedies.[1]

It is undisputed that plaintiff filed two grievances about this incident with the prison grievance system, and appealed them through all four levels of that system.  See Order, July 22, 2002 (hereinafter "Order"), at 6-9.[2]  However, the

---

[1]This amicus brief addresses only plaintiff's first cause of action.

[2]The undersigned counsel does not have access to the Excerpts of Record, and is therefore unable to provide citations to those Excerpts.

1

district court held that plaintiff had nevertheless failed to exhaust available administrative remedies as to this cause of action, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The district court explained:

> Plaintiff did not exhaust "such administrative remedies as are available." See 42 U.S.C. § 1997e(a). In this lawsuit, with respect to his first cause of action, plaintiff seeks compensatory damages, punitive damages, medical care, rehabilitation, vocational training, and declaratory relief (stating that defendants violated plaintiff's constitutional rights). Plaintiff did not seek any of these remedies by administrative means; plaintiff sought only an investigation and dismissal of the officers involved.
>
> Furthermore, NRS 209.243 allows for the recovery of damages by prisoners in Nevada by administrative means. Plaintiff did not take advantage of that administrative remedy.

Order at 9. Because plaintiff "seeks remedies in this action that he did not seek in his grievances," id. at 10, the district court held that plaintiff had not exhausted administrative remedies as to his first cause of action, and granted summary judgment to all defendants.

As explained below, the district court's ruling was erroneous, and the grant of summary judgment on plaintiff's first cause of action should be reversed.

## ARGUMENT

**I.    Plaintiff was not required to seek in his grievance all remedies he eventually sought in his lawsuit.**

PLRA's exhaustion requirement provides as follows:

> **§ 1997e. Suits by prisoners**
> **(a) Applicability of administrative remedies**
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court considered the scope of PLRA's exhaustion requirement – specifically, "whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Id. at 734. The Court observed that "one 'exhausts' processes, not forms of relief," and concluded that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." Id. at 739. See also id. at 741 n. 6 ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues").

In short, under Booth, the relief the prisoner seeks is entirely irrelevant in

3

determining whether he is required to exhaust administrative remedies. Unless the administrative procedure "lacks authority to provide any relief or to take any action whatsoever in response to a complaint," exhaustion is required. <u>Booth</u>, 532 U.S. at 736. The logic of <u>Booth</u>, then, is that the prisoner is required to put his <u>complaint</u> – not a particular request for relief – before prison authorities for resolution. It is for those authorities to decide what remedies are available to the grievant. <u>See Booth</u>, 532 U.S. at 737 (noting that even when a prisoner seeks money damages that the grievance system cannot provide, "requiring exhaustion in these circumstances would produce administrative results that would satisfy at least some inmates who start out asking for nothing but money, since the very fact of being heard and prompting administrative change can mollify passions even when nothing ends up in the pocket").

Indeed, the Seventh Circuit has recognized that the requirement imposed by the district court here is invalid under <u>Booth</u>. "[N]o administrative system may demand that the prisoner specify each remedy later sought in litigation – for <u>Booth v. Churner</u>, 532 U.S. 731 (2001), holds that § 1997e(a) requires each prisoner to exhaust a <u>process</u> and not a <u>remedy</u>." <u>Strong v. David</u>, 297 F.3d 646, 649-50 (7th Cir. 2002) (emphasis in original; parallel citations omitted). <u>See also Burton v. Jones</u>, 321 F.3d 569, 575 (6th Cir. 2003) ("it is sufficient for a court to find that a

4

prisoner's [grievance] gave prison officials fair notice of <u>the alleged mistreatment</u> <u>or misconduct</u> that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint") (emphasis added, citing <u>Strong</u>).

The Nevada Department of Prisons grievance procedure that was in effect when plaintiff filed his grievances (AR 740, effective date 1/21/92, hereinafter "AR 740") contains no hint that a prisoner must specify each form of relief he seeks. A grievance is defined simply as "[a]n individual complaint filed by an inmate." AR 740 at 1. When the grievance policy is silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. ... [T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief." <u>Strong</u>, 297 F.3d at 650.

<u>Irvin v. Zamora</u>, 161 F.Supp.2d 1125 (S.D. Cal. 2001), is similar to the case at bar. In <u>Irvin</u>, the prisoner-plaintiff filed suit alleging that prison staff had sprayed pesticides into his housing unit. As in this case, it was undisputed that he had filed and appealed two grievances, in which he sought an investigation of the incident and disciplinary action against the staff involved. <u>Id</u>. at 1133. Defendants argued that these grievances were insufficient to allow the plaintiff to pursue his lawsuit, but the court disagreed:

Plaintiff ... requested that the prison conduct an investigation of the facts. As a result, the facts were investigated and developed, and the prison had an opportunity to exercise its discretion or correct any errors as appropriate under the circumstances. Under the facts presented, there is nothing to indicate that officials would have done anything differently if plaintiff pursued more specific claims against the individuals responsible for the spraying of pesticides. In other words, plaintiff's grievances were sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement. <u>As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level</u>.

<u>Irvin</u>, 161 F.Supp.2d at 1134-35 (emphasis added).  Other courts have also

rejected arguments similar to those defendants advance here.  <u>See</u> <u>Baskerville v.</u>

<u>Blot</u>, 224 F.Supp.2d 723, 730 (S.D.N.Y. 2002) (plaintiff could pursue claim for

excessive force when his grievance had mentioned the incident but did not request

any remedy); <u>Jones'El v. Berge</u>, 172 F.Supp.2d 1128, 1134 (W.D. Wis. 2001)

(rejecting contention that further exhaustion was required before motion for

preliminary injunction could be brought; "[a]ny claim for relief that is within the

scope of the pleadings may be litigated without further exhaustion"); <u>Williams v.</u>

<u>Wilkinson</u>, 122 F.Supp.2d 894, 899 (S.D. Ohio 2000) (rejecting argument that

"each claim at each stage [of the grievance process] must parallel each and every

claim in the federal complaint").

6

There is no indication, in either the text or the legislative history of PLRA, that Congress intended the exhaustion requirement to create a set of arcane procedural traps through which uncounseled prisoners would be barred from pursuing meritorious claims.  Rather, the purpose of PLRA's exhaustion requirement is to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  As long as this essential purpose is fulfilled, courts have refused to allow the exhaustion requirement to become a snare of forfeiture by barring prisoners from the federal courts because of arguable technical defects in their grievances.  See, e.g., Kikumura v. Hurley, 242 F.3d 950, 956 (10th Cir. 2001) (rejecting argument that prisoner failed to exhaust because of variance between allegations of grievance and allegations of lawsuit); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (rejecting argument that defendants who had not been named in prisoner's grievance could not be named in lawsuit); Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000) ("compliance with the administrative remedy scheme will be satisfactory if it is substantial"); Miller v.

7

Tanner, 196 F.3d 1190, 1193-94 (11th Cir. 1999) (prisoner's failure to sign and date grievance was not fatal).[3]

The leading Supreme Court case on whether a defense of failure to exhaust is available despite a final administrative ruling rejecting plaintiff's claim is Sims v. Apfel, 530 U.S. 103 (2000). The plaintiff in that case challenged a denial of Social Security benefits. After her claims were denied by a state agency and an Administrative Law Judge, she requested review by the Social Security Appeals Council, by completing a form provided by the Social Security Administration. The Council denied review. The plaintiff filed suit, but was unsuccessful in the district court. The Fifth Circuit affirmed the denial of relief, rejecting plaintiff's first contention on the merits, and holding that two other contentions could not be reviewed because the plaintiff had failed to make these arguments before the Appeals Council. Sims v. Apfel, 200 F.3d 229 (5th Cir. 1998).

---

[3]A contrary interpretation would thwart the will of PLRA's Congressional sponsors, who made clear their wish that meritorious prisoner lawsuits be allowed to proceed. See, e.g., 141 Cong. Rec. H1472-06, at H1480 (Rep. Canady) ("These reasonable requirements will not impede meritorious claims by inmates but will greatly discourage claims that are without merit"); 141 Cong. Rec. S7498-01, at S7526 (Sen. Kyl) ("If we achieve a 50-percent reduction in bogus Federal prisoner claims, we will free up judicial resources for claims with merit by both prisoners and nonprisoners"); 141 Cong. Rec. S14,611-01, at S14,627 (Sen. Hatch) ("Indeed, I do not want to prevent inmates from raising legitimate claims").

8

In the Supreme Court, the Commissioner of Social Security, like the defendants here, argued that the final decision plaintiff had received during the administrative review process failed to qualify as administrative exhaustion on the claims she wished to pursue in court. Sims v. Apfel, 530 U.S. at 107. The Supreme Court disagreed, and rejected imposition of an "issue exhaustion" requirement. Ruling that requirements of issue exhaustion were "largely creatures of statute," id., the Court reasoned that neither the statute nor the regulations specified such a requirement, and that it was undesirable to read such a requirement into the rules where the administrative proceeding in question was not closely analogous to normal adversarial litigation. Proceedings before the Appeals Council were informal and nonadversarial, briefs were permitted but not required, and the Council did not rely on claimants, who were frequently not represented by a lawyer, to identify particular issues for review. Id. at 108, 110-12.

Similarly here, the PLRA contains no requirement that the plaintiff seek in his grievance each form of relief he ultimately wishes to seek in court. And the Nevada DOP grievance system is even less formal and less comparable to adversarial litigation than the administrative process involved in Sims. The grievance policy does not provide for briefs, does not provide for representation by counsel, and does not tell grievants that they must seek particular forms of

9

relief as a prerequisite to filing suit. See AR 740. Just as in Sims these factors counseled against imposition of an "issue exhaustion" requirement, here they similarly counsel against imposition of the novel "relief exhaustion" requirement advocated by defendants.

The Supreme Court has cautioned that "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiate the process." Love v. Pullman Co., 404 U.S. 522, 527 (1972). And this Court has repeatedly recognized this reality in the context of Title VII of the Civil Rights Act of 1964 which, like PLRA, contains a requirement that plaintiffs exhaust administrative remedies before filing suit. See 42 U.S.C. § 2000e-5(e), (f). "We construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1100 (9th Cir. 2002) (citations, internal quotation marks omitted). In B.K.B., the Court held that a Title VII plaintiff could pursue her claim for sexual harassment, although her charge was "exceedingly sparse" and did not mention sexual harassment. 276 F.3d at 1100-01, 1103. "We must keep in mind that complainants filing discrimination charges are acting as laypersons and should not be held to the higher standard of legal pleading by which we would review a civil complaint." 276 F.3d at 1103. See also Deppe v.

United Airlines, 217 F.3d 1262, 1266-67 and n. 21 (9th Cir. 2000) (citing examples of liberal construction of EEOC charges).[4]

If this is true of Title VII charges drafted by free persons, it is all the more true of grievances drafted by prisoners. The Supreme Court has cautioned that complaints prepared by uncounseled prisoners, "however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520

---

[4]Federal courts have repeatedly used Title VII's exhaustion requirement as an aid to construing § 1997e(a). See Jackson v. District of Columbia, 254 F.3d 262, 268 (D.C. Cir. 2001); Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999), cert. denied, 532 U.S. 1065 (2001); Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998); Jones'El v. Berge, 172 F.Supp.2d 1128, 1132 (W.D. Wis. 2001). In Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003), the Court suggested that B.K.B. had treated the Title VII exhaustion requirement as jurisdictional. The Wyatt Court added, "As we have held previously, however, the PLRA exhaustion requirement does not affect our subject matter jurisdiction. See Rumbles v. Hill, 182 F.3d 1064, 1068 (9th Cir. 1999). Accordingly, our Title VII jurisprudence does not affect the analysis here." 315 F.3d at 1117 n. 9. However, the B.K.B. Court never expressly held that the Title VII exhaustion requirement is jurisdictional, and both the Supreme Court and this Court have held that it is not. See Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982); Stache v. International Union of Bricklayers, 852 F.2d 1231, 1233 (9th Cir. 1988). Compare Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001) (while "administrative exhaustion requirements under Title VII are not jurisdictional," "substantial compliance with the presentment of discrimination complaints to an appropriate administrative agency is a jurisdictional prerequisite") (emphasis in original). In any event, amici submit that this Court's liberal construction of EEOC charges filed by unrepresented persons counsels similar treatment of grievances filed by pro se prisoners.

11

(1972); internal quotation marks omitted).  This Court has emphasized that the Haines rule "particularly applies to complaints and motions filed by pro se prisoners." Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001).  Indeed, this Court has required that, before dismissing a pro se complaint, "the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).[5]

But these protections for pro se prisoner litigants once they are in court are meaningless if such litigants find the courthouse door barred by hypertechnical pleading requirements in the grievance system.  To import such technicalities, which far exceed the pleading requirements imposed on lawyers by the Federal Rules of Civil Procedure, into grievance systems designed to be used by uncounseled, sometimes illiterate prisoners, and then use those technicalities to limit the relief that can be sought in a subsequent lawsuit, goes far beyond the

_____

[5]Prisoners, as a group, are far less educated and less literate than the general population.  The National Center for Education Statistics reported in 1994 that seven out of ten prisoners perform at the lowest literacy levels.  Karl O. Haigler, et al., U.S. Dept. of Educ., Literacy Behind Prison Walls: Profiles of the Prison Population from the National Adult Literacy Survey, xviii, 17-19 (1994).  Indeed, the plaintiff in this case alleges that he suffers from dyslexia and is illiterate.  See Order at 9-10.

requirements of § 1997e(a), and flies in the face of Supreme Court and Circuit precedent.[6]

Plaintiff filed not one but two grievances complaining that corrections officers used excessive force on him, and appealed these grievances through all available levels of appeal. Defendants concede that as a result of these grievances, prison officials had the opportunity to take action, and in fact did take action, on plaintiff's complaints. See Def. Br. at 13. PLRA requires nothing more.

## II. Plaintiff was not required to exhaust state tort claim procedures.

The district court held that the PLRA required plaintiff to exhaust the state tort claim procedure set forth in Nev. Rev. Stat. § 209.243 as a prerequisite to filing suit. But such a ruling is foreclosed by this Court's holding in Rumbles v. Hill, 182 F.3d 1064, 1069-70 (9th Cir. 1999), that exhaustion of state tort claim procedures is not required. Reviewing the legislative history of the PLRA, the Court concluded that "Congress had internal prison grievance procedures in mind

---

[6]Congress is presumed to legislate against the background of existing law, and when it legislates in an area but does not address a particular subject, it indicates its intention to leave the law on that subject undisturbed. See Dept. of Housing and Urban Develop. v. Rucker, 535 U.S. 125, 122 S. Ct. 1230, 1234 n. 4 (2002); Edelman v. Lynchburg College, 535 U.S. 106, 122 S. Ct. 1145, 1151-52 (2002). There is no indication in the PLRA that Congress intended to disturb the well-established rule that administrative and court filings by unrepresented persons are to be liberally construed to do substantial justice.

13

when it passed the PLRA," and "there is no indication that [Congress] intended prisoners also to exhaust state tort claim procedures." Rumbles, 182 F.3d at 1069.

Nev. Rev. Stat. § 209.243 is indistinguishable from the California state tort claim procedure at issue in Rumbles. Compare Nev. Rev. Stat. § 209.243(2) (claim must be submitted to State Board of Examiners) with Rumbles, 182 F.3d at 1069 (claim must be submitted to California State Board of Control). Because Nev. Rev. Stat. § 209.243 provides for claims to be presented to the State Board of Examiners, it is not an "internal prison grievance procedure[]," and plaintiff was not required to exhaust this procedure before filing his lawsuit.[7]

Even if plaintiff were required to exhaust the procedure set forth in Nev. Rev. Stat. § 209.243, he has done so. The district court held that a prisoner can make a claim under Nev. Rev. Stat. § 209.243 by "using the normal grievance form (the form that plaintiff in fact used twice)." Order at 9. Defendants adopt this position on appeal. Def. Br. at 11. It is undisputed that plaintiff filed two

---

[7]While it is clear under Rumbles that plaintiff was not required to exhaust the procedure set forth in Nev. Rev. Stat. § 209.243, it is also worth noting that the grievance policy contains no mention of that statute, or indeed any hint that other administrative remedies are available. See AR 740. "An institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it. A grievance procedure that is not made known to inmates is not an 'available' administrative remedy." Hall v. Sheahan, 2001 WL 111019 at *2 (N.D. Ill., Feb. 2, 2001).

14

grievances regarding the incidents of February 28, 1998.  He thus satisfied the requirements of Nev. Rev. Stat. § 209.243.[8]

## CONCLUSION

The district court's entry of summary judgment on plaintiff's first cause of action should be reversed.

Respectfully submitted this _____ day of May, 2003.


David C. Fathi
National Prison Project of the
 American Civil Liberties Union
 Foundation
733 15th St. N.W., Suite 620
Washington, DC 20005
(202) 393-4930

Attorney for Amici

---

[8]For all the reasons set forth in § I, <u>supra</u>, even if plaintiff were required to exhaust the procedure set forth in Nev. Rev. Stat. § 209.243, he was not required to specify the remedies he was seeking.

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(d) and 9th Cir. R. 32-1, I certify that the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7000 words or less.

Dated this _____ day of May, 2003.

_____
DAVID C. FATHI

16

## CERTIFICATE OF SERVICE

I certify that on this _____ day of May, 2003, a copy of the foregoing

**AMICUS CURIAE BRIEF OF THE NATIONAL PRISON PROJECT OF**

**THE AMERICAN CIVIL LIBERTIES UNION AND THE AMERICAN**

**CIVIL LIBERTIES UNION OF NEVADA IN SUPPORT OF**

**PLAINTIFF/APPELLANT URGING REVERSAL** was served by first class

U.S. Mail, postage prepaid, on:

John M. Auer                          Richard Carmichael
DOC No. 42105                         DOC No. 64615
Ely State Prison                      Ely State Prison
P.O. Box 1989                         P.O. Box 1989
Ely, NV 89301                         Ely, NV 89301

and by first class U.S. mail, postage prepaid, and by telefacsimile on:

Andrea H. Nichols
Deputy Attorney General
100 N. Carson Street
Carson City, NV 89701-4717
(775) 684-1108 (fax)

_____

DAVID C. FATHI

17